JUDGE SEIBEL

## 14 CV 7250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BLOOMINGBURG JEWISH EDUCATION CENTER;
SULLIVAN FARMS II, INC.; LEARNING TREE
PROPERTIES, LLC; MALKA ROSENBAUM;
SHEINDEL STEIN; COMMERCIAL CORNER, LLC; and
WINTERTON PROPERTIES, LLC,

                          Plaintiffs,

          -against-

VILLAGE OF BLOOMINGBURG, NEW YORK; VILLAGE
BOARD OF TRUSTEES OF THE VILLAGE OF
BLOOMINGBURG, NEW YORK; FRANK GERARDI,
individually and in his official capacity as Mayor; EILEEN
ROGERS, individually and in her official capacity as Village Clerk;
PLANNING BOARD OF THE VILLAGE OF BLOOMINGBURG,
NEW YORK; ANDREW FINNEMA, individually and in his former
official capacity as Planning Board member; ANN HAENELT,
individually and in her former official capacity as Planning Board
member; JOSEPH B. ROE, individually and in his former official
capacity as Planning Board member; TOWN OF MAMAKATING,
NEW YORK; TOWN BOARD OF THE TOWN OF
MAMAKATING, NEW YORK; PLANNING BOARD OF THE
TOWN OF MAMAKATING, NEW YORK; KATHERINE
ROEMER, individually and in her official capacity as Trustee;
JAMES JOHNSON, individually and in his official capacity as
Trustee; and WILLIAM HERRMANN, individually and in his
official capacity as Supervisor for the Town of Mamakating,

                          Defendants.

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

---

          Plaintiffs The Bloomingburg Jewish Education Center ("Bloomingburg Jewish Education

Center"), Sullivan Farms II, Inc. ("Sullivan Farms"), Learning Tree Properties, LLC ("Learning

Tree"), Malka Rosenbaum, Sheindel Stein, Commercial Corner, LLC ("Commercial Corner"),

and Winterton Properties, LLC ("Winterton") (collectively, "Plaintiffs"), by and through their

attorneys, Dechert LLP and Whiteman Osterman & Hanna LLP, as and for their Complaint in this matter respectfully allege as follows:

## INTRODUCTION

1.      Plaintiffs have commenced this action to stop pervasive, government-sponsored religious discrimination. The Village of Bloomingburg (the "Village" or "Bloomingburg") and the adjoining Town of Mamakating (the "Town" or "Mamakating"), acting on behalf of an aggressive and hateful group of their residents, are engaged in a conspiracy to prevent Hasidic Jews from buying houses, establishing a private religious school, and operating businesses in their community. After members of the Hasidic community began to move into the area, Bloomingburg and Mamakating instituted a number of roadblocks designed to stop the community from growing. These municipalities are engaged in a series of patently illegal actions to block lawful, approved, and long-planned developments in Bloomingburg and Mamakating.

2.      The anti-Semitic animus is unmistakable. In the Village of Bloomingburg, on at least five separate occasions over this past summer, an individual broke the windows of Jewish-owned businesses in frightening acts of vandalism. Adjacent to the Villages of Chestnut Ridge ("Chestnut Ridge"), a planned new housing development, a landowner erected a 20-foot tall, wooden cross informing new Hasidic residents that they are unwelcome. Angry protesters have hectored and cursed at Orthodox Jewish women as they push babies in strollers through the public streets. And one of the organizers of the anti-Hasidic opposition has admitted that the opposition to Chestnut Ridge began only after residents learned that "the developer planned a Hasidic community." This is all just the tip of the iceberg.

3.      The Village and Town are seeking to use their political power, economic pressure, zoning laws, and sheer intimidation to prevent a certain type of people from joining their community. This type of intolerance might sound like a story from the Civil Rights era in the South. But it is unfolding right now in a municipality just 75 miles from New York City. In the United States, local governments and residents may no more prevent other citizens from moving into their neighborhoods based upon their religious observances than on the color of their skin.

4.      The Village and Town have taken increasingly lawless actions over the course of the last year. To take one example, Plaintiff Learning Tree has been seeking, for over a year now, to obtain routine site plan approvals to open a private religious school, operated by the Bloomingburg Jewish Education Center, for the instruction of Hasidic Jewish children. The religious school is urgently needed by Hasidic residents, whose religious practices otherwise oblige them to home school their children or to send them to parochial schools well outside the area. The religious school is a permissible use under the zoning code, and Learning Tree sought only to widen the driveway to permit an adequate turning radius for school buses and to site a parking lot on an adjacent parcel.

5.      Because opponents feared that opening a religious school would encourage additional Hasidic families to move into the area, Learning Tree's application faced vehement opposition. Hundreds of angry residents mobbed the first meeting of the Village Planning Board on August 29, 2013, shouted down the board members, and forced the meeting to be canceled. That scene repeated itself a month later on September 26, 2013, when the Planning Board was again forced to adjourn without voting on Learning Tree's application. Finally, on December 12, 2013, with the State Police looking on to control the crowd, the Planning Board and its members

conducted the meeting, yielded to public pressure, and voted to deny the school's application without any substantive review.

6. The Planning Board provided no legitimate explanation for denying what should have been a routine approval. During the vote, Planning Board Member and Defendant Anne Heanelt stated, "I'm just voting no on this," to which she received raucous applause from the crowd. Planning Board Member and Defendant Andrew Finnema asked, "Why do we need another school in Bloomingburg?" The Planning Board plainly could not deny Hasidic Jews their right to religious instruction based upon the existence of a secular public school, and the purported "need" for a school was legally irrelevant to the Planning Board's consideration of whether the driveway may be widened and a parking lot sited next door.

7. After Learning Tree challenged the denial in state court, the New York Supreme Court voided the Planning Board's action in May 2014 and ordered the Planning Board to reconsider the site plan application. Rather than comply, the Village simply dissolved the Planning Board and the Zoning Board of Appeals and empowered the Mamakating Planning Board to administer the Village Zoning Code. These efforts were plainly intended to impose yet more delay on Learning Tree. Indeed, the Village did not provide any application files to the Mamakating Planning Board, which demanded that Plaintiffs complete and submit new applications.

8. The Mamakating Planning Board still has taken no action. Rather, it has deliberately embarked on a wasteful and time-consuming review of the proposed private religious school, ignoring all previous information that Learning Tree and its engineers had provided to the Village Planning Board. The Mamakating Planning Board has enlisted multiple building consultants and engineers to review the projects. Since new officials were elected this

year with the goal of blocking Hasidic immigration, two separate engineers have been fired and a third hired just recently. Each time a new building engineer is hired, the process is delayed while the new engineer, or planner, or Code Enforcement Officer re-reviews the project, instead of continuing where the prior engineer or consultant left off.

9.     As a result, one year later, Learning Tree remains blocked from obtaining routine approvals to widen the driveway and site a parking lot on an adjacent property. Despite having submitted its application back in 2013, the religious school has not been able to open in time for 2014-2015 school year.

10.     Defendants have engaged in similar malfeasance in an effort to prevent Sullivan Farms from completing development of the fully approved Chestnut Ridge, a 396-unit townhouse project. While the Chestnut Ridge development will be open to persons regardless of their faith, Defendants believe that many Hasidic persons will live there, and so they have sought to use government power to prevent further development.

11.     Nearly eight years ago, after a public hearing, Bloomingburg annexed the land underneath Chestnut Ridge and authorized the development process to begin. After completing a lengthy review process, Sullivan Farms filed the final subdivision plot in June 2011. In summer 2012, model town homes were constructed and work commenced on a wastewater treatment plant. Sullivan Farms obtained building permits for 126 units during the summer of 2013, and 48 units have been constructed.

12.     Over the past year, Defendants have blocked further development at Chestnut Ridge based upon a variety of bad faith schemes. In March 2014, opponents of the project succeeded in electing Defendant Frank Gerardi as mayor on an express platform of blocking further immigration of Hasidic Jews into Bloomingburg.

13.     In June 2014, the Village placed a moratorium on all development in the Village based upon a purported "hazardous disposal" emergency.  But there is no hazardous waste disposal issue in the Village, and Sullivan Farms and its affiliates are responsible for most, if not all, of current Village development.  Thus, the moratorium is nothing more than a pretext for blocking Sullivan Farms' efforts to develop Chestnut Ridge and other properties that may serve the religious and cultural needs of the growing Hasidic population.

14.     Pursuant to this moratorium, the Village has temporarily suspended considering and issuing applications for all residential and commercial building permits for 90 days, with possible extensions that could last up to a year.  The moratorium was allegedly enacted to "allocate limited Village resources toward the investigation of a substantial number of complaints about the reported and documented failure of some residential and commercial owners and contractors" to comply with the Building Code.

15.     These purported "health and safety" complaints referenced by the Mayor, however, include allegations that a "Torah was observed being brought into unit," that a building "appears to be a gathering place.  Maybe a shul [synagogue]?" and that a private residential pool was being used as a mikvah, a Jewish ritual bath.

16.     Unfortunately, Mayor Gerardi has taken a personal interest in ridding the Village community of Hasidic residents.  Unlike previous mayors, Gerardi has sought personally to inspect many Jewish-owned properties in search of code violations.  Gerardi, working closely with the Village Clerk, defendant Eileen Rogers, has repeatedly directed the Village's building inspector to engage in the discriminatory enforcement of Village regulations, even when there are no code issues.  For example, after a stop work order was issued for one of the properties owned by certain Plaintiffs, Rogers asked a former building code enforcement officer to clear out

6

a Jewish-owned building that the Mayor said individuals were entering and exiting. Merely "entering and exiting" premises owned by private residents is not an activity that may be regulated by the Mayor, the Village Clerk, or a building code enforcement officer.

17.    Having suspended development and dissolved the Village Planning Board, the Village of Bloomingburg is now threatening to dissolve itself. Bloomingburg has scheduled a September 30, 2014 referendum at which it will ask its residents to dissolve the Village and cede all jurisdiction to the Town of Mamakating. As with the Planning Board gambit, the Village hopes that by dissolving itself, it may undo prior zoning and subdivision approvals for Jewish-owned development projects, cause Plaintiffs further discouragement and delay by impairing their constitutional rights, and wholly avoid its current court-ordered obligations. These actions are unmistakably motivated by discriminatory animus against the religion of the people who are moving into Bloomingburg.

18.    These discriminatory actions speak louder than words, yet in private settings, the Town and Village leaders have left no ambiguity about their intentions. For example, the newly elected Mamakating Supervisor, defendant William Herrmann, told a former employee that he was elected to "stop the Jewish infiltration," and that the purpose of transferring Bloomingburg land to Mamakating would be to keep "the Jews" out of the area. Gerardi similarly has declared that he was elected to keep "those people" out and to condemn Jewish-owned buildings. A Village trustee, defendant James "Jimmy" Johnson, has repeatedly referred to Hasidic women in derogatory terms and has voiced his objection to their pushing baby carriages on streets in the Village.

