UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

THE BLOOMINGBURG JEWISH
EDUCATION CENTER, et al.,

                    Plaintiffs,

       -against-

VILLAGE OF BLOOMINGBURG,
NEW YORK, et al.,

                    Defendants.

_____

**Hon. Cathy Seibel**

**Index No. 14-cv-7250 (CS)**

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

 

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

WHITEMAN OSTERMAN & HANNA LLP
One Commerce Plaza
Albany, New York 12260
(518) 487-7600

*Attorneys for Plaintiffs*

## **Table of Contents**

Table of Authorities ........................................................................................................ ii

Preliminary Statement .................................................................................................... 1

Statement of Facts .......................................................................................................... 2

    1.      The Moratorium Blocks the Villages at Chestnut Ridge ........................................ 3

    2.      The Moratorium Blocks the Jewish Educational Center ........................................ 5

    3.      Defendants Continue To Block  Other Jewish-Owned Construction. ................... 7

Argument ...................................................................................................................... 11

POINT I

Plaintiffs Are Likely To Succeed in Showing That the Building Moratorium Is
Illegal ........................................................................................................................... 10

    A.      Defendants' Discriminatory Intent Is Pervasive ................................................... 11

    B.      The Building Moratorium Violates the Fair Housing Act ................................... 14

    C.      The Building Moratorium Violates RLUIPA ...................................................... 16

    D.      The Building Moratorium Violates the First Amendment.................................... 19

    E.      The Building Moratorium Violates the Equal Protection Clause ........................ 21

POINT II

The Building Moratorium Is Causing Ongoing Irreparable Harm to Plaintiffs.............. 22

Conclusion .................................................................................................................... 25

## Table of Authorities

**CASES**

*Anderson v. Vare*,
   359 F. App'x 892 (9th Cir. 2009) ...................................................16

*Bikur Cholim, Inc. v. Village of Suffern*,
   664 F. Supp. 2d 267 (S.D.N.Y. 2009)...............................................17

*Bronson v. Crestwood Lake Section 1 Holding Corp.*,
   724 F. Supp. 148 (S.D.N.Y. 1989) ...................................................22

*Bronx Household of Faith v. Bd. of Educ.*,
   331 F.3d 342 (2d Cir. 2003)..............................................................10

*Cellular Telephone Co. v. Village of Tarrytown*,
   209 A.D.2d 57 (2d Dep't 1995) .......................................................22

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Comm'n.*,
   -- F.3d --, No. 12-1057-CV, 2014 WL 4652510 (2d Cir. Sept. 19, 2014)..................16, 19, 21

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993).........................................................................20

*Church of Scientology of Ga., Inc. v. City of Sandy Springs*,
   843 F. Supp. 2d 1328 (N.D. Ga. 2012) ............................................19

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
   473 U.S. 432 (1985).........................................................................21

*Community Commc'ns Co. v. City of Boulder, Co.*,
   660 F.2d 1370 (10th Cir. 1981) .......................................................23

*Community Hous. Trust v. Dep't of Consumer & Reg. Affairs*,
   257 F. Supp. 2d 208 (D.D.C. 2003) ............................................12-13

*Duke v. Town of Huntington*,
   153 Misc. 2d 521 (Suffolk Cnty. 1991) ...........................................22

*El Dorado Estates v. City of Fillmore*,
   No. 12–55549, 2014 WL 4290363, (9th Cir. Sept. 2, 2014) ................15

*Elrod v. Burns*,
   427 U.S. 347 (1976).........................................................................23

*Fifth Ave. Presbyterian Church v. City of New York*,
   293 F.3d 570 (2d Cir. 2002)..............................................................17

*Fortress Bible Church v. Feiner*
    694 F.3d 208 (2d Cir. 2012) ..................................................................17, 20

*Innovative Health Sys., Inc. v. City of White Plains*,
    117 F.3d 37 (2d Cir. 1997), *overruled on other grounds by*
    *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ...............13

*Knight v. Conn. Dep't of Public Health*,
    275 F.3d 156 (2d Cir. 2001)..................................................................................21

*LeBlanc-Sternberg v. Fletcher*,
    67 F.3d 412 (2d Cir. 1995)..................................................................16, 14, 21

*LeBlanc-Sternberg v. Fletcher*,
    104 F.3d 355 (2d Cir. 1996)................................................................................15

*Lewis v. Sobol*,
    710 F. Supp. 506 (S.D.N.Y. 1989) ......................................................................24

*McCormick v. Hirsch*,
    460 F. Supp. 1337 (M.D. Pa. 1978) ....................................................................23

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) ......................................................................16, 23

*Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*,
    584 F. Supp. 2d 766 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th Cir. 2010) ......................23

*Sunrise Dev., Inc. v. Town of Huntington*,
    62 F. Supp. 2d 762 (E.D.N.Y. 1999) ......................................................10, 15, 22

*Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, N.Y.*,
    808 F. Supp. 120 (N.D.N.Y. 1992) ......................................................................15

*United States v. City of Birmingham*,
    538 F. Supp. 819 (E.D. Mich. 1982), *aff'd as modified*, 727 F.2d 560 (6th Cir. 1984) ..........13

*United States v. City of Black Jack*,
    508 F.2d 1179 (8th Cir. 1974) ............................................................................15

*United States v. Yonkers Bd. of Educ.*,
    624 F. Supp. 1276 (S.D.N.Y. 1985), *aff'd*, 837 F.2d 1181 (2d Cir. 1987) ............................11

*United States v. Yonkers Bd. of Educ.*,
    837 F.2d 1181 (2d Cir. 1987)......................................................................15, 21

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*,
    429 U.S. 252 (1977)............................................................................................21

*Westchester Day Sch. v. Village of Mamaroneck*,
    504 F.3d 338 (2d Cir. 2007)................................................................................ 16, 17-18

*Westchester Day Sch. v. Village of Mamaroneck*,
    417 F. Supp. 2d 477 (S.D.N.Y. 2006) ...................................................................17

*Wisdom Imp. Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003)...................................................................................22

*Young v. Goord*,
    67 F. App'x 638 (2d Cir. 2003) , *aff'd*, 192 F. App'x. 31 (2d Cir. 2006).................17

S<small>TATUTES</small>

42 U.S.C. § 1983........................................................................................................19, 21