19.    Defendants know that if Plaintiffs are forced to contest each and every unlawful denial of a zoning issue or discriminatory enforcement of a building regulation in the state

7

courts, development will continue to be delayed, and the costs to Plaintiffs will continue to increase exponentially. Because in the United States of America, it is simply unlawful for local government officials to engage in such a pervasive campaign of religious discrimination, Plaintiffs have commenced this action pursuant to the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, among other provisions of law. Plaintiffs respectfully ask this Court to compel Defendants to end this unlawful campaign, to clear the road blocks imposed upon lawful development, and to award Plaintiffs damages and attorneys' fees, as appropriate under the law.

## PARTIES

20.     Plaintiff Bloomingburg Jewish Education Center is a not-for-profit religious trust that will be the tenant of Learning Tree and the operator of a private religious school located at 132 Main Street in Bloomingburg.

21.     Plaintiff Sullivan Farms is a New York corporation and is the record owner of the properties on which the Chestnut Ridge conservation subdivision is being built.

22.     Plaintiff Learning Tree is a New York limited liability company and is the record owner of the property on which the private religious school will be operated.

23.     Plaintiff Malka Rosenbaum is a resident of Bloomingburg, New York. She has seven children whom she currently home schools because the Bloomingburg Jewish Education Center has been prevented from opening. Mrs. Rosenbaum also has been subject to other acts of discrimination in Bloomingburg.

24.     Plaintiff Sheindel Stein is a resident of Bloomingburg, New York. She intends to send her children to Bloomingburg Jewish Education Center after it opens.

8

25.     Plaintiff Commercial Corner is a New York limited liability company and is the record owner of a retail building located at 79 Main Street in the Village of Bloomingburg.

26.     Plaintiff Winterton Properties is a New York limited liability company and is the record owner of the property on which the mikvah is being built.

27.     Defendant Village of Bloomingburg is a political subdivision of the State of New York, with principal offices located in Bloomingburg, Sullivan County, New York.

28.     Defendant Village Board of Trustees of the Village of Bloomingburg, New York is the legislative body of the Village of Bloomingburg, and adopted Village Local Law Nos. 4, 5, and 6 of 2014, which are subject to challenge in this action.

29.     Defendant Frank Gerardi is the Mayor of the Village of Bloomingburg, New York.

30.     Defendant Eileen Rogers is the Village Clerk of the Village of Bloomingburg, New York.

31.     Defendant Planning Board of the Village of Bloomingburg, New York is a village planning board duly organized under the laws of the State of New York. The Planning Board issued the denial of Learning Tree's site plan application for development of the private religious school and was purportedly dissolved pursuant to Village Local Law No. 4 of 2014, which is subject to challenge in this action.

32.     Defendant Andrew Finnema was a member of the Planning Board at the time that Learning Tree's application for site plan approval was denied.

33.     Defendant Ann Haenelt was a member of the Planning Board at the time that Learning Tree's application for site plan approval was denied.

34.     Defendant Joseph B. Roe was a member of the Planning Board at the time that Learning Tree's application for site plan approval was denied.

35.     Defendant Town of Mamakating, New York is a political subdivision of the State of New York, with principal offices located in Wurtsboro, Sullivan County, New York.

36.     Defendant Town Board of the Town of Mamakating, New York is the legislative body of the Town of Mamakating, and adopted a local law to accept the transfer of authority from the Planning Board of the Village of Bloomingburg in accordance with Village Local Law No. 4 of 2014, which is subject to challenge in this action.

37.     Defendant Planning Board of the Town of Mamakating, New York is a town planning board duly organized under the laws of the State of New York.  The Town Planning Board purports to exercise the authority of the Village Planning Board pursuant to Village Local Law No. 4 of 2014, which is subject to challenge in this action.

38.     Defendant Katherine Roemer is a Trustee of the Village of Bloomingburg.

39.     Defendant James Johnson is a Trustee of the Village of Bloomingburg.

40.     Defendant William Herrmann is the Supervisor for the Town of Mamakating.

### JURISDICTION AND VENUE

41.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and § 1367.

42.     Venue in the Southern District of New York is based upon 28 U.S.C. § 1391(b). All Defendants reside in and the events or omissions giving rise to this action occurred in this District.

### FACTUAL BACKGROUND

43.     This action arises out of the efforts by government actors in Bloomingburg and Mamakating to oppose the development of projects that they believe will be used by, or

inhabited by, Hasidic Jews. The projects at issue here include the Chestnut Ridge housing development, a private religious school, and a mikvah (a Jewish ritual bath used to obtain purity), intended to serve current and future residents of Bloomingburg. Plaintiffs and related-entities also own numerous other properties in the Village and Town. Those properties include multi-family homes, single-family homes, and local businesses.

## I.     THE VILLAGES OF CHESTNUT RIDGE

44.     The Chestnut Ridge project is a Planned Unit Development ("PUD") for a conservation subdivision, including 396 townhomes, a community clubhouse, and recreational amenities. The site is located only one-half mile from the Village center. The townhome project was designed as a walkable community with the site development focused on upland areas to preserve large contiguous open space areas and the wetlands within those areas.

45.     Chestnut Ridge will be open to persons of any religious faith, and while brokers-only "soft openings" have recently begun, Sullivan Farms has not yet sold any homes to any person or community of persons. Many local residents and government officials believe that the project will be inhabited principally by Hasidic Jews. *See, e.g.*, *Groups Rally To Fight Private School in Bloomingburg*, Times Herald Record (Oct. 7, 2013), *available at* http://www.recordonline.com/apps/pbcs.dll/article?AID=/20131007/NEWS/310070332/1/NEWS38.

46.     In December 2006, the Village of Bloomingburg annexed from the Town of Mamakating the 198-acre property on which the Villages of Chestnut Ridge is located. Following a public hearing on November 2, 2006, Bloomingburg and Mamakating, as co-lead agencies, accepted the petition to annex the Chestnut Ridge project site and certain other real property from the Town into the Village. They also issued a negative declaration of significance on the proposed annexation pursuant to the New York State Environmental Quality Review Act ("SEQRA"), thus completing the SEQRA process.

11

47.　The Village found that the proposed annexation was in the public interest because "(a) lands upon which the current sewer treatment plant owned and operated by the Village will be annexed from the Town to the Village, and (b) the remaining annexed lands will be able to access sewer and water services upon their improvement and improvements to the sewer treatment plant operated by the Village."

48.　The Town also determined that the annexation was in the public interest and thus adopted an order of annexation.　Upon approval of the annexation, the Village placed the annexed properties in the R-1 zoning district with a PUD rider in December 2006.　Sullivan Farms then began a multi-year process to obtain the necessary Village approvals for construction.

### A.　Bloomingburg Approves the Villages of Chestnut Ridge

49.　In 2008, Bloomingburg adopted a local law confirming that the annexed lands had been placed in the R-1 zoning district with a PUD rider upon their annexation.　Sullivan Farms then applied for site plan and subdivision approval for residences.　The Village Board of Trustees assumed lead agency status for the environmental review of the project, pursuant to SEQRA. The Village Board required the preparation of an environmental impact statement—the highest level of environmental review in New York—and then issued a SEQRA statement of findings. The open and public environmental review of the project was completed in July 2009.

50.　On May 6, 2010, the Village and Sullivan Farms entered into a development agreement in which Sullivan Farms agreed to construct for Bloomingburg a new, badly needed wastewater treatment plant at a cost of over $5 million.　Construction of the wastewater treatment plant has since been completed, and the plant was transferred to the Village on June 24, 2014.

51.    The Planning Board granted Sullivan Farms final conditional subdivision approval on June 24, 2010. Following the posting of a bond related to the wastewater treatment plant, the Chairman of the Planning Board signed the final subdivision plat and filed it with the Sullivan County Clerk and Village Clerk on or about June 20, 2011.

52.    In August 2011, Sullivan Farms also obtained approvals from the New York State Department of Health for the subdivision plans for the project, including the related water supply infrastructure. Sullivan Farms also obtained building permits from the Village and constructed three model townhouses to show to prospective purchasers. These model townhouses were completed in the summer of 2012.

### B.    The "Rural Community Coalition" Organizes To Prevent Hasidic Persons From Living in Bloomingburg

53.    On July 12, 2012, certain residents of the greater Mamakating area formed a group to oppose the Chestnut Ridge development. They called themselves the "Rural Community Coalition." According to Holly Roche, the president of the "Coalition," Bloomingburg residents had known for six years about the planned Chestnut Ridge development, but they did not oppose it because "[a]t that point in time, it was not known that the developer planned a Hasidic community."

54.    Ms. Roche has claimed that she initially believed that Chestnut Ridge would consist of 125 "luxury townhouses" and a golf course, even though Bloomingburg had never approved such a plan, and in fact, the plans for 396 townhouse units for the site were publicly known and filed since 2008 at the latest. It is apparent that the Rural Community Coalition's real objection is to the religious practices of Hasidic Jews.

55.    On October 16, 2012, the Rural Community Coalition commenced an action captioned *Rural Community Coalition v. Village of Bloomingburg*, No. 2012-2888, in the New

York Supreme Court for Sullivan County, to invalidate the final subdivision approval granted to Sullivan Farms and to delay the development of Chestnut Ridge. In April 2013, the court dismissed that action as untimely and barred by the doctrine of laches.

56.     In June 2013, Sullivan Farms applied for building permits for the first phase of the residential development of the Chestnut Ridge project, and between July and November 2013, the Village granted Sullivan Farms 126 building permits. Sullivan Farms has since begun construction of 84 of those residential townhouse units, which were in various stages of construction by January 2014. Currently, 48 units have been completed.

57.     Since the advent of the Rural Community Coalition, the Chestnut Ridge project has faced vehement opposition from many local residents and over the past year, from Village and Town officials as well. The opposition is not based not on any legitimate fiscal, environmental, or geographic concern, but solely upon the religious practices of the people whom the opponents fear will join their communities.

58.     Public comments have demonstrated that opposition to Chestnut Ridge is premised on the religious beliefs of the Hasidic community. For example, on September 17, 2013, one opponent commented:

> I live in Bloomingburg, on the very street that this Hasidic Village is being built. I have been fighting this illegal development for a year. The developer is shifty and completely untrustworthy . . . It is DISGUSTING. They should be put away for what they are doing. The hate that people have for them has nothing to do with being anti-Semitic, it has to do with being anti-Hasidic, because these people are in a cult where they feel they are superior to others and don't have to follow the rules.

59.     As a small sample, other comments on news articles regarding the development of the Chestnut Ridge project have stated:

- "This is very bad news for the 420 people that currently inhabit this small town. Their lives will [] deteriorate with this new batch of scum moving in"

- "Great; more parasites in upstate NY"

- "Notice to the current residents of Bloomingburg . . . Enforce every by-law for cleanliness, grass cutting, etc. etc. as they will turn your town into a garbage heap"

- "Just what Bloomingburg doesn't need—Satmars"

- "These people are like alien life forms"

- "The resid[ents] of Bloomingburg will, unfortunately, yearn for a Final Solution"

- "The only solution is a preemptive tactical nuke"

60.    In addition, town residents placed signs adjacent to the developments expressing the view that the Jewish development was procured by "greed and politics" going "all the way to Albany" that will signal the death of the community.   These signs were permitted to hang in place in the Village for months.