42 U.S.C. § 2000cc-1(a) .........................................................................................16, 17

42 U.S.C. § 2000cc-3(g) ...............................................................................................16

42 U.S.C. § 2000cc-5(7)(A)..........................................................................................18

42 U.S.C. § 2000cc ..................................................................................................18, 19

42 U.S.C. § 3604(a) ......................................................................................................14

42 U.S.C. § 3617 ...................................................................................................... 14-15

Plaintiffs The Bloomingburg Jewish Education Center ("Bloomingburg Jewish Education Center"), Sullivan Farms II, Inc. ("Sullivan Farms"), Learning Tree Properties, LLC ("Learning Tree"), Malka Rosenbaum, Sheindel Stein, Commercial Corner, LLC, and Winterton Properties, LLC (collectively, "Plaintiffs"), by and through their attorneys, Dechert LLP and Whiteman Osterman & Hanna LLP, respectfully submit this memorandum of law in support of their motion for a Preliminary Injunction prohibiting the Village of Bloomingburg, New York (the "Village" or "Bloomingburg"), the Village Board of Trustees of the Village of Bloomingburg, Frank Gerardi, Eileen Rogers, Katherine Roemer, and James Johnson (collectively, "Defendants") from enforcing Local Law No. 6.

## Preliminary Statement

Plaintiffs seek immediate injunctive relief to stop Bloomingburg from enforcing a building moratorium aimed at preventing Hasidic Jews from moving into the Village by blocking long-planned and approved projects, including a residential development and a private religious school. Bloomingburg enacted the "temporary" moratorium on June 12, 2014. Shortly before it was scheduled to expire, Bloomingburg extended it for an additional 90 days because of the pendency of an unidentified "investigation." There is every reason to believe that Bloomingburg will continue to extend the moratorium indefinitely.

The reason for the moratorium is no mystery. The Village enacted it just one week after the New York Appellate Division vacated a state court preliminary injunction that had temporarily suspended building at the Villages of Chestnut Ridge, a residential housing development that the Village believes will be occupied by members of the Hasidic Jewish community. The moratorium also followed closely on the heels of the New York Supreme Court's decision remanding the denial of the private religious school's site application to the Village Planning Board for reconsideration. Defendants claimed that the moratorium was

1

necessary to address a previously unheard of hazardous substances emergency, but the timing, context, and effect of the moratorium make clear that the Village's aim was to prevent further development of Chestnut Ridge, the private religious school, and other Jewish-owned developments in the Village.

Defendants enacted the moratorium to prevent Hasidic Jews from exercising their rights as Americans to move to Bloomingburg, New York, and to practice their faith freely.  The moratorium is a critical part of a broader scheme by which Defendants have abused the Village's zoning laws to erect roadblocks to Plaintiffs' development efforts at every turn.  According to one former code enforcement officer, Village officials repeatedly told him that his job was to enforce the Village Code against "those people" or "those things," by which they meant Hasidic Jews in Bloomingburg.  *See* Declaration of Steven A. Engel, Esq. Ex. A ¶¶ 17-18.  The officer was also told not to enforce the code against a non-Jewish person, because she is "one of us."  *Id.* ¶ 16.  Defendants thus have made clear by their words, as well as their actions, that their aim is religious discrimination.

The building moratorium has blocked the development of Jewish-owned homes, business, and religious projects.  Every day that the moratorium remains in effect, Plaintiffs suffer continued and irreparable harm, not only by the daily disruption to their lives and businesses, but through the ongoing deprivation of their constitutional and statutory rights.  Plaintiffs respectfully request that this Court enjoin Defendants from enforcing the Village's discriminatory building moratorium and permit these lawful developments to proceed.

### Statement of Facts

In 2006, Bloomingburg annexed 198 acres from Mamakating for the purpose of facilitating the development of Chestnut Ridge.  Sullivan Farms submitted a proposal to the Village for the construction of a housing development and entered into a Development

Agreement with the Village on May 6, 2010.  Exs. B, C.  The Village originally approved and welcomed the Development Agreement, pursuant to which Sullivan Farms agreed to build a new $5 million wastewater treatment plant for the Village.

On July 12, 2012, certain residents of the greater Mamakating area formed a group called the Rural Community Coalition to oppose the long-planned development.  Ex. D.  According to Holly Roche, the president of the Rural Community Coalition, Bloomingburg residents had known for six years about the planned development, but they did not oppose it until learning that "the developer planned a Hasidic community."  *Id*. at 4.  Since 2012, the Rural Community Coalition has commenced numerous lawsuits to delay and to obstruct Jewish developments in Bloomingburg.  *See, e.g.*, Exs. E, F.  In March 2014 elections, the Rural Community Coalition succeeded in electing its nominees to office in the Village and the Town.  Ex. E ¶ 10.  Those officials since have abused their governmental power in support of this discriminatory campaign.

1.    The Moratorium Blocks the Villages at Chestnut Ridge

Chestnut Ridge consists of a Planned Unit Development ("PUD") for a conservation subdivision, including 396 townhomes, a community clubhouse, and recreational amenities.  Ex. G ¶ 3.  The Village annexed the land needed for the project back in 2006.  Ex. B.  The project ultimately received final approval in June 2011.  Ex. E.  After approval for the Chestnut Ridge project, Sullivan Farms acquired the necessary permits, built the wastewater treatment plant for the Village, obtained 126 building permits, and built 48 units on the site.  Ex. G ¶¶ 5-7.  In March 2014, the new mayor, Defendant Frank Gerardi, and two new trustees won election running on platforms aimed at stopping Plaintiffs' development.  *Id*. ¶ 10.  Since their election, they have misused government power to block Chestnut Ridge and other Jewish-owned projects in Bloomingburg.

On January 24, 2014, the Rural Community Coalition commenced its latest action against the Village to enjoin further development of Chestnut Ridge on the ground that the 2006 annexation of the land—approved over seven years before—had been unlawful.  Ex. H.  The Village initially opposed the injunction, but reversed its position after the new mayor and trustees were elected.  The New York Supreme Court for Sullivan County initially granted a preliminary injunction, but the Appellate Division vacated the injunction in early June 2014.  *Id.*

Just one week after the Appellate Division's decision, the Village adopted Local Law No. 6, which imposes the building moratorium.   Ex. I.  The moratorium suspended the receipt, consideration, or issuance of all residential and commercial building permits in the Village, including permit applications submitted before enactment of the moratorium.  *Id.*  The moratorium essentially forecloses any real estate construction or renovation in the Village, including not just at Chestnut Ridge, but also at the private religious school, and other Jewish-owned businesses.  Ex. G ¶ 13.