61.    In order to demonstrate that Jewish persons are not welcome in Bloomingburg, residents have erected a 20-foot high wooden cross adjacent to Chestnut Ridge.   A picture of the cross, with the project in the background, is seen below:



62.   Unfortunately, this kind of anti-Semitic sentiment is not new to Bloomingburg and the surrounding region. On March 28, 2012, Jewish parents brought a lawsuit against the Pine Bush School District, which includes Bloomingburg, on the ground that school administrators had failed to stop rampant discrimination against Jewish public school students. *See* Complaint (Dkt. No. 25), *Eccleston v. Pine Bush Central School Dist.*, No. 7:12-cv-2303-KMK (S.D.N.Y. Mar. 28, 2012). Plaintiffs allege that the students had suffered both physical and psychological abuse in the form of relentless anti-Semitic discrimination, harassment, and bullying by other students, without any action by school officials to protect them. That case is currently pending.

63.   The U.S. Attorney for the Southern District of New York has investigated allegations of anti-Semitism at the Pine Bush Schools. *See* Benjamin Weiser, *U.S. Investigates Anti-Semitism Claims at Pine Bush Schools*, N.Y. TIMES, Nov. 13, 2013, *available at* http://www.nytimes.com/2013/11/14/nyregion/us-investigates-anti-semitism-claims-at-pine-bush-schools.html?_r=0.

### C.   Bloomingburg and Mamakating Support Litigation Seeking To Overturn Determinations They Made Over Seven Years Ago

64.   On or about January 24, 2014, the Rural Community Coalition commenced a second action against the Chestnut Ridge project in the New York Supreme Court for Sullivan County, entitled *Rural Community Coalition, Inc. et al. v. Village of Bloomingburg et al.*, No. 2014-212. That action seeks to enjoin construction of the project on the new legal theory that Bloomingburg's annexation of the project site—over seven years ago—was invalid under state law.

65.   By this point, the Rural Community Coalition had succeeded in electing local officials in Mamakating who supported their goal of preventing additional Hasidic people from

16

moving into the area.  William Herrmann, the Mamakating Town Supervisor, took office in January 2014.  He has told one Town employee that the "people elected him to stop the Jewish infiltration," that was "the only reason he took office," and that the Town would seek to take back the Chestnut Ridge property in order to help "keep the Jews out of the area."

66.     At Mr. Herrmann's direction, Mamakating appeared in support of the private plaintiffs' application for an injunction, even though the Town was a co-petitioner in the annexation petition, had expressly approved the annexation in the 2006, and was named as a *defendant* in the litigation.  The Town even served cross claims attacking the approvals that had been granted for Chestnut Ridge, and it separately moved for a preliminary injunction to stop construction and the issuance of any building permits or certificates of occupancy.

67.     Bloomingburg was also a co-petitioner in the annexation petition, had expressly approved the annexation in 2006, was named as a defendant in the litigation, and initially opposed the injunction.  However, the Village elected a new mayor, defendant Gerardi, and two new trustees in March 2014.  Those individuals ran on a platform to stop additional Hasidic Jewish individuals from moving into the Village.  With a new administration in place, the Village withdrew its prior opposition and supported the issuance of an injunction prohibiting construction of the Chestnut Ridge project.  The Village's filing also breached the development agreement with Sullivan Farms pursuant to which the developer built a $5 million sewage plant and the Village pledged in return to cooperate in facilitating the construction of the project.

68.     Bloomingburg has annexed other land and properties from Mamakating over the past 14 years, including for a senior housing project in 2000.  The land for the senior housing project employed the same annexation process that was used for the 2006 Chestnut Ridge annexation.  The Town's and Village's decisions to challenge the 2006 annexation of the

Chestnut Ridge project site and adjoining lands, but not the 2000 annexation, plainly demonstrates that the litigation against the Chestnut Ridge project is a part of the Town's and Village's concerted campaign of discrimination against Hasidic Jewish individuals and businesses.

69.    In February 2014, the New York State Supreme Court issued a preliminary injunction enjoining nearly all construction on the Chestnut Ridge project site.  The Appellate Division, Third Department, however, vacated the injunction on June 5, 2014.  The Third Department reasoned that the private plaintiffs could not demonstrate a likelihood of success on the merits because the suit was likely untimely, since the annexation was a public action that had occurred nearly eight years before.  The state court litigation remains pending.

### D.    Bloomingburg Seeks To Block Additional Development Through a Village-Wide Building Moratorium

70.    One week after the Appellate Division vacated the preliminary injunction blocking development at Chestnut Ridge, on June 12, 2014, Bloomingburg adopted a law that sought to achieve the same effect.  Local Law No. 6 of 2014 establishes a Village-wide moratorium suspending the receipt, consideration, or issuance of *all* residential and commercial building permits in the Village, essentially foreclosing all construction and repair in the Village, including at the fully approved Chestnut Ridge and the private religious school.  The moratorium lasts 90 days by its terms, with the possibility of multiple extensions of up to 360 days.

71.    Village Local Law No. 6 was promulgated pursuant to a message of necessity from Mayor Gerardi, which states:

> The facts necessitating an immediate vote on the proposed local law are as follows: The Village has received a substantial number of complaints about the reported and documented failure of some residential and commercial owners and contractors to comply with the dictates of the Building Code of New York State, the Multiple

Residence Law of New York State, the Fire Code of New York State, Industrial Code Rule 56-Asbestos, NYCRR Title X, Part 67-Lead Paint, and other applicable Federal and State law, which non-compliance poses an immediate and substantial risk to the health, safety, and welfare of those living and working in the Village.

72.     The Village also has contended that Local Law No. 6 sought to ensure that its zoning laws conform to the comprehensive plan of the Town and the handling of hazardous waste. Yet these reasons are clearly pretextual. First, the Town's comprehensive plan does not apply at all to the Village's operations. Second, as noted, Local Law No. 6 was enacted just one week after the New York State Appellate Division vacated the preliminary injunction that had enjoined the construction of Chestnut Ridge project. There can be no serious doubt but that the moratorium was issued to replace the injunction with yet another roadblock to development.

73.     Third, the Village does not have any regulatory authority over the handling of hazardous waste, including asbestos. Asbestos control is under the exclusive purview of the New York State Department of Labor. Moreover, Local Law No. 6 was purportedly enacted in response to "the investigation of a substantial number of complaints" allegedly regarding compliance with the Building Code that related *only* to Jewish-owned properties and included complaints that individuals were entering residences with a Torah and that Jewish-owned buildings were being used as a shul or a mikvah. These complaints did not concern hazardous materials.

74.     Fourth, the Chestnut Ridge project does not concern any hazardous waste issues. Chestnut Ridge consists entirely of new construction with new materials that were approved and are regularly inspected by the Village Building Inspector. In fact, the Village's former Building Inspector, Alfred Fusco III, promptly responded to a specific complaint made in May 2014 requesting an asbestos inspection by saying that "I checked. No asbestos possible on structure."

75. Defendants' motivation is further demonstrated by the fact that the Village has used the law to avoid acting upon permit applications submitted before its enactment. Notably, Plaintiffs submitted approximately 80 building permit applications, including for a clubhouse and fully site-plan approved shopping center, prior to the issuance of Local Law No. 6. These applications were ignored, and to this day, no action has been taken.

76. Similarly, a building permit application to renovate an existing house for use as a residence for Rabbi B.N. Halberstam has been pending before the Mamakating Building Inspector for months without any action.

77. The moratorium even precludes Hasidic Jewish individuals from moving into existing housing in the Village by preventing the construction of Kosher kitchens that require separate sinks for dairy and meat items. The moratorium is effectively keeping new Hasidic Jewish residents out of the Village by refusing to issue any building permits.

78. There is simply no reasonable doubt but that Local Law No. 6 of 2014 was enacted to impair Plaintiffs' constitutionally vested rights and to exclude Hasidic Jewish individuals and uses of land necessary for the practice of Hasidic Judaism from the Village.

## II.   THE PRIVATE RELIGIOUS SCHOOL – BLOOMINGBURG JEWISH EDUCATION CENTER

79. Defendants' campaign of religious discrimination has also extended to their efforts to thwart the development of a religious school on 132 Main Street. The Bloomingburg Jewish Education Center, a not-for-profit religious corporation, intends to operate the private religious school for the instruction of Hasidic Jewish children.

80. As a Jewish private religious school, the Bloomingburg Jewish Education Center will provide its students with a dual curriculum in Judaic and general studies. Judaic principles and concepts are reinforced in both general study and religious study classes. At the

kindergarten and nursery school levels, no distinction is drawn between religious and general studies. In the first through eighth grades, approximately one-half of the school day is spent on general studies and the other half on Judaic studies, including study of the Talmud and Jewish history.

81.     Principles of Orthodox Judaism provide that it is the parents' duty to teach the Torah to their children and the school will be operated in accordance with this, and other, Judaic principles. Thus, the private religious school constitutes a land use protected by RLUIPA.

82.     Learning Tree's property currently has an existing building on the property that was constructed on or about April 2013 for use as an antique car garage. Learning Tree also owns an 11.43-acre parcel of vacant real property that is adjacent to the proposed religious school site and that would be available for use in connection with the school.

### A.   Bowing to Intimidation and Discrimination, the Village Planning Board Denies Routine Approvals To Prevent the Religious School from Opening

83.     On July 10, 2013, Learning Tree submitted an application to the Village Planning Board seeking approval to amend the site plan for the proposed religious school site in order to convert the existing garage building into a private religious school. There were no proposed changes to the size, location, or footprint of the existing building. The only changes required to accommodate site plan approval for Learning Tree's proposed use as a private religious school was to widen the existing accessway to ensure an appropriate turning radius for school buses and related improvements to ensure adequate parking.

84.     In connection with its site plan application, Learning Tree submitted a full environmental assessment form pursuant to SEQRA, drawings depicting Learning Tree's proposed site plan, and letters to the Village Planning Board's engineering consultant providing additional information concerning the project. Because Learning Tree's proposed site plan also

contemplated use of Learning Tree's adjacent parcel for reserve parking, should it be needed at some point in the future, Learning Tree also began the process to consolidate the adjacent parcel with the proposed school site.

85.     After the Sullivan County Real Property Tax Department indicated that the Planning Board must approve the requested changes, Learning Tree submitted an application to the Planning Board seeking approval for the lot consolidation for use in connection with the proposed private religious school.

86.     Learning Tree's application was met with vehement local opposition.  During the Planning Board proceedings, hundreds of area residents voiced their opposition to the religious school.   The Planning Board was set to consider Learning Tree's application for site plan approval at its August 29, 2013 meeting, which was held at Village Hall.  Before the meeting could begin, however, a crowd of over 150 opponents overwhelmed Village Hall, forcing the meeting    to    be    cancelled.    A    video    of    this    meeting    is    available    at http://www.youtube.com/watch?v=cIoBHPGl_uU.