In enacting the moratorium, Mayor Gerardi issued a statement of its alleged necessity. Ex. J.  He pointedly avoided mentioning the court's vacatur of the injunction, instead stating:

> The facts necessitating an immediate vote on the proposed local law are as follows: The Village has received a substantial number of complaints about the reported and documented failure of some residential and commercial owners and contractors to comply with the dictates of the Building Code of New York State, the Multiple Residence Law of New York State, the Fire Code of New York State, Industrial Code Rule 56-Asbestos, NYCRR Title X, Part 67-Lead Paint, and other applicable Federal and State law, which non-compliance poses an immediate and substantial risk to the health, safety, and welfare of those living and working in the Village.

*Id.*  This message, however, was a transparent pretext for stopping Jewish-owned development. Chestnut Ridge is an entirely new construction with new materials, with no asbestos in the project.  *Id.* ¶ 15.  The Village Building Inspector has subjected the project to regular inspection,

and the former inspector confirmed, in response to a May 2014 complaint, stating that, "I checked.  No asbestos possible on structure."  Ex. K.  Moreover, the Village does not even have regulatory authority over the handling of hazardous substances, including asbestos, which is governed by the New York State Department of Labor.

In response to New York Freedom of Information Law ("FOIL") requests, the Village demonstrated that there were no health or safety complaints supporting the moratorium.  Ex. G ¶ 16.  Instead, the so-called complaints concerned allegations that a "Torah was observed being brought into unit," Ex. L, that a building "appears to be … a shul [synagogue]?" and that a private residential pool was being used as a mikvah, a Jewish ritual bath.   Ex. M.

On September 10, 2014, the Village extended the moratorium for an additional 90 days.  At the Village meeting, Mayor Gerardi stated perfunctorily that the Village's investigation of building code violations had not yet been completed for "a variety of reasons" that he did not name.  Ex. N.  He did not mention the hazardous substances emergency that had previously justified the moratorium.  The Village's counsel confirmed that the Village had not discovered any hazardous substances, but opined with no basis that this was probably because the construction materials had been disposed of before the Village could find any.  *Id.*

2. <u>The Moratorium Blocks the Jewish Educational Center</u>

The building moratorium also obstructs the opening of Plaintiff Bloomingburg Jewish Education Center's private religious school.  The religious school is sorely needed by the Hasidic Jewish community of Bloomingburg, whose religious practices require a parochial education.  Ex. G ¶ 19.  These families are currently forced to send their children to religious schools located far away or to home-school them.  *Id.* ¶ 20.  Plaintiff Learning Tree, as the property owner, submitted an application to the Village Planning Board over a year ago.  Learning Tree sought only to widen a driveway for school buses and to site a parking lot on an adjacent parcel.  *Id.*

5

¶ 18.  Because opponents feared that the opening of the religious school would encourage more Hasidic Jews to move into Bloomingburg, hundreds of angry residents mobbed the first two meetings at which the Planning Board was supposed to consider the application.  *Id.* ¶ 24.  Because the mob-like atmosphere prevented the Planning Board from carrying on its business, the Planning Board was forced to adjourn each time without acting on the application.  *See id.*

On December 12, 2013, with State Police present to control the crowd, the Planning Board yielded to public pressure and voted to deny the private religious school's application without substantive review.  *Id.* ¶¶ 25-26; *see also* Ex. O.  Planning Board member Ann Heanelt simply stated, "I'm just voting no on this," which was followed by raucous applause.  Planning Board member Andrew Finnema also commented, "Why do we need another school in Bloomingburg?"  *Id.* ¶ 26; *see also* Ex. O.  Again, that statement was met with applause by the crowd.  There was no substantive discussion about the merits of the application.  Ex. G ¶ 25.

After Learning Tree challenged the Planning Board's decision, the New York Supreme Court for Sullivan County vacated it as arbitrary under state law and ordered reconsideration.  Ex. P.  Instead of reconsidering the application, the Village chose to dissolve the Planning Board itself and punt the issue to the Town of Mamakating.  Ex. I at 3-4.[1]  Immediately thereafter, the

---

[1]    Having dissolved the Planning Board, the Village is now seeking to dissolve itself so as to undermine the Village's prior approvals given to Chestnut Ridge and other Jewish-owned properties.  On September 30, 2014, the Village voted on a referendum to dissolve Bloomingburg.  Ex. Q.  The dissolution referendum itself is one more act motivated by discriminatory animus.  Residents have made clear that "[t]he Hasidic Jews will take over our town and we do not want that[.]"  *Id.*  Dissatisfied with a fair vote of Village residents, opponents filed 190 challenges within days before the vote to intimidate and disenfranchise Jewish voters.  Ex. R.  As a result, the Board of Elections has not yet been able to count the votes.  *Id.*  The potential dissolution of Bloomingburg (which has existed since 1833), and the disenfranchisement of voters constitute very serious civil rights violations.  While the outcome of the vote remains to be determined, Plaintiffs may be obliged to petition the Court for assistance if Jewish voters are ultimately disenfranchised and if the Village votes to dissolve itself.

Village enacted the building moratorium, which has the effect of preventing any further construction on the religious school.  Defendants thus have prevented the private religious school from opening for the 2014-2015 school year and will no doubt seek to block it next year as well.

              3.       Defendants Continue To
                       <u>Block Other Jewish-Owned Construction.</u>

In addition to halting the issuance of all permits necessary for the completion of Chestnut Ridge and the private religious school, the Village has exploited Local Law No. 6 to avoid acting on dozens of other routine permit applications submitted prior to the moratorium.  Ex. G ¶ 46.

The moratorium prevents additional Jewish individuals from moving to the Village.  As the Village knows, Orthodox Jewish religious practices require separate kitchen facilities to ensure that milk products are not mixed with meat products.  *Id.* ¶ 47.  After purchasing a home, Orthodox Jewish homeowners must engage in extensive remodeling for which a permit is required.  While the Village has received complaints that the moratorium effectively precludes Orthodox Jews from moving into Bloomingburg, the Village has refused to do anything about the moratorium's impact on construction.  Ex. S.