87.     Intent on preventing the Planning Board from acting on Learning Tree's application, over 350 opponents of the proposed private religious school again attempted to overrun the Village Planning Board's meeting on September 26, 2013, shouting and chanting "Shut it down," "You can't hold this meeting," "We're not going to let you hold this meeting," "The meeting will not proceed," "Postpone the meeting," and "This meeting is over" at the Planning    Board    members.    A    video    of    this    meeting    is    available    at http://www.youtube.com/watch?v=wZyEQ7rYoIg.

88.     The crowd was so raucous and unruly that the State Police had to be called to ensure the safety of Learning Tree's representative and the Village Planning Board members.

The former Mamakating Supervisor, who attended the September 26 meeting, called the crowd "an angry mob scene."

89.     In order to appease the crowd at the September 26 meeting, Defendant Anne Heanelt moved to deny Learning Tree's application without affording Learning Tree's representative any opportunity to address the Board regarding the project or conducting the requisite SEQRA review.

90.     Then-Village Attorney John Kelly advised the Village Planning Board that without a presentation from Learning Tree's representative regarding the project or performing the Board's obligations under SEQRA, any determination would likely be invalid and annulled. Upon Mr. Kelly's advice, Ms. Haenelt's motion failed.

91.     Over the opponents' shouts and taunts, the Planning Board managed to vote to appoint itself as lead agency for the SEQRA review of Learning Tree's application at the meeting. The Planning Board was otherwise forced to close the September 26 meeting because of the opponents' raucous conduct.

92.     Learning Tree's application for site plan approval next came up for consideration at the December 12, 2013 meeting of the Planning Board. The meeting was moved to a nearby firehouse because over 350 opponents of the private religions school flooded the meeting. A video of this meeting is available at http://www.youtube.com/watch?v=wZyEQ7rYoIg.

93.     Notably, the only issues before the Planning Board at that meeting in connection with Learning Tree's application were to (1) deem the site plan application complete, (2) issue a negative declaration under the State Environmental Quality Review Act, and (3) schedule a public hearing (even though a public hearing is not required).

94.     At that meeting, the discussion of Learning Tree's site plan for the school lasted less than eight minutes, and the Planning Board engaged in no discussion of the considerations permitted under New York Village Law § 7-725-a and Article XI of the Village's zoning code with respect to the school.

95.     Instead, Defendant Andrew Finnema simply asked Learning Tree's representative: "Why do we need another school in Bloomingburg?"  Whether a new school is needed in the Village is not a permissible consideration of the Village Planning Board's site plan review under New York Village Law § 7-725-a and the Village's zoning code.  It is likewise unlawful under RLUIPA for the Planning Board to deny an application for a religious school on the ground that a secular school was available.

96.     Defendant Finnema similarly concluded that the school's application should be denied because he did not believe that the Village needed a new school, stating: "If this is a community [Chestnut Ridge] that's been incorporated into this Village that's -- anybody here can buy a unit, then they [the children] can go to Pine Bush School District.  I don't see the need for a school."   Defendant Heanelt likewise did not entertain any discussion of Learning Tree's proposal, stating: "I'm just voting no on this."  With each statement by Defendants Finnema and Heanelt, the crowd erupted in applause.

97.     Without addressing any of the permissible statutory considerations for the site plan review, the Planning Board arbitrarily denied Learning Tree's application on a three-to-one vote.  Although the Village Code requires the Planning Board to notify Learning Tree in writing of the reason for its disapproval, the Planning Board never provided any explanation as to why its application was disapproved.  Thus, the Planning Board's vote showed that it had no intention of permitting the private religious school in the Village, regardless of the law.

98.     Learning Tree's application for the proposed lot consolidation was also perfunctorily denied at the December 12, 2013 Village Planning Board meeting. The opponents thus accomplished what they set out to do: impose a discriminatory road block in the way of the Hasidic Jewish population in the hope that Hasidic citizens will be deterred from moving into Bloomingburg or that those already there will be obliged to move away.

**B.      Confronted with Court Imposed Obligations,
the Village Board Voted To Dissolve the Planning Board**

99.     Learning Tree commenced a N.Y. C.P.L.R. Article 78 proceeding in New York State Supreme Court, Sullivan County to seek redress from the Village Planning Board's illegal actions. In March 2014, the New York Supreme Court advised the parties that it intended to void the Village Planning Board's illegal action and directed the Planning Board to reconsider the applications. Notwithstanding that direction, the Planning Board failed to convene a meeting to consider the applications for the private religious school.

100.    On May 12, 2014, the New York Supreme Court annulled the denial of site plan approval and ordered the Planning Board to reconsider Learning Tree's applications based solely on the factors set forth in both the New York Village Law and Village's zoning law within 30 days of the court's order. The court extended that period to June 30, 2014.

101.    Rather than comply with the court's order, the Village Board of Trustees voted to dissolve the Planning Board and enacted a local law passing off its planning board functions to the Mamakating Planning Board. The Town subsequently entered into an inter-municipal agreement to facilitate this subterfuge. By dissolving the Planning Board, the Village abdicated its obligation to consider and determine the application for site plan approval of the private religious school, in furtherance of the scheme to exclude the school and any other uses of land that would serve the needs of Hasidic Jewish residents in the Village.

102.    Reflecting the arbitrary nature of these activities, the dissolution of the Village Planning Board and the Zoning Board of Appeals was invalid under state and local law. N.Y. Village Law Sections 7-718(9) and 7-712(9) allow for removal of planning board members only for cause, after a public hearing. No such hearing took place here and New York courts have held that the abolition of a planning board and replacement with a new board constitutes an unlawful de facto removal without cause.

103.    Village Law Sections 7-741(4)(a) and (b) do not provide for the wholesale transfer of planning board and zoning board of appeal authority from one municipality to another. Rather, the Village Law authorizes "consolidated" planning and zoning boards "which may replace individual (boards)." The Village has, therefore, acted in direct violation of the New York Village Law in a plain attempt to circumvent the orders of the New York Supreme Court. The Village transferred authority from the Village boards to the Town boards, with absolutely no consideration given to how the interests of the Village (and its distinct zoning and subdivision laws) would be addressed.

104.    The Mamakating Planning Board meanwhile has responded by sitting on the site plan approval, and it has refused to take action by the court-ordered deadline that bound the Village Planning Board. Instead, in a transparent effort at delay, the Town Planning Board has claimed that it must conduct a *de novo* review of the applications, including further review of the site plan application—made over *a year ago* essentially for the reuse of an existing building.

105.    The Mamakating Planning Board has requested that Learning Tree re-submit materials previously provided to the Village Planning Board; it has invited people who have no official roles in the Town to comment on Learning Tree's application; it has enlisted multiple building consultants and engineers to review the projects with respect to their pending

application; and it has charged their various fees to Learning Tree, over and over again as it repeatedly switches engineers and consultants.

106. The Mamakating Planning Board fired its most recent engineer and retained a new one, even though the school had already been reviewed by at least five different engineers and building inspectors by now. The new Code Enforcement Officer has rendered a determination that the existing, approved building is not oriented appropriately to Main Street, notwithstanding the fact that the previous Village Planning Board and Village Building Inspector issued site plan approval, a building permit, and a certificate of occupancy certifying that Learning Tree's building complied with the Village's Zoning Code.

107. In addition, given the building moratorium imposed by Local Law No. 6, the Village has further stalled the completion of the religious school until that moratorium is lifted or declared invalid, even if site plan approval were to be granted in the interim.

108. As result of these unlawful actions, Learning Tree has been unable to obtain routine site approvals for over a year, and Bloomingburg Jewish Education Center has not been able to open for the 2014-2015 school year. The net effect of these actions is that the Village and the Town are effectively preventing the construction and operation of a private religious school within the Village limits, thereby substantially burdening the religious exercise of the students who would attend the school.

109. These actions have caused injury to Bloomingburg Jewish Education Center and Learning Tree. They have also caused specific injuries to some of the individual plaintiffs in this action. For example, Plaintiff Sheindel Stein currently must provide transportation for her children to Kiryas Joel schools, which are more than twenty-five minutes away. Bloomingburg Jewish Education Center would be within walking distance from her home.

110.    Plaintiff Malka Rosenbaum has seven children, ages six weeks to 14 years.  She intends to send her school-age children to Bloomingburg Jewish Education Center, but is currently obliged to homeschool them because the religious school is not open.  This prevents Mrs. Rosenbaum from obtaining a job.  Additionally, Mrs. Rosenbaum is not able to teach her sons all of the subjects required by their religion. Her husband, Rabbi Chaim Rosenbaum, must spend additional time teaching his children when he returns from work in the evenings.

### C.    The Village Fabricates Additional Permitting Requirements for Property Being Used for Religious Purposes

111.    The Village also has fabricated a permitting requirement for drilling a well as a way of creating an additional obstacle for Learning Tree.  In Plaintiffs' prior experiences with the Village, no well permit has ever been required.  For example, a well was necessary to build the wastewater treatment plant, but no permit was required to drill the well.  Although the control building required a permit, no permit was required to drill the well.  Plaintiffs also drilled five test wells for the Chestnut Ridge project, but were never required to obtain permits.

112.    One week after the completion of the well for the wastewater treatment plant, the Village Building Inspector, Joe Smith, issued a stop work order on a well being drilled by Learning Tree Properties stating that they had not obtained a permit to drill the well.

113.    As far as Plaintiffs are aware, the Village has never required anyone to obtain a permit for drilling a well.  In fact, the Village does not have an application for well permits.  Thus, the Village directed Learning Tree Properties to cross out the word "building" on the building permit application and replace it with "well."  This is another example of a discriminatory burden that the Village has imposed only on Jewish-owned properties.

### III.    THE DISSOLUTION PETITION

114.    In order to avoid the court orders against the Village and the Village's own issuance of prior approvals, the Village is now conspiring with the Town to dissolve itself.  If this occurs, then the Town of Mamakating would assume control over all affairs previously conducted by the Village.  As with the dissolutions of the Village Planning Board and the Village Zoning Board of Appeals, the supporters of the dissolution petition hope that dissolving Bloomingburg will block further development and allow the Village to avoid its legal obligations.

115.    On May 20, 2014, the Village received proposals for professional services to conduct an "urgent" dissolution study.  On June 3, 2014, the Village Clerk, Eileen Rogers, emailed the New York State Grants Gateway indicating that she was "anxiously awaiting" information needed to submit a grant application because "the process of urgent and timely dissolution of the Village of Bloomingburg is dependent on obtaining this grant with the July 2 deadline."

116.    The Village of Bloomingburg has been in existence for 181 years.  It was founded in 1833. The sudden and "urgent" need to dissolve the historic Village can be only be attributed to Defendants' broader conspiracy of stopping or delaying existing development projects and preventing Hasidic Jews from moving into Bloomingburg.