Even apart from the moratorium, the Village has taken a number of other actions to erect roadblocks against Jewish construction.  When Mayor Gerardi entered office, Mike Grass served as the Village's building code enforcement officer.  Ex. G ¶ 29.  Over the past six months, Mayor Gerardi has cycled through three other enforcement officers in an effort to select individuals willing to bend the law and discriminate against Jewish-owned developments.  Mayor Gerardi first fired Mr. Grass and hired Fusco Engineering to be the Village's engineer, with Alfred Fusco III serving as the Village's new enforcement officer.  *Id.* ¶ 30.  Unhappy with Mr. Fusco, Gerardi directed Fusco Engineering to retain a new officer.  *Id.* ¶ 31.  Fusco Engineering hired Todd Korn for the position, and Village officials repeatedly sought to pressure him to issue stop work

orders against Jewish-owned properties.  Ex. A ¶¶ 17-18.  Fusco Engineering and Mr. Korn

refused to issue orders for pretextual reasons.  *Id.*  As a result, on August 13, 2014, the Village

replaced Fusco Engineering with a new building code enforcement officer, Joseph Smith, who is

sympathetic to the anti-Hasidic movement and willingly discriminates on behalf of the Village.

Ex. G ¶ 34.

At the direction of the Village, Mr. Grass or Mr. Korn inspected the construction of both

new houses in Chestnut Ridge and the renovations of existing properties.  *Id.* ¶ 35.  The new

officer, Mr. Smith, however, claimed that the Village had lost its prior inspection reports and

thus could not provide Plaintiffs with a Certificate of Occupancy to move people into either the

new houses in Chestnut Ridge or other newly renovated properties.  *Id.* ¶ 36.  Mr. Smith

demanded that Plaintiffs' architects and engineers certify that work was done according to code,

which was a costly, and time consuming process.  *Id.* ¶ 37.  While Plaintiffs complied with this

directive as the path of least resistance, they also requested Mr. Grass's inspection reports

pursuant to the New York Freedom of Information Law.  *Id.* ¶ 38.  The Village had them and

produced them, even though Mr. Smith had claimed they were lost.  *Id.*

On August 18, 2014, Mayor Gerardi, trespassed onto Learning Tree's property, the site of

the private religious school, to question Bob Miller, a hydrogeologist, about what he was doing

on the property.[2]  Ex. T ¶ 10.  Mayor Gerardi explained that the well at the senior living home at

68 Godfrey Road had gone dry and implied that it was the result of well drilling at the Learning

Tree site.  *Id.* ¶¶ 10-12.  The drilling of test water supply wells at the Learning Tree site could

not have affected 68 Godfrey Road because the properties are far apart, and the Learning Tree

---

[2]     Mayor Gerardi had been notified repeatedly both orally and in writing as well as both
directly and through counsel, after he previously illegally trespassed, that he was not
permitted to enter Plaintiff's property without a warrant.  Ex. G ¶ 41.

test wells had not yet even drawn any water. *Id.* ¶ 12. Immediately after this visit, on August 18, 2014, at Defendants' insistence, the new Code Enforcement Officer issued a stop work order prohibiting the drilling or operation of any wells at the Learning Tree site. Ex. U.

The alleged basis for the stop work order was that Learning Tree had not complied with Section 195-4(A) of the Town of Mamakating Code, which requires property owners to obtain a well permit before developing a water supply well in the Town. Ex. U, V. That provision expressly applies, however, to property located within the Town of Mamakating – and not for property in the Village. Moreover, the Village and its Code Enforcement Officer lack the authority under the New York Village Law, or any other statute, to enforce the Town of Mamakating's Code against properties located in the Village.[3]

Additionally, Plaintiffs have sought to open a kosher pizza restaurant in a space previously occupied by a non-kosher pizza restaurant. *See* Ex. A ¶19; Ex. X ¶ 10. This transition from one restaurant to another, without a change of use, should be routine and typically does not require any building permit or other approvals. Ex. G ¶ 44. Nonetheless, the Village delayed this process for many months. *Id.* ¶ 43. In stark contrast, a nearby non-Jewish business that required a change of use from a warehouse space to a retail thrift shop proceeded to open for business with no approvals and no building permits. Ex. X ¶ 10.

---

[3]     The Village's Zoning Law does not even purport to regulate the drilling of wells, much less require site plan approval. Nonetheless, the Village directed Learning Tree to submit a "well" permit application by crossing out the word "building" on the building permit application and writing "well" above it. Ex. U. As a result, Learning Tree's well driller was forced off the project site, which has further delayed the completion of the private religious school. *Id.* Furthermore, in response to New York FOIL requests for all previously issued "well drilling permits" in Bloomingburg over the last twenty years, Plaintiffs' counsel was informed that the Village could not identify any, nor could they identify the Village code provision that would require such a permit. Ex. W.

There is no question but that Defendants are engaged in a broad scheme to discriminate against Plaintiffs on the basis of religion.  Most urgently, the building moratorium is preventing Plaintiffs from completing the Chestnut Ridge housing project, the private religious school, and other developments.  By doing so, Defendants continue to infringe on Plaintiffs' rights to be free from religious discrimination.

## Argument

### POINT I

### PLAINTIFFS ARE LIKELY TO SUCCEED IN SHOWING THAT THE BUILDING MORATORIUM IS ILLEGAL

To enjoin the enforcement of a local ordinance, a party must demonstrate:  (1) a likelihood of success on the merits, and (2) irreparable harm if an injunction is not granted. *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2d Cir. 2003); *see also Sunrise Develop., Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 772 (E.D.N.Y. 1999) (granting preliminary injunction under the Fair Housing Act claims brought by proposed property builder against city's zoning ordinance).

Plaintiffs can demonstrate a clear and substantial likelihood of success on the merits. Numerous federal constitutional and statutory provisions, including the Fair Housing Act ("FHA"), the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, the Fourteenth Amendment, and Article I of the New York State Constitution, render the building moratorium invalid.  Each of these violations provides an independent basis for invalidating the moratorium, and underlying all of these claims is Defendants' discriminatory animus.