117.    Working closely with Village officials, the Rural Community Coalition initiated its own dissolution petition, which the Mayor and the two members of the Bloomingburg board of trustees signed.  On July 7, 2014, the Village Clerk certified to the Village Board that the petition had the requisite number of signatures, and the Village Board called for a referendum.

118.    The Village Board scheduled the referendum vote for September 30, 2014, during the Jewish High Holy Days, in the ten-day period of time between Rosh Hashanah and Yom

Kippur. These holidays signify the most sacred time of the year in the Jewish faith. Defendants obviously hope that the Orthodox Jews of Bloomingburg will be distracted by their religious observances and therefore will refrain from participating in the referendum vote.

## IV. THE DISCRIMINATORY ENFORCEMENT OF THE VILLAGE BUILDING CODE AND OTHER ACTS OF RELIGIOUS DISCRIMINATION

119. Religious discrimination in the small Village of Bloomingburg is worsening every day. Village officials are continuing their efforts to stall progress of construction on Jewish-owned properties, and inconsistently applying building code regulations in an effort to penalize Jews throughout the Village. Members of the community, including Village officials such as the Mayor himself, have engaged in verbal harassment and made repeated anti-Semitic statements. These actions have escalated to acts of vandalism and assault towards members of the Hasidic community.

120. For example, a property owned by Plaintiff Winterton Properties at 51 Winterton Road in the Town of Mamakating is currently a single-family residence. Under the Town's Zoning Local Laws, single-family residences are exempt from the requirement of obtaining site plan approval. Nonetheless, Mamakating required Winterton Properties to apply for site plan approval in December 2013. The pending site plan application before the Mamakating Planning Board sought to convert the building's use from a day spa into a mikvah. In January 2014, while the site plan application was pending before the Town, Winterton Properties was served with a stop work order. However, this stop work order was issued after the Town of Mamakating Code Enforcement Officer's nonconsensual and warrantless search of the property. Notwithstanding this clear violation of Winterton Properties' constitutional rights, in March, the Town's Code Enforcement Officer initiated highly unusual criminal actions against Winterton Properties for failure to obtain a building permit and site plan.

121.   Skirting the municipal process is an ongoing theme by officials of both the Village and Town. For instance, a former village engineer, Tom Depuy was told by the engineer that replaced him, Alfred Fusco, Jr., that he too was removed because he refused to condemn Jewish-owned buildings. The new code enforcement officer (the third since the March election) is a friend of the Bloomingburg mayor, and he is expected to assist the mayor in stopping all "Jewish" building in the Village.

122.   According to another former Town official, Mr. Herrmann has stated that he plans to build an amphitheater in the park adjoining the Chestnut Ridge development. In so doing, he has stated that he would build the amphitheater speakers to point directly at Chestnut Ridge so that the noise would discourage people from living there.

123.   Mr. Herrmann, in an effort to strengthen the Rural Community Coalition presence, has appointed a number of vocal opponents of the Jewish community, who had made anti-Semitic and other derogatory comments to various town boards. These appointees include an alternate to the Town Planning Board, Richard Morris, who is openly supportive of the anti-Hassidic cause.

124.   Todd Korn, a former building code enforcement officer who performed Village inspections on behalf of Fusco Engineering & Land Surveying, had on numerous occasions been told to handle "those people's" properties differently. Those instructions came from Mayor Gerardi, Village Trustee James Johnson, and Village Clerk Eileen Rogers. On one occasion, Mr. Korn was told by Ms. Rogers to do something about a complaint that there was a "little Jew kid" riding his bike with no helmet. Mr. Korn responded to Ms. Rogers that he, as a building code enforcer, could do nothing to respond to this complaint.

125.    Mr. Korn was repeatedly asked to follow up on every complaint made regarding Jewish-owned properties, an attitude that did not exist for any other property in the Village. For instance, on another occasion, Mr. Korn received a complaint about a non-Jewish owned property and gave it to Ms. Rogers, who told Mr. Korn not to worry about that complaint, because "she's one of us."

126.    Fusco Engineering, for whom Mr. Korn works, had its contract with the Village terminated on August 13, 2014. The Village has since hired a new, more aggressive Code Enforcement Officer, who issues orders at the direction of Village, regardless whether he has the legal authority to do so.

127.    On August 18, Mayor Gerardi, trespassed onto Learning Tree's property in order to question a hydrogeologist, Bob Miller, about what he was doing on the property. Mr. Miller replied that he was "drilling an exploratory potable water well."

128.    Mayor Gerardi responded that the senior living home at 68 Godfrey Road was complaining that their well had gone dry, and implied that well drilling at the Learning Tree site caused this drought. It was not physically possible, however, for the drilling of test well at the Learning Tree site to affect 68 Godfrey Road, because the Learning Tree test wells had not yet withdrawn any water. In any event, given the distance between the properties, it is highly unlikely that any producing water supply wells at the Learning Tree site would have any impact on the 68 Godfrey Road water supply. In fact, the 68 Godfrey Road well had gone dry even before Learning Tree began drilling.

129.    The Village's stop work order sought to enjoin the drilling of water supply test wells in connection with the development on Learning Tree's property upon the ground that the well must comply with a provision of the Mamakating Town Code that purports to requires a

property owner to obtain a well permit before developing a water supply well in the Town. That provision, however, only applies outside the Village of Bloomingburg. The Village, along with its Code Enforcement Officer, lacks the authority under the New York Village Law, or any other statute, to enforce the Town of Mamakating's Code against Village properties.

130.    As a result of the Village's wholly discriminatory enforcement of its zoning law, Learning Tree's well driller was forced off the project site, which has further delayed the possible opening of the private religious school. The August 18, 2014 stop work order only further demonstrates the extent to which the Village is willing to go to prevent Plaintiffs from exercising their constitutional rights by conjuring and attempting to enforce new laws only against Jewish-owned properties. The Village's attempt to enforce the Town's Code against Learning Tree is clearly yet another step in the Village's discriminatory campaign.

131.    Mr. Korn also issued a stop work order at 79 Main Street, a property owned by Commercial Corner, which was formerly (and will soon reopen as) a hardware store. Mayor Gerardi, after hearing that Hasidic people were still entering and exiting the building, told Mr. Korn to throw "those things out." Mr. Korn informed the Mayor that if no work was being conducted, he could not merely prevent the owners of the building from entering and exiting. Ms. Rogers reacted with anger, asking Mr. Korn what use he is if he does not do what the Mayor and Ms. Rogers ask him to do.

132.    Plaintiffs have appealed the stop work order on 79 Main Street, because it was based upon an alleged change of use that did not occur. While on appeal, the order is stayed and cannot be enforced. But this has not stopped Village officials from abusing their authority. A second stop work order was issued on August 20, 2014 (dated September 20, 2014 – a date that has yet to occur) alleging the same violation and that no one should enter the property. The

second stop work order does not cite any change of facts or circumstances, nor does it issue a specific code violation Plaintiffs are alleged of violating. No reason was provided that would warrant the issuance of a duplicative order, and the Village has declined to issue any clarifying information.

133.    Section 12.5.1 of Village Zoning Code requires that the building code enforcement officer first provide notice of the violation being alleged, and an opportunity to remedy the alleged violation within a reasonable amount of time. Not only were Plaintiffs denied notice of the alleged violation prior to issuance of the second stop work order, but Plaintiffs were not provided with an opportunity to remedy any alleged violation.

134.    On August 20, 2014, a group of approximately 100 Jewish students from a nearby area visited Bloomingburg to pray in the morning, visit a restaurant, and then continue on to a field trip in the Catskill Mountains. With permission from the owner of 79 Main Street, Commercial Center, the students sought to use the building as a meeting place for their morning prayers, which take approximately forty minutes. During this meeting, a building code enforcement officer ordered them to vacate the building immediately. This officer threatened to call the State Police if the student group did not vacate the premises within ten minutes. Even though the officer had no authority to force this group out of the building, the group nonetheless complied with his discriminatory demands. After observing this harassment, a sympathetic non-Jewish resident of the Village invited the group to use his nearby lot to pray outdoors.

135.    In addition to 79 Main Street, Plaintiffs have tried to open a kosher pizza restaurant in a space that was previously also occupied by a pizza restaurant. This transition from one restaurant to another, without a change of use, should be routine and typically does not

require a building permit or any special governmental approvals. Nonetheless, this process was held up by the Village for many months.

136.    For instance, the Village required stamped plans for the installation of an oven hood in the restaurant. The manufacturer of the oven hood – the largest privately held fabricator of commercial kitchen ventilation systems in the United States with over 70 sales offices – advised that in the 38 years that they have been in business, they have never been required to provide stamped plans for a simple commercial oven hood.

137.    Similarly, on a different parcel of land owned by Plaintiffs two storefronts away, there is an above-ground gasoline storage tank. The Mayor made clear to Mr. Korn that the certificate of occupancy for the pizza restaurant is not to be issued until the gasoline storage tank is removed. The storage tank, however, is not located on the same property as the pizza restaurant and should in no way prevent the issuance of a certificate of occupancy for it. The only connection between the certificate of occupancy for the pizza restaurant and the storage tank is that they are both located on property owned by Jewish business owners.

138.    In stark contrast, a nearby non-Jewish business that required a change of use from a warehouse space to a retail thrift shop proceeded to open for business with no approvals and no building permits. No stop orders have been issued despite the fact that it is evidently in violation of Village regulations. Not only have the necessary permits not been obtained, the size of the shop's sign is too large under the Village's size regulations. Additionally, the sign is not affixed to the building as required. Instead, the sign is freestanding and weighed down by sandbags. But Defendants have not sought to bring this store, run by non-Jewish individuals, into compliance with the regulations.

139.    The Village's disparate enforcement of building regulations highlights its true intention to discriminate against Jewish businesses.

140.    Meanwhile, the harassment and intimidation of the Village's Jewish residents have intensified.  Angry protesters have hectored and cursed at Orthodox Jewish women as they push baby strollers through the streets.  They have similarly cursed and threatened Sullivan Farm's principals on a number of occasions, resulting in frequent complaints to the police. Hasidic residents have been cursed at while walking to religious services, with one 17-year old girl being yelled at to "eat shit and die."  Inflammatory comments like this are met with the overwhelming approvals of the crowds of protestors.  Coffee cups have been hurled at members of the Hasidic community walking through the streets of Bloomingburg.

141.    Plaintiff Rosenbaum and her family have been personally subjected to acts of discrimination occurring throughout Bloomingburg.  On one occasion, someone pushed her seven year old son's head while driving past him.  Cars have honked at her as they drove past. Mrs. Rosenbaum is also burdened by not having a mikvah in Bloomingburg because she must pay someone to drive her a considerable distance to get to one.