A.    Defendants' Discriminatory Intent Is Pervasive

Defendants' discriminatory animus towards Hasidic Jewish people lies at the heart of the

moratorium and forms the bases for each of the violations at issue.  To establish discriminatory

intent, the court "can, and often must" look to circumstantial evidence.  *United States v. Yonkers*

*Bd. of Educ.*, 624 F. Supp. 1276, 1372 (S.D.N.Y. 1985), *aff'd*, 837 F.2d 1181 (2d Cir. 1987).  In

this case, however, there is both direct and circumstantial evidence of discrimination.

*First*, the timing of the moratorium makes clear that it was enacted for the purpose of

targeting Chestnut Ridge and other Jewish-owned projects.  The Village enacted the building

moratorium just ten days after the Appellate Division vacated an injunction against development

in Bloomingburg and less than a month after the New York Supreme Court ordered the Village

Planning Board to reconsider permit applications for the private religious school.  Ex. G ¶¶ 12,

28.  There can be no serious doubt that the Village enacted the moratorium to "solve" the

problems created by these New York court decisions.

*Second*, Village officials have repeatedly demonstrated their discriminatory intent

through their words and deeds.  Mayor Gerardi has referred to Hasidic Jewish people in

Bloomingburg as "those people" and "those things."   Ex. A ¶¶ 17-18; Ex. X ¶ 7.  He sought to

schedule this year's Independence Day parade on a Saturday, because "those people won't be

able to come on Saturday."   Ex. X ¶ 8.  Indeed, the Mayor has taken an unusual interest in

personally enforcing the building code against Jewish-owned businesses, including by

instructing the code enforcement officer to enforce the code pretextually and to deny certificates

of occupancy arbitrarily, as well as by making his own personal "inspections" of such properties

without a warrant.   Ex. A ¶ 20.

The Village Clerk and one of the trustees, Defendant James Johnson, similarly refer to

Jewish people in derogatory and discriminatory terms.  The Clerk asked a code officer to go after

11

a "little Jew kid" riding his bike without a helmet, and Johnson emphasized the need to "teach them a lesson."   Ex. A ¶¶ 19-20.  In contrast, the Village has chosen not to enforce the building code against non-Jewish businesses, because those people are "one of us."   Ex. X ¶ 10; Ex. A ¶ 16.[4]

*Third*, Defendants' discriminatory intent is highlighted by the absence of any credible explanation for the ordinance.  Defendants have claimed that the moratorium was needed to address a hazardous materials emergency, but that is an obvious pretext.  Village officials have never identified any actual hazardous substances at the developments in question.  Ex. N. Consistent with all governing ordinances, Plaintiffs have submitted the required asbestos reports from environmental companies, Chestnut Ridge is an entirely new construction (and thus does not use asbestos), and the Village building code enforcement officer has refuted any complaints concerning asbestos.  Ex. G ¶ 15; Ex. K.  Hazardous materials are evidently *still not* a concern in Bloomingburg, because the Village recently confirmed that in the three months since enacting the moratorium, it has not found any evidence of any hazardous substances at all.  Ex. N. Indeed, in its statement extending the moratorium, the Village did not even identify what, if anything, it is doing to investigate the alleged concerns that motivated the moratorium.  *Id*.

*Finally*, animus against the Hasidic community permeates all Village meetings and daily activities.  "[T]he law is quite clear that even where individual members of government are found not to be biased themselves, plaintiffs may demonstrate a violation of [federal law] if they can show that 'discriminatory governmental actions are taken in response to significant community bias.'"  *Community Hous. Trust v. Dep't of Consumer & Reg. Affairs*, 257

---

[4]      These examples reflect sworn statements provided voluntarily by witnesses prior to the filing of the lawsuit.  Plaintiffs anticipate that discovery and third-party subpoenas will reveal that they are just the tip of the iceberg.

F. Supp. 2d 208, 1227 (D.D.C. 2003) (internal citations omitted); *United States v. City of Birmingham*, 538 F. Supp. 819, 830 (E.D. Mich. 1982), *aff'd as modified*, 727 F.2d 560 (6th Cir. 1984) (Plaintiff "need not prove that the [governing body] itself intended to discriminate… [I]t is sufficient to show that the decision-making body acted for the sole purpose of effectuating" the wishes of those who opposed the project for discriminatory reasons.).  Accordingly, "a decision made in the context of strong, discriminatory opposition becomes tainted with discriminatory intent even if the decision-makers personally have not strong views on the matter." *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 49 (2d Cir. 1997), *overruled on other grounds by Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012).

Over the past two years, certain residents in the Bloomingburg area have grown increasingly opposed to Hasidic development.  Community unrest and rowdy opposition forced the Village Planning Board to cancel two meetings considering Learning Tree's plan application for the private religious school in August and September of 2013.  Ex. G ¶ 24.  At the December 2013 meeting, which was held under the watch of the police, the Planning Board denied the application without providing any explanation for the denial.  Ex. O.  After the New York Supreme Court voided the action and ordered reconsideration, the Village responded simply by dissolving the Planning Board in an effort to further delay the opening of the religious school. Ex. I at 3-4.

The anti-Jewish sentiment in the community is palpable.  In connection with a recent referendum on dissolution of the Village, *see supra* p. 6 n. 1, one community member stated that, "[t]he Hasidic Jews will take over our town and we do not want that."  Ex. Q.  Internet postings in response to the proposed developments in Bloomingburg are rife with anti-Semitic comments such as, "[j]ust what Bloomingburg doesn't need—Satmars," "Notice to the current residents of

Bloomingburg . . . Enforce every by-law for cleanliness, grass cutting, etc. etc. as they will turn your town into a garbage heap," and "[t]he resid[ents] of Bloomingburg will, unfortunately, yearn for a Final Solution." Ex. Y.

The moratorium is plainly an effort to stop Plaintiffs and other Jewish individuals from developing projects and moving into the Village.  Significantly, the Hasidic Jewish community of Bloomingburg requires the private religious school in order to grow.  Those Hasidic Jews already in the Village are forced to home-school their children or drive over 25 miles to another religious school.   Ex. G ¶ 20.  In addition, while Defendants have invoked the moratorium to avoid granting over 80 of Plaintiffs' permits requests, *id.* ¶ 40, Plaintiffs are aware of no instance in which the Village has invoked the moratorium to block other developments.  In fact, while Plaintiffs are repeatedly met with stop work orders, various other non-Jewish property owners continue to perform work without permits, and without citation.  *See* Ex. X ¶¶ 9-10; Ex. G.