142.    The anti-Semitic sentiment throughout the community is unmistakable.  Jews are often belittlingly referred to as "those people" by members of the Village government and members of the community.  Workers completing jobs related to the housing development have been the subject of smashed car windshields, tossed beer bottles, and have even been told to "die, you Jew lover."  Bumper stickers depicting a red line through a picture of a Hasidic man with peyot (traditional side curls worn by boys and men in the Orthodox Jewish community) have been openly displayed throughout the community.

143.    In four out of six consecutive nights in June and July 2014, someone broke plate glass windows in Jewish-owned buildings that will house the kosher pizza shop and other businesses that will serve residents of the Village.  All of these buildings are owned by Plaintiff or entities related to Plaintiff.  In response to the acts of vandalism directed at the Jewish-owners properties, Mamakating Supervisor William Herrmann pointedly refused to characterize the event as a hate crime, which he derided as "the developer's interpretation of the event."  Instead, he opined that it was possible that the principals of Sullivan Farms had created a "self-produced event to deflect attention away from the developer" or that unidentified contractors, workers, or tenants may have been pursuing a private grievance.

144.    The individual who committed these actions, a resident of the Village of Wurtsboro, which is also part of Mamakating, was arrested on August 4, 2014 by the New York State police.  Following his release on bail, he thanked the community "for the outpouring of support and positive messages of solidarity.  It brought frustrated tears of joy to hear our local firemen honking and cheering my release."

### AS AND FOR A FIRST CAUSE OF ACTION
#### "Substantial Burden"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(a)

**(Against Defendants Village of Bloomingburg, Village Board of Trustees, Frank Gerardi, Planning Board of the Village of Bloomingburg, Andrew Finnema, Ann Haenelt, Joseph B. Roe, Planning Board of the Town of Mamakating, Katherine Roemer, James Johnson)**

145.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

146.    Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

37

147.     The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

148.     The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

149.     There is no compelling governmental interest justifying the denial of an application to use the property for a private religious school.

150.     As discussed above, Defendants' denial of the religious school's site plan, the basis for the moratorium, the Planning Board's dissolution, and the Village's dissolution were instituted for the sole purpose of stopping the completion and operation of the private religious school and other Jewish owned businesses, including the completion of Chestnut Ridge. Defendants' intention of blocking the operation of the religious school is evidenced by the timing and circumstances surrounding the enactment of the local laws and dissolutions, including:

- **September 26, 2013:** The Planning Board considered Learning Tree's site plan application on September 26, 2013. Although the Planning Board was inclined to deny the application on the spot, they followed the Village's attorney's recommendation to allow the religious school to present its application at the next meeting.

- **December 12, 2013:** At the December 12, 2013 meeting, the Planning Board denied the private religious school's application without providing an opportunity for the school to present its application or giving a legitimate explanation for the denial. Defendant Planning Board Member Anne Heanelt stated, "I'm just voting no on this," with no explanation. Similarly, Defendant Planning Board Member Andrew Finnema asked, "Why do we need another school in Bloomingburg?" Federal law in fact prohibits the Planning Board from denying Hasidic Jews their right to religious instruction based upon the existence of a secular public school, so the purported "need" for a school was legally irrelevant to the state law question whether the driveway may be widened and a parking lot sited next door.

- **May 12, 2014:** On May 12, 2014, the New York Supreme Court annulled the denial of Learning Tree's site plan and ordered the Planning Board to reconsider Learning Tree's applications.

- **May 22, 2014:** Just ten days after being ordered to reconsider Learning Tree's applications, the Village Board of Trustees discussed instituting a moratorium on all construction within the Village, dissolving the Planning Board, and dissolving the Village Board of Appeals.

- **June 12, 2014:** The Village Board of Trustees enacted Local Law Nos. 4, 5 and 6 to dissolve the Planning Board, the Zoning Board of Appeals and instituting a building moratorium, respectively.

- **July 7, 2014:** The Village Clerk certified to the Village Board that the petition to dissolve the Village of Bloomingburg into the Town of Mamakating (supported by Mayor Gerardi and the Village Board of Trustees) had the requisite number of signatures. The Village Board then called for a referendum.

- **September, 30 2014:** The referendum vote is scheduled to take place on September, 30 2014, during the Jewish High Holy days.

151.    In addition, Defendants have taken countless other steps to dismantle the development of Jewish-owned properties in Bloomingburg. Defendants' actions have placed a substantial burden on religious exercise.

152.    Defendants have deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations, including the building moratorium, in a manner that places a substantial burden on the Plaintiffs' religious exercise without any compelling interest, and without using the least restrictive means of furthering any compelling interest.

153.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

154.    Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage, and injury. Plaintiffs will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A SECOND CAUSE OF ACTION
### "Equal Terms"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(1)

**(Against Defendants Village of Bloomingburg, Village Board of Trustees, Frank Gerardi, Eileen Rogers, Planning Board of the Village of Bloomingburg, Andrew Finnema, Ann Haenelt, Joseph B. Roe, Planning Board of the Town of Mamakating, Katherine Roemer, James Johnson, William Herrmann)**

155.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

156.    Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

157.    The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

158.    The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

159.    There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.

160.    Defendants have deprived and continue to deprive Plaintiff Learning Tree, a religious institution, of its right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations, including the building moratorium, that treat religious assemblies and institutions on less than equal terms as nonreligious assemblies and institutions.

161.    Complaints about non-Jewish-owned properties go unnoticed, are purposely ignored, or are never filed, while complaints relating to Jewish properties receive immediate and

excessive scrutiny, sometimes including personal visits from Mayor Gerardi himself. Village and Town officials, including Trustees of the Village and the Town Supervisor, often target actions against Jewish-owned properties by acting on, and even submitting, complaints about Jewish-owned properties but not secular-owned properties.

162.    In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders requiring a re-examination of the religious school application, the Village applied various ordinances, including the building moratorium, unequally against Jewish owned properties and businesses. Defendants' discriminatory intentions are evidenced by the timing and circumstances of their actions, including:

- **September 26, 2013:** The Planning Board considered Learning Tree's site plan application on September 26, 2013. Although the Planning Board was inclined to deny the application on the spot, they followed the Village's attorney's recommendation to allow the religious school to present its application at the next meeting.

- **December 12, 2013:** At the December 12, 2013 meeting, the Planning Board denied the private religious school's application without providing a legitimate explanation for the denial. Defendant Planning Board Member Anne Heanelt stated, "I'm just voting no on this," with no explanation. Similarly, Defendant Planning Board Member Andrew Finnema asked, "Why do we need another school in Bloomingburg?" Federal law in fact prohibits the Planning Board from denying Hasidic Jews their right to religious instruction based upon the existence of a secular public school, so the purported "need" for a school was legally irrelevant to the state law question whether the driveway may be widened and a parking lot sited next door.

- **May 12, 2014:** On May 12, 2014, the New York Supreme Court annulled the denial of Learning Tree's site plan and ordered the Planning Board to reconsider Learning Tree's applications.

- **May 22, 2014:** Just ten days after being ordered to reconsider Learning Tree's applications, the Village Board of Trustees discussed instituting a moratorium on all construction within the Village, dissolving the Planning Board, and dissolving the Village Board of Appeals.

- **June 12, 2014:** The Village Board of Trustees enacted Local Law Nos. 4, 5 and 6 to dissolve the Planning Board, the Zoning Board of Appeals and instituting a building moratorium, respectively.

- **July 7, 2014**: The Village Clerk certified to the Village Board that the petition to dissolve the Village of Bloomingburg into the Town of Mamakating (supported by Mayor Gerardi and the Village Board of Trustees) had the requisite number of signatures. The Village Board then called for a referendum.

- **September, 30 2014**: The referendum vote is scheduled to take place on September, 30 2014, during the Jewish High Holy days.

163. Defendants denied Learning Tree's site plan application for development of the private religious school, they voted in favor of Local Law Nos. 4, 5, and 6, and have delayed making decisions on any applications by Jewish owned businesses currently before them.

164. Defendants have made countless efforts to dismantle the development of Jewish-owned properties in Bloomingburg. As public officials, they have directed others to act upon complaints issued against Jewish-owned properties while instructing that complaints against members of the community who are not Jewish to be ignored.

165. Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

166. Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage, and injury. Plaintiffs will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A THIRD CAUSE OF ACTION
### "Nondiscrimination"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(2)

**(Against Defendants Frank Gerardi, Eileen Rogers, Planning Board of the Village of Bloomingburg, Andrew Finnema, Ann Haenelt, Joseph B. Roe, Planning Board of the Town of Mamakating, Katherine Roemer, James Johnson, William Herrmann)**

167.   Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

168.   Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

169.   The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

170.   The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

171.   There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.

172.   Defendants have deprived and continue to deprive Plaintiffs, including religious assemblies and institutions, of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations, including the building moratorium, that discriminate against the Plaintiffs on the basis of religion.

173.   Defendants have taken countless steps to dismantle the development of Jewish owned properties in Bloomingburg.

174.   Jewish-owned properties in Bloomingburg face unwavering discrimination against them by Bloomingburg public officials including Defendants.  For instance, Jewish

owned properties and businesses in compliance with the applicable regulations face never ending stop work orders, while those properties and businesses owned by non-Jewish individuals that are not in compliance and are known to not be in compliance, have yet to receive any type of warning or stop work order. Complaints regarding non-Jewish-owned properties are ignored, whereas every complaint about construction sites or property owned by Jewish individuals are immediately scrutinized and often personally inspected by the Mayor, a responsibility not designated to be under the Mayor's purview. Village and Town officials, including Trustees of the Village and the Town Supervisor, often target actions against Jewish-owned properties by acting on, and even submitting, complaints about them while taking no actions against any other properties.

175. In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders against the Village, Defendants voted to enact Local Law Nos. 4, 5 and 6. Village Local Law No. 6 of 2014 provides no exception to the building permit moratorium for the private religious school, even though the application to develop the school building was made over a year ago, well before the enactment of Village Local Law No. 6.

176. Defendants also denied Learning Tree's site plan application for development of the private religious school for no reason other than religious discrimination.

177. The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

178. Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer damages unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A FOURTH CAUSE OF ACTION
### "Exclusions and Limits"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(3)(A)

**(Against Defendants Frank Gerardi, Eileen Rogers, Planning Board of the Village of Bloomingburg, Andrew Finnema, Ann Haenelt, Joseph B. Roe, Planning Board of the Town of Mamakating, Katherine Roemer, James Johnson, William Herrmann)**

179.   Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

180.   Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

181.   The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

182.   The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

183.   The sole purpose of the Defendants' actions was to stop the completion and operation of a private religious school.

184.   As discussed above, Defendants' denial of the religious school's site plan, the basis for the moratorium, the Planning Board's dissolution and the Village's dissolution bar the completion and operation of the private religious school, the operation of other Jewish owned businesses, including the completion of Chestnut Ridge, and serve no legitimate purpose as evidenced by the timing of their actions and surrounding circumstances, including:

- **September 26, 2013:** The Planning Board considered Learning Tree's site plan application on September 26, 2013. Although the Planning Board was inclined to deny the application on the spot, they followed the Village's attorney's recommendation to allow the religious school to present its application at the next meeting.