The same hostility that has blocked Learning Tree's application also carried Gerardi and other officials into power in the Village on an anti-Hasidic platform.  As discussed above, they have sought to carry out their discriminatory agenda by, among other things, enacting the moratorium, prolonging or altogether ignoring permit applications, and instructing Village employees to withhold certificates of occupancy for Jewish-owned properties.   Ex. A ¶ 20.

B.       The Building Moratorium Violates the Fair Housing Act

The FHA makes it unlawful "[t]o . . . make unavailable or deny, a dwelling to any person because of . . . religion."  42 U.S.C. § 3604(a).  The FHA "reach[es] a wide variety of discriminatory housing practices, including discriminatory zoning restrictions."  *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995).  FHA Section 3617 similarly makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604 . . .of this title."  42 U.S.C.

14

§ 3617. "A plaintiff can establish a violation of the FHA . . . by proving that the challenged act was intentionally discriminatory." *Sunrise Dev.,* 62 F. Supp. 2d at 773. The Second Circuit has recognized that injunctive relief may be appropriate to ensure compliance with the FHA and to remedy the effects of discriminatory measures. *See LeBlanc-Sternberg v. Fletcher*, 104 F.3d 355 (2d Cir. 1996).

Plaintiffs may show a *prima facie* case of a FHA violation where animus against the protected group "was a significant factor in the position taken" by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive. *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1217 (2d Cir. 1987). "Discriminatory intent may [also] be inferred from the totality of the circumstances." *LeBlanc-Sternberg*, 67 F.3d at 424. In *United States v. City of Black Jack*, 508 F.2d 1179 (8th Cir. 1974), the Eighth Circuit held that plaintiffs had established a *prima facie* case based upon discriminatory remarks made by a movement's leaders at public meetings, together with people cheering in response to those discriminatory comments. *See id.* at 1185 n.3. Courts have also held that where "an official act is performed simply in order to appease the discriminatory viewpoints of private parties, that act itself becomes tainted with discriminatory intent even if the decision maker personally has no strong views on the matter." *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, N.Y.*, 808 F. Supp. 120, 134 (N.D.N.Y. 1992).

Defendants have plainly sought to prevent Plaintiffs from "making available" housing to Hasidic Jewish people in Bloomingburg. *See, e.g.*, *El Dorado Estates v. City of Fillmore*, No. 12–55549, 2014 WL 4290363, *2-4 (9th Cir. Sept. 2, 2014) (finding that a developer, while not a member of the protected class, had suffered a cognizable injury under the FHA after the city had sought to prevent the opening of a seniors-only mobile home park). Village officials and

residents have repeatedly voiced strong animus against the Hasidic community, and the Village has failed to put forth any credible or legitimate basis for the moratorium.  Defendants justified the moratorium as addressing a "hazardous waste" emergency, but they did not present any evidence of that problem in June 2014, and the Village attorney has confirmed that they still have no evidence of such an issue.  Rather, they have chosen to extend the moratorium for another 90 days for "a variety of reasons" that they did not and could not name.  The goal of the moratorium is to deprive Hasidic Jewish individuals of housing, pure and simple, and Plaintiffs thus can demonstrate a strong likelihood of success on the merits of the FHA claim.

       C.        The Building Moratorium Violates RLUIPA

The building moratorium violates RLUIPA because it imposes discriminatory burdens on religious activity, most notably by prohibiting the completion of the religious school.  RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability."  42 U.S.C. § 2000cc-1(a).  The statute "accord[s] religious exercise heightened protection from government-imposed burdens than is otherwise generally protected under the First Amendment."  *Anderson v. Vare*, 359 F. App'x. 892, 893 (9th Cir. 2009); *accord Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Comm'n*, -- F.3d --, No. 12-1057-CV, 2014 WL 4652510, at *5-6 (2d Cir. Sept. 19, 2014); *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 347 (2d Cir. 2007); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289 (5th Cir. 2012); 42 U.S.C. § 2000cc-3(g) (RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.").

Under RLUIPA, the government may not enact a "land use regulation in a manner that imposes a substantial burden on the religious exercise of a person . . . or institution, unless the

16

government demonstrates that imposition of the burden on that person . . . or institution is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest." *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 275 (S.D.N.Y. 2009) (finding plaintiffs established prima facie case violation of RLUIPA).

To establish a *prima facie* case under the Substantial Burden provision of RLUIPA, Plaintiffs must show that defendants' conduct (1) imposes a substantial burden; (2) on the "religious exercise;" (3) of a person, institution or assembly.  42 U.S.C.  2000cc(a)(1).  Courts evaluate government actions under RLUIPA pursuant to strict scrutiny.  *See Young v. Goord*, 67 F. App'x. 638, 640 (2d Cir. 2003), *aff'd*, 192 F. App'x. 31 (2d Cir. 2006); *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 576 (2d Cir. 2002); 42 U.S.C. § 2000cc-1(a).  Thus, if the government's actions are not supported by substantial evidence, they will be invalidated.  *See Westchester Day Sch.*, 504 F.3d at 351.

In this case, the building moratorium plainly imposes a substantial burden on the "religious exercise" of Plaintiffs.  *See Fortress Bible Church v. Feiner*, 694 F.3d 208, 219-20 (2d Cir. 2012).  This Court "already has found that the religious education of children is in fact central to modern Orthodox Judaism: the religious education of children is a key religious obligation mandated by the Torah, and for most modern Orthodox Jews, the enrollment of their children in a dual curriculum Jewish school . . . is virtually mandatory." *Westchester Day Sch. v. Village of Mamaroneck*, 417 F. Supp. 2d 477, 545 (S.D.N.Y. 2006).  By blocking the operation of the private religious school, the building moratorium imposes a substantial burden on Plaintiffs and other Hasidic Jews residing in the Village.  *See Westchester Day Sch.*, 504 F.3d at

17

351-53.[5]  Second, religious exercise includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 USC § 2000cc-5(7)(A).  The private religious school thus qualifies as religious exercise under RLUIPA.  *See Westchester Day Sch.*, 504 F.3d at 348.  Finally, the building moratorium impacts Plaintiffs, as well as a number of other individuals.  Defendants' improper goal of blocking Jewish development is neither compelling nor supported by *any* evidence, and their drastic act of blocking all development in the Village is not the least restrictive means of achieving any legitimate objective.