- **December 12, 2013:** At the December 12, 2013 meeting, the Planning Board denied the private religious school's application without providing a legitimate explanation for the denial. Defendant Planning Board Member Anne Heanelt stated, "I'm just voting no on this," with no explanation. Similarly, Defendant Planning Board Member Andrew Finnema asked, "Why do we need another school in Bloomingburg?" Federal law in fact prohibits the Planning Board from denying Hasidic Jews their right to religious instruction based upon the existence of a secular public school, so the purported "need" for a school was legally irrelevant to the state law question whether the driveway may be widened and a parking lot sited next door.

- **May 12, 2014:** On May 12, 2014, the Supreme Court annulled the denial of Learning Tree's site plan and ordered the Planning Board to reconsider Learning Tree's applications.

- **May 22, 2014:** Just ten days after being ordered to reconsider Learning Tree's applications, the Village Board of Trustees discussed instituting a moratorium on all construction within the Village, dissolving the Planning Board, and dissolving the Village Board of Appeals.

- **June 12, 2014:** The Village Board of Trustees enacted Local Law Nos. 4, 5 and 6 to dissolve the Planning Board, the Zoning Board of Appeals and instituting a building moratorium, respectively.

- **July 7, 2014:** The Village Clerk certified to the Village Board that the petition to dissolve the Village of Bloomingburg into the Town of Mamakating (supported by Mayor Gerardi and the Village Board of Trustees) had the requisite number of signatures. The Village Board then called for a referendum.

- **September, 30 2014:** The referendum vote is scheduled to take place on September, 30 2014, during the Jewish High Holy days.

185.    There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.

186.    In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders against the Village, Defendants voted to enact Local Law Nos. 4, 5, and 6. Defendants also denied Learning Tree's site plan application for development of the private religious school.

187.    The Village Board of Trustees and Defendants Frank Gerardi, James Johnson, and Katherine Roemer as Trustees of the Village voted in favor of Local Law Nos. 4, 5, and 6.

46

188.    Village Local Law No. 6 of 2014 provides no exception to the building permit moratorium for the private religious school, even though the application to develop the school building was made over a year ago, well before the enactment of Village Local Law No. 6.

189.    The refusal to issue a building permit, and the continued denial of site plan approval and lot consolidation approval, for the private religious school in reliance on Village Local Law No. 6 of 2014 prohibits the development and operation of religious schools necessary to the practice of Hasidic Judaism in the Village of Bloomingburg.

190.    Defendants, therefore, have deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing a land use regulation that totally excludes the Plaintiffs' use from its jurisdiction on the basis of religion.

191.    The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

192.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer damages unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A FIFTH CAUSE OF ACTION
### "Exclusions and Limits"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(3)(B)

**(Against Defendants Planning Board of the Village of Bloomingburg, Andrew Finnema, Ann Haenelt, Joseph B. Roe, Planning Board of the Town of Mamakating)**

193.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

194.     Defendants have deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing a land use regulation that unreasonably places limits on religious institutions within its jurisdiction.

195.     Hasidic Jewish religion and culture require development of religious single sex schools for the education of Hasidic Jewish children.

196.     The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

197.     The use of the property at issue for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

198.     There are no other legitimate impediments to the use of the property at issue for a private religious school.

199.     In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders requiring the Village to revisit its denial, Defendants voted to enact Local Law Nos. 4, 5 and 6.

200.     Defendants denied Learning Tree's site plan application for development of the private religious school.

201.     By enacting a building moratorium within the Village of Bloomingburg, the Village has placed an unreasonable limit on the ability to provide religious institutions for Hasidic Jews within the jurisdiction, more than one year after applications for site plan approval had begun – thereby continuing to stall any progress necessary to open and operate the religious school.

202.     The refusal to issue a building permit and the continued denial of site plan approval and lot consolidation approval for the private religious school in reliance on Village

48

Local Law No. 6 of 2014 prohibits the development and operation of religious schools necessary to the practice of Hasidic Judaism in the Village of Bloomingburg.

203.     As a result of the dissolution of the Planning Board and Zoning Board of Appeals, the Defendants argue that the issues arising from the building moratorium and the denial of Learning Tree's applications are currently before Defendant the Planning Board of the Town of Mamakating.  The Planning Board of the Town of Mamakating, the Town of Mamakating and Supervisor Herrmann are instituting the same tactical games as the Village to delay and prevent the operation of a religious school and Jewish owned businesses.

204.     There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.  Despite these facts, and the pendency of the site plan application for over a year, Defendants have continued to refuse to issue site plan approval and lot consolidation for the private religious school and have continued to stymie the application in an apparent attempt to delay the opening of the school beyond this coming school year.

205.     Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

206.     Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  Plaintiffs will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3604

### (Against all Defendants)

207.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

208.    Defendants, by their continuing conduct, acts and legislative enactments that prevent the approval of, and construction and utilization of Chestnut Ridge, have intentionally discriminated against the Plaintiffs by making housing "unavailable" within the Village of Bloomingburg on the basis of religion in violation of 42 U.S.C. § 3604.

209.    By enacting a building permit moratorium, unequally applying existing ordinances, and issuing frivolous stop work orders, the Village Board of Trustees, along with its members, have precluded Hasidic Jewish individuals from moving into the Village, or into existing housing, by virtue of preventing the completion of any construction including Kosher kitchens.  Since the building moratorium is effective for 90 days, expiring on September 12, 2014, but can be extended for three additional 90-day periods, the moratorium can effectively keep Hasidic Jewish residents out of the Village for up to one year by simply refusing to issue any building permits.

210.    The Village Board of Trustees, Mayor Gerardi, James Johnson, and Katherine Roemer, through the adoption of Village Local Law No. 6 of 2014 (the building moratorium), and the application of existing ordinances, including the issuance of stop work orders, has openly discriminated against the Hasidic Jewish residents of Bloomingburg on account of their religion by prohibiting the development of the Chestnut Ridge project that would provide housing with all of the necessary religious requirements, such as Kosher kitchens.

211.    The election of Village and Town officials who openly support the Rural Community Coalition's cause shows a tacit approval of discrimination on the basis of religion within the community, and that the Village and Town officials are now acting on behalf of their constituents to block Hasidic Jews from building or moving into housing developments in the Village.

212.    Despite the fact that Sullivan Farms has obtained all necessary approvals from the Village of Bloomingburg for the construction of Chestnut Ridge and has acquired vested rights in the project by constructing in reliance on lawfully granted approvals over numerous years, the Village's local law prevents the issuance of the remaining building permits necessary to complete the construction of the townhomes.

213.    As a result of the dissolution of the Planning Board and Zoning Board of Appeals, the Defendants argue that the issues arising from the building moratorium and the denial of Learning Tree's applications are currently before Defendant the Planning Board of the Town of Mamakating. The Planning Board of the Town of Mamakating, the Town of Mamakating and Supervisor Herrmann are instituting the same tactical games as the Village to delay and prevent the operation of a religious school and Jewish owned businesses.

214.    The overwhelming animus towards the Hasidic Jewish community has resulted in the disparate treatment of them by the Defendants.

215.    Defendants voted in favor of Local Law Nos. 4, 5 and 6. Defendants have instructed that ordinances be applied unfairly to the Hasidic Jewish Community to prevent them from moving into the area.

216.   Defendants' actions, among other things, block the building of the religious school, which effectively prevents the Hasidic Jewish community from moving into Bloomingburg.

217.   Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

218.   Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

219.   Defendants have caused Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and Plaintiffs will continue to suffer such harm unless Defendants' acts and conduct complained of are permanently enjoined.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**Fair Housing Act**
**42 U.S.C. § 3617**

**(Against all Defendants)**

220.   Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

221.   Defendants, by their continuing conduct, acts and legislative enactments that prevent the approval of, and construction and utilization of the Chestnut Ridge project, have intentionally discriminated against the Plaintiffs on account of their having exercised rights, or having aided or encourages other persons to engage in the exercise or enjoyment of rights that are granted or protected by 42 U.S.C. § 3604 in violation of 42 U.S.C. § 3617.

222.   As a direct result of these unlawful actions by Village officials, even though the Chestnut Ridge project received all of its final land use approvals in June 2011, and has been

under construction since 2012, the Village has repeatedly discriminated against the development and thereby has intentionally interfered with the Hasidic Jewish communities right to available housing. Defendants have further sought to coerce and intimidate those who support the Hasidic Jewish community in the hopes of preventing the development of appropriate housing for the community.

223.    Defendants Town of Mamakating, Town Board of the Town of Mamakating, and Planning Board of the Town of Mamakating continue to delay any progress on development of Jewish-owned properties by restarting the review process on numerous building permit applications and generally seeking to avoid completing decisions on previously approved applications now that the Planning Board and Zoning Board of Appeals' authority is under the Town of Mamakating's purview.

224.    As discussed above, Defendants have taken numerous steps to interfere with Plaintiffs' exercise and enjoyment of fundamental rights.

225.    Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

226.    Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

227.    Defendants have caused Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and Plaintiffs will continue to suffer such harm unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### U.S. Constitution, First and Fourteenth Amendments
### 42 U.S.C. § 1983

#### (Against all Defendants)

228.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

229.    Defendants' laws and actions deprived and continue to deprive the Plaintiffs of their right to free exercise of religion (1) by substantially burdening the Plaintiffs' religious exercise without a compelling government interest; (2) by discriminating against and targeting the Plaintiffs; (3) by prohibiting the Plaintiffs from living within the Village's jurisdiction; and (4) by treating religious assemblies and institutions on less equal terms as nonreligious assemblies and institutions.

230.    The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

231.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A NINTH CAUSE OF ACTION
### U.S. Constitution, First and Fourteenth Amendments
### 42 U.S.C. § 1983

#### (Against all Defendants)

232.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

233.    Defendants' laws and actions deprived and continue to deprive the Plaintiffs of their right to freedom of intimate association and freedom of expressive association, as secured

by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by intruding upon the Plaintiffs' right to the raising and education of children and by intruding upon the Plaintiffs' right to associate for purposes of protected expressive activity. Defendants have taken every action they can think of, including the enactment of laws and issuance of stop work orders, to prevent Plaintiffs from practicing their religion.

234. The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

235. Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR A TENTH CAUSE OF ACTION
### U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983

### (Against all Defendants)

236. Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

237. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty or property, without due process of law."

238. Defendants' laws and policies gave Defendants unfettered discretion to grant or deny building permit applications.

239. Defendants arbitrarily enacted the building moratorium and continue to arbitrarily apply existing ordinances against the Plaintiffs. Defendants' actions are designed to prevent the

completion of both Chestnut Ridge and the Plaintiffs' religious school for children of the Jewish faith, and prevent the Hasidic Jewish community from freely practicing their religion.

240.     The Village lacks authority to impose a moratorium interfering with the beneficial enjoyment of property rights pursuant to its police powers unless it demonstrates that it has acted in response to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and that it is presently taking steps to rectify the problem.