Furthermore, Plaintiffs can demonstrate that Defendants violated the Equal Terms provision of RLUIPA: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).  Nonetheless, the Village continues to subject the private religious school to a land-use regulation, the building moratorium, that treats it on less than equal terms with nonreligious institutions.  *See id.*  It is evident from the timing of and the motives behind the enactment of the building moratorium that it was adopted for the improper purpose of barring Plaintiffs from opening the private religious school.

The "nondiscrimination" provision of RLUIPA similarly provides that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination."  42 U.S.C. § 2000cc(b)(2).  The analysis under this provision is similar to that for equal protection claims, which precludes

---

[5]      In addition, the building moratorium imposes a substantial burden on Plaintiffs by blocking the conversion of any kitchens to meet Kosher guidelines.  RLUIPA expressly provides that "the use, building, or conversion of real property for the purpose of religious exercise shall be considered religious exercise," 42 U.S.C. § 2000cc-5, and that it "shall be construed in favor of broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3.  Because Orthodox Jews must live in homes with kosher kitchens, the moratorium has the effect of burdening their religious exercise.  Ex. G ¶ 48.

actions motivated by religious discrimination.  *See Chabad Lubavitch*, 2014 WL 4652510, at

*10; *see also Church of Scientology of Ga., Inc. v. City of Sandy Springs*, 843 F. Supp. 2d 1328,

1360-61 (N.D. Ga. 2012).  Thus, as discussed above in Part I.A, Plaintiffs have established both

blatant and circumstantial evidence of discrimination, which triggers the nondiscrimination

subsection of RLUIPA.

        In addition to prohibiting substantial burdens on religious activity, RLUIPA also contains

a separate provision that protects against Village ordinances that seek to exclude religious

activities from the territory of the Village.  42 U.S.C. § 2000cc(b)(3)(A).  Here, the building

moratorium seeks to prevent the opening of the private religious school and thereby to exclude

such religious activity from the Village.  As demonstrated above, there is no compelling

governmental interest justifying the denial of an application to use the Learning Tree property at

issue for a private religious school.  Indeed, the New York Supreme Court has already found that

the Village's denial of the site plan application was arbitrary and capricious.  Ex. P.  As the

Second Circuit has recognized, the state court finding of arbitrary conduct constitutes evidence in

support of a RLUIPA violation.  *See Chabad Lubavitch*, 2014 WL 4652510, at *8.

        Because the building moratorium prevents the development of a private religious school

in Bloomingburg, it has deprived and continues to deprive Plaintiffs of their right to the free

exercise of religion, as secured by the various prohibitions of RLUIPA.  Plaintiffs therefore can

demonstrate a strong likelihood of success on the RLUIPA claim.

        D.    <u>The Building Moratorium Violates the First Amendment</u>

        The building moratorium also contravenes the Free Exercise Clause of the First

Amendment.  *See* U.S. Const. amend. I; *see also* 42 U.S.C. § 1983.  The First Amendment

prohibits government actions that "substantially burden the exercise of sincerely held religious

beliefs unless those actions are narrowly tailored to advance a compelling government interest."

*Fortress Bible Church*, 694 F.3d at 220 (internal quotations omitted).  The government may defend a neutral and generally applicable law if it can supply a rational basis in support, but this defense does not extend to actions that target a particular religious group for disfavor or to neutral laws applied in bad faith.  *See id.* at 220-21; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 521 (1993) ("Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality.").  A law does not qualify as neutral "if the object . . . is to infringe upon or restrict practices because of their religious motivation."  *Id.* at 533.  If the government action departs from neutrality, it "must be justified by a compelling governmental interest and must be narrowly tailored to advance the interest."  *Id.* at 531-32, 546.

As discussed above, the Village here has set out to disfavor a particular religious group, Hasidic Jewish people, and to impose burdens on their ability to live and practice their religion in Bloomingburg.  The record demonstrates that the building moratorium was enacted for the "impermissible objective" of preventing Hasidic Jewish people from moving to Bloomingburg from preventing a completion of a private religious school, and from completing other Jewish-owned developments.  *Id.* at 522, 542.  The building moratorium is accordingly neither neutral nor of general applicability.  The Village has cited concerns for "hazardous wastes," but the record demonstrates that those are a mere pretext, and even if there was any specific concern, the Village cannot demonstrate how a moratorium on *all* construction, including the construction of new buildings with new materials, constitutes the least restrictive means of dealing with any potential issue.  Moreover, the mere fact that the Village has taken no actions in connection with hazardous materials since the moratorium went into place over three months ago indicates that there is no urgent need being met by the moratorium and its enactment is thus not compelling.

The moratorium plainly violates Plaintiffs' First Amendment rights, and will continue to violate their rights, including their daily religious practices, unless this Court grants a preliminary injunction.

      E.      <u>The Building Moratorium Violates the Equal Protection Clause</u>

The building moratorium likewise violates the Equal Protection Clause of the Fourteenth Amendment.  42 U.S.C. §1983.  The Equal Protection clause directs that "all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), and prohibits the government from engaging in discrimination on the basis of religion, *Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001).

The Second Circuit has "generally recognize[s] three types of equal protection violations (1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect . . . ; and (3) a facially neutral law that is enforced in a discriminatory manner." *Chabad Lubavitch of Litchfield,* 2014 WL 4652510, at *11.  In evaluating discriminatory intent, the court looks to "such factors as disproportionate impact, the historical background of the challenged decision, the specific antecedent events, departures from normal procedures, and contemporary statements of the decisionmakers." *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 253 (1977); *see also Chabad Lubavitch of Litchfield,* 2014 WL 4652510, at *11

Just as Plaintiffs can make a case under the nondiscrimination provision of RIUPLA, they can do so directly under the Equal Protection Clause as well.  Defendants' animus against the Hasidim was a significant factor in enacting the moratorium—a decision made by officials in a decision-making position.  *See LeBlanc-Sternberg*, 67 F.3d at 425; *Yonkers*, 837 F.2d at 1221 (noting that discriminatory intent may be established by "contemporary statements by members of the decisionmaking body" (international quotation omitted).  Defendants have blocked

Plaintiffs' developments based on Defendants' desire to exclude Hasidic Jewish individuals from the Village. Plaintiffs have thus demonstrated a likelihood of success on the Equal Protection claim as well.[6]