241.     Village Local Law No. 6 of 2014 was not enacted in response to a dire necessity or crisis condition.

242.     The Village also lacks authority to impose a moratorium interfering with the beneficial enjoyment of property rights pursuant to its zoning powers unless it demonstrates that the moratorium has a valid rational basis and is reasonably limited in duration.

243.     The Village's asserted public purpose for the building permit moratorium, i.e., allocating Village resources to the investigation of community complaints about the alleged removal of asbestos and other hazardous waste materials from residences or commercial buildings in the Village, is not a valid or rational basis to preclude all construction in the Village.

244.     In fact, the Village failed to provide any evidence that alleged removal of asbestos or hazardous waste materials from residences or commercial buildings has actually occurred in the Village before adopting Village Local Law No. 6 of 2014.

245.     The Village's building inspector investigated the asserted community complaints concerning hazardous waste removal and determined that no such activities were being conducted.

246.     Furthermore, the Village has not identified or taken any steps during the moratorium period to address remedies for the alleged storage and disposal of asbestos and other

alleged hazardous waste materials from residences or commercial buildings in the Village nor has the Village provided any basis for concluding that alleviation of the alleged crisis condition necessitates a building permit moratorium of up to one year.

247.    Thus, the building permit moratorium imposed by Village Local Law No. 6 of 2014 is not reasonably limited in duration.

248.    No substantial risk to the health, safety, or welfare of the residents of the Village exists to support the adoption of the building permit moratorium in Village Local Law No. 6 of 2014.

249.    The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of constitutional rights.

250.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983

**(Against Defendants Village of Bloomingburg, Village Board of Trustees, Planning Board of the Village of Bloomingburg, Frank Gerardi, Eileen Rogers, Andrew Finnema, Ann Haenelt, Joseph B. Roe, Town of Mamakating, Town Board of the Town of Mamakating, Planning Board of Mamakating, Katherine Roemer, James Johnson, William Herrmann)**

251.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

252.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

253.    Defendants have made numerous attempts to prevent completion of Chestnut Ridge, after all requisite approvals have previously been obtained and a large portion of the construction has been completed, including the construction of a $5 million waste water treatment plant for the benefit of the Village.

254.    With the enactment of Village Local Law No. 6, Defendants seek to prevent further progress on Chestnut Ridge. Village officials have similarly ignored more than eighty building permits for townhomes and the clubhouse applied for *prior to* the enactment of the building moratorium. Even more egregious, Defendants now seek to avoid all judicial action in opposition of the Village officials' and communities' goals, by seeking to dissolve the Village entirely.

255.    Defendants' laws and actions deprived and continue to deprive Plaintiffs of their right to equal protection of the laws as Defendants Town of Mamakating, Town Board of the Town of Mamakating, and Planning Board of the Town of Mamakating continue to delay any progress on development of Jewish-owned properties by restarting the review process on numerous building permit applications and generally seeking to avoid completing decisions on previously approved applications now that Planning Board and Zoning Board of Appeals' authority is under the Town of Mamakating's purview.

256.    Defendants' laws and actions deprived and continue to deprive Plaintiffs of their right to equal protection of the laws with respect to Chestnut Ridge, as secured by the Fourteenth Amendment, by (1) discriminating against and targeting Plaintiffs for disfavor; (2) by treating religious institutions on less than equal terms as similarly situated nonreligious institutions; and (3) by enforcing land use regulations which constitute a grave interference with fundamental rights.

257.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

258.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983

### (Against all Defendants)

259.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

260.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

261.    Defendants' laws and actions deprived and continue to deprive Plaintiffs of their right to equal protection of the laws with respect to the actions taken in the community against members of the Jewish religion, including the refusal to grant requested approvals for a religious school, and furthermore, the efforts to dissolve the Village of Bloomingburg entirely, which would further stall any progress on the religious school necessary to provide Hasidic children with their guaranteed right to education and religious exercise.  Development of the private religious school is necessary to allow the individual Plaintiffs and all other Hasidic Jewish residents of Bloomingburg to exercise their religion in the Village.

262.    After several postponed meetings, the Village Planning Board staunchly refused to even consider the religious school proposal, instead succumbing to public opposition and

quickly dismissing the proposal without addressing any of the permissible considerations of site plan review, and therefore, arbitrarily denying Learning Tree's application. This decision was partially based upon the Village Planning Board members' subjective belief that the Village did not need a new school, an impermissible consideration of the Village Planning Board's site plan review under New York Village Law § 7-725-a and the Village's zoning code.

263. These actions, therefore, have infringed upon the rights secured by the Fourteenth Amendment, by (1) discriminating against and targeting the Plaintiffs for disfavor; (2) by treating religious institutions on less than equal terms as similarly situated nonreligious institutions; and (3) by enforcing land use regulations which constitute a grave interference with fundamental rights.

264. The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

265. Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1985(3)

### (Against all Defendants)

266. Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

267. By way of their conduct as set forth in this Complaint, and acting under color of state law, the Defendants have conspired, and continue to conspire, to deprive Plaintiffs, and others similarly situated, of the equal protection of the laws, as guaranteed by the Fourteenth

Amendment to the United States Constitution, on the basis of their religious beliefs and practices.

268.    Defendants' have sought to use their laws and actions to deprive Plaintiffs of equal protection of the law and have taken actions in the community against members of the Jewish religion, including refusals to grant routine approvals for a religious school and a building development that includes kosher kitchens, and dissolution of the Village of Bloomingburg. Together, Defendants, by their actions, seek to disenfranchise Jewish-owned properties while at the same time ignoring regulation violations and complaints against non-Jewish owned properties.    Defendants, as officers of the municipalities plainly take action against Jewish-owned properties as a result of their positions within the community.

269.    The election of Village and Town officials who openly support the Rural Community Coalition's cause shows a tacit approval of discrimination on the basis of religion within the community, interfering with the rights of Village residents – and potential Village residents – to exercise their right to build or move into housing developments in the Village.

270.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### New York State Constitution
### Article I §§ 3, 6, 11

### (Against all Defendants)

271.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

272.    Defendants, by their acts, have acted under color of law and have conspired and continue to conspire, in breach of Plaintiffs' rights to protect their interests under the law in violation of Article I, § 3 (freedom of association, exercise), Article I, § 6 (due process), Article I, § 9, and Article I, § 11 (equal protection; discrimination in civil rights) of the New York State Constitution.

273.    Thus, the Village's refusal to issue a building permit to Learning Tree for the development of the private religious school in reliance on Village Local Law No. 6 of 2014 places a substantial burden on the religious exercise of the individual Plaintiffs in violation of the Article I, § 3 of the New York State Constitution.  The Village Board has not identified any compelling governmental interest for the Village Local Law No. 6 of 2014's effective prohibition on the development of religious schools necessary to the practice of Hasidic Judaism in the Village of Bloomingburg.

274.    The stated purpose alleged by the Village Board for the building moratorium – an investigation into New York State Building Code compliance due to community complaints concerning construction activity in the Village – is merely a pretext for discrimination against the Village's Hasidic Jewish population.  In fact, complaints by disgruntled community members regarding asbestos and hazardous waste were found to be untrue by Village building inspectors.

275. Article I, § 6 of the New York State Constitution similarly provides, in pertinent part, that "[n]o person shall be deprived of life, liberty or property without due process of law." The Hasidic community has been unceremoniously discriminated against by the continuous refusal to grant building permits and approvals for both the religious school and Chestnut Ridge in direct contravention to state court orders, which has left Village residents – and potential Village residents – without the ability to provide the housing or schooling required under the law.

276. Article I, § 11 of the New York State Constitution similarly provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof." Actions taken by community members, Village and Town residents, and elected officials have sought to restrict Jewish entry into the community. Jewish-owned properties receive disproportionate amounts of attention from Village officials, and are scrutinized more so than properties not owned by Jews in the Village.

277. As a result of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm, damage and injury, and the plaintiffs will continue to suffer such harm unless the Defendants' acts and conduct complained of are permanently enjoined.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
### Building Permit Moratorium is Arbitrary and
### Capricious under New York State Law

#### (Against All Defendants)

278. Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

279. Village Local Law No. 6 of 2014 establishes a moratorium suspending the receipt, consideration, or issuance of *all* residential and commercial building permits in the Village,

essentially foreclosing all construction and repair in the Village, including of the fully approved Chestnut Ridge project and the private religious school. The moratorium lasts 90 days by its terms, with the possibility of multiple extensions not to exceed 360 days.

280.     The Village lacks authority to impose a moratorium interfering with the beneficial enjoyment of property rights pursuant to its police powers.

281.     Village Local Law No. 6 of 2014 was not enacted in response to a dire necessity or crisis condition. No substantial risk to the health, safety, or welfare of the residents of the Village exists to support the adoption of the building permit moratorium in Village Local Law No. 6 of 2014.

282.     Defendants' enactment and enforcement of the building moratorium is arbitrary and capricious.

283.     Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

284.     Plaintiffs will continue to suffer irreparable harm, damage, and injury unless the building moratorium and dissolution decisions are declared null and void.

285.     For the foregoing reasons, Village Local Law No. 6 of 2014 is invalid, null, and void, and the Village should be enjoined from enforcing it.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(1)     Enjoining Defendants, their officers, agents, employees, and attorneys from enforcing or endeavoring to prohibit Plaintiffs from using their property in the Village of Bloomingburg;

(2)     enjoining the Village of Bloomingburg from enforcing or executing Village of Bloomingburg Local Law Nos. 4, 5, and 6 of 2014;

(3)     enjoining the Town of Mamakating Planning Board from exercising any jurisdiction over applications concerning properties located in the Village of Bloomingburg;

(4)     enjoining the September 30, 2014 referendum vote to dissolve the Village of Bloomingburg;

(5)     enjoining the dissolution of the Village of Bloomingburg;

(6)     enjoining Defendants from further preventing the land use of the private religious school;

(7)     awarding Plaintiffs compensatory damages against Defendants in favor of Plaintiffs as the Court deems just for the loss of Plaintiffs' from fair housing, free exercise of religion, freedom of association, deprivation of Plaintiffs' right to equal protection and due process under the laws, and expenses occurred by Plaintiffs and caused by Defendants' actions in an amount to be determined at trial, but in no event less than $25,000,000.00;

(8)     awarding Plaintiffs the costs, disbursements, and attorneys' fees incurred in connection with this action pursuant to 42 U.S.C. § 1988; and

(9)     awarding Plaintiffs such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. Pro. 38, Plaintiffs demands a jury on all issues so triable.

Dated: September 8, 2014
      New York, New York

DECHERT LLP

By: _____

Steven A. Engel
Michael H. Park
K. Keely Rankin
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
(212) 698-3599 (facsimile)
steven.engel@dechert.com

WHITEMAN OSTERMAN & HANNA LLP

John J. Henry
Robert S. Rosborough IV
One Commerce Plaza
Albany, New York 12260
(518) 487-7600
(518) 487-7777 (facsimile)
jhenry@woh.com

*Attorneys for Plaintiffs*