## POINT II

### THE BUILDING MORATORIUM IS CAUSING ONGOING IRREPARABLE HARM TO PLAINTIFFS

To obtain a preliminary injunction, a moving party must show that, absent injunctive relief, it will suffer "actual and imminent" harm for which "a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). Courts have recognized that irreparable injury will be presumed with respect to the various constitutional and statutory interests abridged by the moratorium here. Thus, violations of the FHA constitute irreparable harm and are grounds for injunctive relief. *See, e.g.*, *Bronson v. Crestwood Lake Section 1 Holding Corp.*, 724 F. Supp. 148, 153 (S.D.N.Y. 1989) (finding irreparable harm based on discrimination against persons looking for housing in violation of the FHA) (quoting *Gresham v. Windrush Partners, Ltd*, 730 F.2d 1417, 1423 (11th Cir. 1984) (noting that "a person who is discriminated against in the search for housing cannot remain in limbo while a Court resolves the matter")); *Sunrise Dev., Inc.*, 62 F. Supp. 2d at 778 (finding that plaintiffs were irreparably harmed when they were prevented from living in "[a] residential neighborhood of their choice").

---

[6]     In addition to the federal violations, the building moratorium cannot withstand judicial scrutiny under New York State law. *See Cellular Telephone Co. v. Village of Tarrytown*, 209 A.D.2d 57, 66 (2d Dep't 1995) (quoting *Mitchell v. Kemp*, 176 A.D.2d 859, 860 (2d Dep't 1991)); *see also Duke v. Town of Huntington*, 153 Misc. 2d 521, 624 (Suffolk Cnty. 1991). The building moratorium fails for at least three reasons under New York State law: (1) It is *not* aimed at redressing a genuine crisis or emergency; (2) it was *not* enacted for a valid and reasonable purpose; and (3) as evidenced by the fact that the Village has taken no steps in connection therewith, exceeds a reasonable period of time. *Cellular Telephone Co.*, 209 A.D.2d at 66.

Similarly, a violation of RLIPUA constitutes irreparable injury because it "enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious [freedoms]."  *Opulent Life Church*, 697 F.3d at 295; *see also Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766, 795 (D. Md. 2008) ("[T]he infringement of one's rights under RLUIPA constitute[s] irreparable injury."), *aff'd*, 368 F. App'x 370 (4th Cir. 2010).

Finally, irreparable harm is presumed when First Amendment rights are infringed.  *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Community Commc'ns Co. v. City of Boulder, Co.*, 660 F.2d 1370, 1375 (10th Cir. 1981) ("[T]o the extent that First Amendment rights are infringed, irreparable injury is presumed."); *McCormick v. Hirsch*, 460 F. Supp. 1337, 1349 (M.D. Pa. 1978) (finding irreparable injury and granting injunctive relief based on a substantial showing of infringement on First Amendment religious liberties).

Here, Plaintiffs have demonstrated how Defendants' actions violate their rights under the FHA, RLUIPA, and the U.S. Constitution.  First, with respect to the FHA, by enacting the building moratorium, Defendants are blocking the construction and utilization of Chestnut Ridge on the basis of religion.  Defendants are intentionally interfering with the right of the Hasidic Jewish community to available housing, for example, by preventing the construction of Kosher kitchens.  *See supra* at 7.   Defendants are engaged in intentional discrimination against Hasidic Jewish individuals by making housing "unavailable" to them on the basis of religion, and thus are causing irreparable injury to Plaintiffs by violating the FHA.

Second, with respect to RLUIPA, the building moratorium seeks to stop the completion and operation of the private religious school, as well as other Jewish-owned businesses.  The

moratorium imposes a substantial burden on Plaintiffs' religious practices where there is no compelling governmental interest for doing so. Indeed, the moratorium was one more effort to avoid the impact of a court order requiring Defendants to reconsider a prior denial of an application that would enable Plaintiffs to finish development of the private religious school. *See supra* at 6, 10, 12. This intentional effort to prevent the opening of a Jewish school violates Plaintiffs' right to use the land for religious purposes and thus is causing irreparable harm to Plaintiffs.

Third, the building moratorium deprives Plaintiffs of their right to free exercise of religion by substantially burdening their religious exercise without a compelling government interest and by prohibiting the Plaintiffs from living within the Village's jurisdiction. For example, Plaintiffs cannot build structures necessary to support Hasidic individuals' religious practices, and they cannot install sinks necessary for Kosher kitchens. *See supra* p. 7. By blocking the development of the private religious school, Chestnut Ridge, Jewish-owned businesses, and other projects, the moratorium has infringed on Jewish individuals' right to freedom of association and free exercise of religion, as secured by the First Amendment to the U.S. Constitution.

The burdens imposed by the moratorium on Plaintiffs are substantial and pervasive. For example, by preventing the opening of the Jewish private school, Defendants are effectively forcing the would-be students and their parents to travel significant distances to other areas to attend religious schools. Courts have recognized that withholding a child's right to attend school on the basis of religion constitutes an irreparable harm and is grounds for a preliminary injunction. *See, e.g.*, *Lewis v. Sobol*, 710 F. Supp. 506, 507 (S.D.N.Y. 1989) (noting that "it was clear that [plaintiff's daughter] would suffer irreparable harm if barred from attending school").

Moreover, Plaintiffs' properties remains vacant, projects are half-finished, equipment is rusting, contractors are going elsewhere for work, and families with school-aged children are settling in other towns with private religious schools.  Defendants' violations of Plaintiffs' rights under the FHA, RLUIPA and the Constitution are causing and continue to cause irreparable injury.

## Conclusion

Plaintiffs have established both a likelihood of success on the merits and ongoing irreparable harm.  For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for a Preliminary Injunction.

Dated: October 7, 2014          DECHERT LLP
      New York, New York

                 By:    /s/ Steven A. Engel_____
                        Steven A. Engel
                        Michael H. Park
                        K. Keely Rankin
                        1095 Avenue of the Americas
                        New York, New York 10036
                        (212) 698-3500
                        (212) 698-3599 (facsimile)
                        steven.engel@dechert.com

                        WHITEMAN OSTERMAN & HANNA LLP

                        John J. Henry
                        Robert S. Rosborough IV
                        One Commerce Plaza
                        Albany, New York 12260
                        (518) 487-7600
                        (518) 487-7777 (facsimile)
                        jhenry@woh.com

                        *Attorneys for Plaintiffs*