UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

THE BLOOMINGBURG JEWISH EDUCATION CENTER;
SULLIVAN FARMS II, INC.; LEARNING TREE
PROPERTIES, LLC; MALKA ROSENBAUM;
SHEINDEL STEIN; COMMERCIAL CORNER, LLC; and
WINTERTON PROPERTIES, LLC,

Plaintiffs,

-against-

VILLAGE OF BLOOMINGBURG, NEW YORK; VILLAGE
BOARD OF TRUSTEES OF THE VILLAGE OF
BLOOMINGBURG, NEW YORK; FRANK GERARDI,
individually and in his official capacity as Mayor; EILEEN
ROGERS, individually and in her official capacity as Village Clerk;
PLANNING BOARD OF THE VILLAGE OF BLOOMINGBURG,
NEW YORK; ANDREW FINNEMA, individually and in his former
official capacity as Planning Board member; ANN HEANELT,
individually and in her former official capacity as Planning Board
member; JOSEPH B. ROE, individually and in his former official
capacity as Planning Board member; TOWN OF MAMAKATING,
NEW YORK; TOWN BOARD OF THE TOWN OF
MAMAKATING, NEW YORK; ZONING BOARD OF APPEALS
OF THE TOWN OF MAMAKATING; PLANNING BOARD OF
THE TOWN OF MAMAKATING, NEW YORK; KATHERINE
ROEMER, individually and in her official capacity as Trustee;
JAMES JOHNSON, individually and in his official capacity as
Trustee; and WILLIAM HERRMANN, individually and in his
official capacity as Supervisor for the Town of Mamakating,

Defendants.

——————————————————————————

**FIRST AMENDED
COMPLAINT AND
DEMAND FOR
JURY TRIAL**

**Hon. Cathy Seibel
Index No. 14-cv-7250**

      Plaintiffs The Bloomingburg Jewish Education Center ("Bloomingburg Jewish Education

Center"), Sullivan Farms II, Inc. ("Sullivan Farms"), Learning Tree Properties, LLC ("Learning

Tree"), Malka Rosenbaum, Sheindel Stein, Commercial Corner, LLC ("Commercial Corner"),

and Winterton Properties, LLC ("Winterton Properties") (collectively, "Plaintiffs"), by and

through their attorneys, Dechert LLP and Whiteman Osterman & Hanna LLP, as and for their First Amended Complaint in this matter against the Village of Bloomingburg, New York, the Village Board of Trustees of the Village of Bloomingburg, Frank Gerardi, Eileen Rogers, the Planning Board of the Village of Bloomingburg, Andrew Finnema, Ann Heanelt, Joseph B. Roe, Katherine Roemer, and James Johnson (collectively, the "Village Defendants"), and against the Town of Mamakating, New York, the Town Board of the Town of Mamakating, the Zoning Board of Appeals of the Town of Mamakating, the Planning Board of the Town of Mamakating, and William Herrmann (collectively, the "Town Defendants") respectfully allege as follows:

## **INTRODUCTION**

1.      Plaintiffs have commenced this action to stop pervasive, government-sponsored religious discrimination.  The Village of Bloomingburg (the "Village" or "Bloomingburg") and the adjoining Town of Mamakating (the "Town" or "Mamakating"), acting on behalf of an aggressive and hateful group of their residents, are engaged in a conspiracy to prevent Hasidic Jews from buying houses, establishing a private religious school, establishing a mikvah, and operating businesses in their community.  After members of the Hasidic community began to move into the area, Bloomingburg and Mamakating instituted a number of roadblocks designed to stop the community from growing.  These municipalities are engaged in a series of patently illegal actions to block lawful, approved, and long-planned developments in Bloomingburg and Mamakating.

2.      The anti-Semitic animus is unmistakable.  In the Village of Bloomingburg, on at least five separate occasions over this past summer, an individual broke the windows of Jewish-owned businesses in frightening acts of vandalism.  Adjacent to the Villages of Chestnut Ridge ("Chestnut Ridge"), a planned new housing development, a landowner erected a 20-foot tall,

2

wooden cross informing new Hasidic residents that they are unwelcome.  Angry protesters have hectored and cursed at Orthodox Jewish women as they push babies in strollers through the public streets.  And one of the organizers of the anti-Hasidic opposition has admitted that the opposition to Chestnut Ridge began only after residents learned that "the developer planned a Hasidic community."  This is all just the tip of the iceberg.

3.     The Village and Town are seeking to use their political power, economic pressure, zoning laws, and sheer intimidation to prevent a certain type of people from joining their community.  This type of intolerance might sound like a story from the Civil Rights era in the South.  But it is unfolding right now in a municipality just 75 miles from New York City.  In the United States, local governments and residents may no more prevent other citizens from moving into their neighborhoods based upon their religious observances than on the color of their skin.

4.     The Village and Town have taken increasingly lawless actions over the course of the last year.  To take one example, Plaintiff Learning Tree has been seeking, for over 18 months now, to obtain routine site plan approvals to open a private religious school, operated by the Bloomingburg Jewish Education Center, for the instruction of Hasidic Jewish children.  The religious school is urgently needed by Hasidic residents, whose religious practices otherwise oblige them to home school their children or to send them to parochial schools well outside the area.  The religious school is a permissible use under the zoning code, and Learning Tree needed site plan approval only to widen the driveway to permit an adequate turning radius for school buses and to site a parking lot on an adjacent parcel.

5.     Because opponents feared that opening a religious school would encourage additional Hasidic families to move into the area, Learning Tree's application faced vehement opposition.  Hundreds of angry residents mobbed the first meeting of the Village Planning Board

on August 29, 2013, shouted down the board members, and forced the meeting to be canceled. That scene repeated itself a month later on September 26, 2013, when the Planning Board was again forced to adjourn without voting on Learning Tree's application. Finally, on December 12, 2013, with the State Police looking on to control the crowd, the Planning Board and its members conducted the meeting, yielded to public pressure, and voted to deny the school's application without any substantive review.

6.     The Planning Board provided no legitimate explanation for denying what should have been a routine approval. During the vote, Planning Board Member and Defendant Anne Heanelt stated, "I'm just voting no on this," to which she received raucous applause from the crowd. Planning Board Member and Defendant Andrew Finnema asked, "Why do we need another school in Bloomingburg?" The Planning Board plainly could not deny Hasidic Jews their right to religious instruction based upon the existence of a secular public school, and the purported "need" for a school was legally irrelevant to the Planning Board's consideration of whether the driveway may be widened and a parking lot sited next door.

7.     After Learning Tree challenged the denial in state court, the New York Supreme Court voided the Planning Board's action in May 2014 and ordered the Planning Board to reconsider the site plan application. Rather than comply, the Village simply dissolved the Planning Board and the Zoning Board of Appeals ("ZBA") and empowered the Mamakating boards to administer the Village Zoning Code. The Village could not do this on its own, but rather required the Town to agree to accept jurisdiction for the Village. Mamakating, which is headed by Defendant William Herrmann, one of the leaders in the anti-Hasidic movement, entered into an inter-municipal agreement for the purpose of frustrating and further delaying the approval of the school.

4

8. Mamakating and Bloomingburg plainly shared an intention to impose yet more delay on Learning Tree. Indeed, the Village did not provide any application files to the Mamakating Planning Board, which demanded that Plaintiffs complete and submit *new* applications, even though the Village Planning Board has already ruled that the prior application was complete. Since then, the Mamakating Planning Board has deliberately stalled on taking any final action on the site plan application. More than six months after the Village Planning Board ceded control of the application to the Town's Planning Board, the Mamakating Planning Board has continued to enlist multiple building consultants and engineers to review the projects. Each time a new building engineer is hired, the process is delayed while the new engineer, or planner, or Code Enforcement Officer re-reviews the project, instead of continuing where the prior engineer or consultant left off.

9. As a result, nearly a year and a half after initially submitting for site plan approval, Learning Tree remains blocked from obtaining routine approvals to widen the driveway and site a parking lot on an adjacent property. Despite having submitted its official application back in 2013, the religious school has not been able to move forward with necessary modifications and was thus unable to open in time for the 2014-2015 school year. This indefinite delay due to Defendants' actions in completing what should have been a rudimentary and routine review demonstrates the futility of the approval process and amounts to a *de facto* denial of Learning Tree's efforts to establish a private religious school. Indeed, Defendants' current aim is to continue to delay Learning Tree in the hope that once the time for approvals, appeals, and new construction are taken into account, the school will be unable to open in the fall of 2015. The individual plaintiffs have been deprived of their ability to have their children

attend the school for the 2014-2015 school year and have had to find substitute education for their children.

10.     The Village Defendants have engaged in similar malfeasance in an effort to prevent Sullivan Farms from completing development of the fully approved Chestnut Ridge, a 396-unit townhouse project.  While the Chestnut Ridge development will be open to persons regardless of their faith, Defendants believe that many Hasidic persons will live there, and so they have sought to use government power to prevent further development.

11.     Nearly eight years ago, after a public hearing and approval process, Bloomingburg annexed the land underneath Chestnut Ridge and authorized the development process to begin.  After completing a lengthy review process, Sullivan Farms filed the final subdivision plat in June 2011.  In summer 2012, model town homes were constructed and work commenced on a wastewater treatment plant.  Sullivan Farms obtained building permits for 126 units during the summer of 2013, and 51 units have been constructed.

12.     Over the past year, the Village Defendants have blocked further development at Chestnut Ridge based upon a variety of bad-faith schemes.  In March 2014, opponents of the project succeeded in electing Defendant Frank Gerardi as Village mayor on an express platform of blocking further immigration of Hasidic Jews into Bloomingburg.

13.     In June 2014, the Village placed a moratorium on all development in the Village based upon a purported "hazardous disposal" emergency to respond to complaints about compliance with the New York State Building Code and requirements regarding asbestos and lead paint use.  But there is no hazardous waste disposal issue in the Village, and Sullivan Farms and its affiliates are responsible for most, if not all, of current Village development.  In addition, Chestnut Ridge is entirely comprised of *new construction*, which does not include asbestos or

lead paint.  Thus, the moratorium is nothing more than a pretext for blocking Sullivan Farms' efforts to develop Chestnut Ridge and other properties that may serve the religious and cultural needs of the growing Hasidic population.

14.    Pursuant to this moratorium, the Village suspended applications for all residential and commercial building permits for 90 days and extended for another 90 days on September 10, 2014.  The Village may well continue the moratorium after that period expires.  The moratorium was allegedly enacted to "allocate limited Village resources toward the investigation of a substantial number of complaints about the reported and documented failure of some residential and commercial owners and contractors" to comply with the Building Code.   At a September 10, 2014 Village public meeting, the Village Board admitted that there has been no evidence of asbestos or hazardous materials, but the Village extended the moratorium anyway.

15.    Additionally, the Mayor's reference to purported "health and safety" complaints include allegations that a "Torah was observed being brought into unit," that a building "appears to be a gathering place.  Maybe a shul [synagogue]?" and that a private residential pool was being used as a mikvah, a Jewish ritual bath.  These are not bona fide complaints that would require an emergency building moratorium.

16.    Unfortunately, Mayor Gerardi has taken a personal interest in ridding the Village community of Hasidic residents.   Unlike previous mayors, Gerardi has sought personally to inspect many Jewish-owned properties in search of code violations.   Gerardi, working closely with the Village Clerk, defendant Eileen Rogers, has repeatedly directed the Village's building inspector to engage in the discriminatory enforcement of Village regulations, even when there are no code issues.  For example, after a stop-work order was issued for one of the properties owned by certain Plaintiffs, Rogers asked a former building code enforcement officer to clear out

a Jewish-owned building that the Mayor said individuals were entering and exiting.  Merely "entering and exiting" premises owned by private residents is not an activity that may be regulated by the Mayor, the Village Clerk, or a building code enforcement officer.

17.     Having suspended development and dissolved the Village Planning Board, the Village of Bloomingburg is now threatening to dissolve itself entirely in order to create further roadblocks.  On September 30, 2014, Bloomingburg held a referendum at which it asked its residents to dissolve the Village and cede all jurisdiction to the Town of Mamakating.  As with the Planning Board gambit, the Village hopes that by dissolving itself, it may undo prior zoning and subdivision approvals for Jewish-owned development projects, cause Plaintiffs further discouragement and delay by impairing their constitutional rights, and wholly avoid its current court-ordered obligations.[1]  These actions are unmistakably motivated by discriminatory animus against the religion of the people who are moving or seeking to move into Bloomingburg.

18.     The Town of Mamakating has similarly acted with discriminatory intent to frustrate Plaintiffs' building projects, frequently delaying and obstructing the issuance of routine and non-discretionary building permits and zoning approvals.  For instance, for nearly a year, Plaintiff Winterton Properties has been seeking to open a mikvah, a Jewish ritual bath, for the purpose of serving the needs of the Hasidic community in the area.  The property is located in the Village Center Zoning District, an area that permits a wide array of uses, including both commercial use and use as a neighborhood place of worship.

---

[1]     Opponents of the Hasidic community challenged 69 registered voters based upon their Jewish-sounding names.  In an extraordinary development, the Sullivan County Board of Elections summarily, and erroneously, upheld nearly all of those challenges, effectively disenfranchising Bloomingburg's Orthodox Jewish community.  At present, the votes on the September 30 referendum have been frozen, and not yet counted, pending the resolution of this litigation.

19.     The property in question had formerly been used as a day spa.  In December 2013, Winterton Properties sought approval to convert the property into a mikvah.  The building inspector finally approved the religious use as a "neighborhood place of worship" under the zoning code.  Community opponents, however, filed an appeal to the Mamakating Zoning Board of Appeals.  After months of further delay, the Mamakating Zoning Board of Appeals recently overturned that determination.  In a fractured and incoherent decision, a majority of the board conceded that a mikvah would be a "religious use" of the property, but nonetheless concluded that it did not technically qualify as a "neighborhood place of worship."  The Zoning Board did not identify how the mikvah should be classified or why that classification would not otherwise be a permissible use.

20.     The Town and Village's discriminatory actions speak louder than words, yet in private settings, the Town and Village leaders have left no ambiguity about their intentions.  For example, the newly elected Mamakating Supervisor, Defendant William Herrmann, told a former employee that he was elected to "stop the Jewish infiltration," and that the purpose of transferring Bloomingburg land to Mamakating would be to keep "the Jews" out of the area.  Gerardi similarly has declared that he was elected to keep "those people" out and to condemn Jewish-owned buildings.  A Village trustee, defendant James "Jimmy" Johnson, has repeatedly referred to Hasidic women in derogatory terms and has voiced his objection to their pushing baby carriages on streets in the Village.

21.     Defendants know that if Plaintiffs are forced to contest each and every unlawful denial of a zoning issue or discriminatory enforcement of a building regulation in the state courts, development will continue to be delayed, and the costs to Plaintiffs will continue to increase exponentially.  Because in the United States of America, it is simply unlawful for local

government officials to engage in such a pervasive campaign of religious discrimination, Plaintiffs have commenced this action pursuant to the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, among other provisions of law. Plaintiffs respectfully ask this Court to compel Defendants to end this unlawful campaign, to clear the road blocks imposed upon lawful development, and to award Plaintiffs damages and attorneys' fees, as appropriate under the law.

## **PARTIES**

22.     Plaintiff Bloomingburg Jewish Education Center is a not-for-profit religious trust that will be the tenant of Learning Tree and the operator of a private religious school located at 132 Main Street in Bloomingburg.

23.     Plaintiff Sullivan Farms is a New York corporation and is the record owner of the properties on which the Chestnut Ridge conservation subdivision is being built.

24.     Plaintiff Learning Tree is a New York limited liability company and is the record owner of the property on which the private religious school will be operated.

25.     Plaintiff Malka Rosenbaum is a resident of Bloomingburg, New York.  She has seven children whom she currently home schools because the Bloomingburg Jewish Education Center has been prevented from opening.  Mrs. Rosenbaum also has been subject to other acts of discrimination in Bloomingburg.

26.     Plaintiff Sheindel Stein is a resident of Bloomingburg, New York.  She intends to send her children to Bloomingburg Jewish Education Center after it opens.

27.     Plaintiff Commercial Corner is a New York limited liability company and is the record owner of a retail building located at 79 Main Street in the Village of Bloomingburg.

28.     Plaintiff Winterton Properties is a New York limited liability company and is the record owner of the property on which the mikvah is being built.

29.     Defendant Village of Bloomingburg is a political subdivision of the State of New York, with principal offices located in Bloomingburg, Sullivan County, New York.

30.     Defendant Village Board of Trustees of the Village of Bloomingburg, New York is the legislative body of the Village of Bloomingburg, and adopted Village Local Law Nos. 4, 5, and 6 of 2014, which are subject to challenge in this action.

31.     Defendant Frank Gerardi is the Mayor of the Village of Bloomingburg, New York.

32.     Defendant Eileen Rogers is the Village Clerk of the Village of Bloomingburg, New York.

33.     Defendant Planning Board of the Village of Bloomingburg, New York is a village planning board duly organized under the laws of the State of New York.  The Planning Board issued the denial of Learning Tree's site plan application for development of the private religious school and was purportedly dissolved pursuant to Village Local Law No. 4 of 2014, which is subject to challenge in this action.

34.     Defendant Andrew Finnema was a member of the Planning Board at the time that Learning Tree's application for site plan approval was denied.

35.     Defendant Ann Heanelt was a member of the Planning Board at the time that Learning Tree's application for site plan approval was denied.

36.     Defendant Joseph B. Roe was a member of the Planning Board at the time that Learning Tree's application for site plan approval was denied.

37.     Defendant Town of Mamakating, New York is a political subdivision of the State of New York, with principal offices located in Wurtsboro, Sullivan County, New York.

38.     Defendant Town Board of the Town of Mamakating, New York is the legislative body of the Town of Mamakating, and adopted a local law to accept the transfer of authority from the Planning Board of the Village of Bloomingburg in accordance with Village Local Law No. 4 of 2014, which is subject to challenge in this action.

39.     Defendant Town Zoning Board of Appeals of the Town of Mamakating, New York is a town zoning board of appeals duly organized under the laws of the State of New York. The Town Zoning Board of Appeals exercises authority over the challenged determination by the Mamakating building inspector that a mikvah is a permitted use in the Village Central district.

40.     Defendant Planning Board of the Town of Mamakating, New York is a town planning board duly organized under the laws of the State of New York.  The Town Planning Board purports to exercise the authority of the Village Planning Board pursuant to Village Local Law No. 4 of 2014, which is subject to challenge in this action.

41.     Defendant Katherine Roemer is a Trustee of the Village of Bloomingburg.

42.     Defendant James Johnson is a Trustee of the Village of Bloomingburg.

43.     Defendant William Herrmann is the Supervisor for the Town of Mamakating.

## JURISDICTION AND VENUE

44.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and § 1367.

45.     Venue in the Southern District of New York is based upon 28 U.S.C. § 1391(b). All Defendants reside in and the events or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

46.    This action arises out of the efforts by government actors in Bloomingburg and Mamakating to oppose the development of projects that they believe will be used by, or inhabited by, Hasidic Jews.  The projects at issue here include the Chestnut Ridge housing development, a private religious school, and a mikvah intended to serve current and future residents of Bloomingburg.  Plaintiffs and related-entities also own numerous other properties in the Village and Town.  Those properties include multi-family homes, single-family homes, and local businesses.

## I.    THE VILLAGES OF CHESTNUT RIDGE

47.    The Chestnut Ridge project is an approved Planned Unit Development ("PUD") for a conservation subdivision, including 396 townhomes, a community clubhouse, and recreational amenities.  The site is located only one-half mile from the Village center.  The townhome project was designed as a walkable community with the site development focused on upland areas to preserve large contiguous open space areas and the wetlands within those areas.

48.    Chestnut Ridge will be open to persons of any religious faith, and while the sales office has officially opened, Sullivan Farms has not yet sold any homes to any person or community of persons, and the Village has not yet issued any certificates of occupancy.  Many local residents and government officials believe that the project will be inhabited principally by Hasidic Jews.  *See, e.g.*, *Groups Rally To Fight Private School in Bloomingburg*, Times Herald Record (Oct. 7, 2013), *available at* http://www.recordonline.com/apps/pbcs.dll/article?AID=/20131007/NEWS/310070332/1/NEWS 38.

49.    In December 2006, the Village of Bloomingburg annexed from the Town of Mamakating the 198-acre property on which the Villages of Chestnut Ridge is located.

Following a public hearing on November 2, 2006, Bloomingburg and Mamakating, as co-lead agencies, accepted the petition to annex the Chestnut Ridge project site and certain other real property from the Town into the Village.  They also issued a negative declaration of significance on the proposed annexation pursuant to the New York State Environmental Quality Review Act ("SEQRA"), thus completing the SEQRA process.

50.     At the time of the annexation, the Village of Bloomingburg faced a financial crisis, because it was required to renovate and upgrade its existing wastewater treatment plant, but it lacked the resources to do so.  Sullivan Farms proposed a project to the Village that would include having the developer invest $5 million to build a new wastewater treatment facility that would serve the Village and Chestnut Ridge.  The Village accordingly found that the proposed annexation was in the public interest because "(a) lands upon which the current sewer treatment plant owned and operated by the Village will be annexed from the Town to the Village, and (b) the remaining annexed lands will be able to access sewer and water services upon their improvement and improvements to the sewer treatment plant operated by the Village."

51.     The Town also determined that the annexation was in the public interest and thus adopted an order of annexation.  Upon approval of the annexation, the Village placed the annexed properties in the R-1 zoning district with a PUD rider in December 2006 for the Chestnut Ridge planned unit development.  Sullivan Farms then began a multi-year process to obtain the necessary Village approvals for construction.

### A.     Bloomingburg Approves the Villages of Chestnut Ridge

52.     In 2008, Bloomingburg adopted a local law confirming that the annexed lands had been placed in the R-1 zoning district with a PUD rider upon their annexation.  Sullivan Farms then applied for site plan and subdivision approval for residences.  The Village Board of Trustees assumed lead agency status for the environmental review of the project, pursuant to SEQRA.

14

The Village Board required the preparation of an environmental impact statement—the highest level of environmental review in New York—and then issued a SEQRA statement of findings. The open and public environmental review of the project was completed in July 2009.

53.    Prior to the SEQRA review, the plans for Chestnut Ridge had included a golf course.  Following consultations with state environmental regulators, Sullivan Farms eliminated the golf course from the planned development in order to leave existing wetlands and their buffer undisturbed.  Since at least 2008, the public plans for Chestnut Ridge, which were and remain publicly available on the Internet, have identified 396 townhouses in the community.  Yet despite the public nature of the development and many public meetings at which the project was reviewed, there was no public outcry until 2012, when rumors began to circulate the project would appeal to Hasidic Jews.  Prior to that time, the large new development enjoyed the support and approval of the Village and faced no material opposition from the public.

54.    With what one Village Trustee described as "98 percent" public support, the Village approved a development plan for Chestnut Ridge, a new subdivision to be built on land owned by Plaintiff Sullivan Farms.  On May 6, 2010, the Village and Sullivan Farms entered into a development agreement in which Sullivan Farms agreed to construct for Bloomingburg a new, badly needed wastewater treatment plant at a cost of over $5 million.  Construction of the wastewater treatment plant has since been completed, and the plant was transferred to the Village on June 24, 2014.   The plant is currently operational and providing services to the entire Village.

55.    The Village Planning Board granted Sullivan Farms final conditional subdivision approval on June 24, 2010.  Following the posting of a bond related to the wastewater treatment plant, the Chairman of the Planning Board signed the final subdivision plat and filed it with the Sullivan County Clerk and Village Clerk on or about June 20, 2011.

56.     In August 2011, Sullivan Farms also obtained approvals from the New York State Department of Health for the subdivision plans for the project, including the related water supply infrastructure.  Sullivan Farms also obtained building permits from the Village and constructed three model townhouses to show to prospective purchasers.  These model townhouses were completed in the summer of 2012.

**B.      The "Rural Community Coalition" Organizes To**
**Prevent Hasidic Persons From Living in Bloomingburg**

57.     By Spring of 2012, rumors had begun to circulate that Chestnut Ridge would be designed to appeal to Hasidic Jews.  At a public meeting of the Village trustees on May 17, 2012, Village officials and residents openly discussed the possibility that Chestnut Ridge would become a Hasidic community and what could be done to stop it.   One resident warned that if the project went forward, then Hasidic Jews will be "walking the streets" on Friday nights and Saturdays.

58.     At this public meeting, community members discussed rumors that the Chestnut Ridge units were designed to have two kitchens, a feature they viewed as a clue the homes were intended for Hasidic families, who typically keep meat and dairy separate.  During a break at the meeting, Russell Wood, a Village employee who at the time was also chairman of the Village Planning Board and a Town board member, pulled out the Chestnut Ridge building plans so the group could investigate the rumors.  "The day I find out they [Hasidic Jews] are moving in, I'm going to hightail it out of there," one resident said.  At the meeting, Clifford Teich, a former Village Trustee who became a vocal opponent of Chestnut Ridge, turned to John Kelly, the Village attorney, and asked if there was a way to ensure there will be no Hasidic residents moving into Chestnut Ridge.  Recognizing that the question was demonstrably illegal, Kelly responded, "[i]t's insane that you just asked me that question."  Jane Anderson, *Questioning A*

*Development's Religion*, SHAWANGUNK JOURNAL, May 24, 2012. *available at* http://www.shawangunkjournal.com/2012/05/24/news/1205243.html

59.     Within months, the current Town supervisor, Bill Herrmann, and a several other residents from the surrounding area, formed what they called the "Rural Community Coalition" (RCC) and brought suit to try to stop Chestnut Ridge.   The group's agenda was no secret. According to Holly Roche, the president of the "Coalition," Bloomingburg residents had known for six years about the planned Chestnut Ridge development, but they did not oppose it because "[a]t that point in time, it was not known that the developer planned a Hasidic community."

60.     Defendant Herrmann said recently that Chestnut Ridge "was a wonderful project…and it just all turned bad."   The reason for the sudden about-face is not a mystery:   area residents came to believe Chestnut Ridge would be populated by Hasidic Jews.   From that point forward, the RCC and allied officials of Bloomingburg and Mamakating embarked on a campaign to undo prior approvals for Chestnut Ridge, and to thwart related projects such a private religious school that would serve the Hasidic community.

61.     Ms. Roche has claimed that she initially believed that Chestnut Ridge would consist of 125 "luxury townhouses" and a golf course, even though Bloomingburg had never approved such a plan, and in fact, the plans for 396 townhouse units for the site were publicly known and on file for years.   It is apparent that the Rural Community Coalition's real objection is to the presence of Hasidic Jews in the Bloomingburg community.

62.     On October 16, 2012, the Rural Community Coalition commenced an action captioned *Rural Community Coalition v. Village of Bloomingburg*, No. 2012-2888, in the New York Supreme Court for Sullivan County, to invalidate the final subdivision approval granted to

Sullivan Farms and to delay the development of Chestnut Ridge.  In April 2013, the court dismissed that action as untimely and barred by the doctrine of laches.

63.     In June 2013, Sullivan Farms applied for building permits for the first phase of the residential development of the Chestnut Ridge project, and between July and November 2013, the Village granted Sullivan Farms 126 building permits.  Sullivan Farms has since begun construction of 84 of those residential townhouse units, which were in various stages of construction by January 2014.  Currently, 51 units have been completed.   Sullivan Farms has also obtained the approval of its offering plan from the New York State Attorney General's Office.

64.     Plaintiffs have applied to the Village for certificates of occupancy for 51 of the completed homes, but to date, the Village Defendants have failed to respond to the requests, creating yet another roadblock and unnecessary delay to Plaintiffs' efforts to move the project forward.  As a practical matter, Plaintiffs cannot close on the sales of any units without the certificates of occupancy which are necessary for owners to occupy the properties.

65.     Since the advent of the Rural Community Coalition, the Chestnut Ridge project has faced vehement opposition from many local residents and, over the past year, from Village and Town officials as well.   The opposition is not based not on any legitimate fiscal, environmental, or geographic concern, but solely upon the religious practices of the people whom the opponents fear will join their communities.

66.     Public comments have demonstrated that opposition to Chestnut Ridge is premised on the religious beliefs of the Hasidic community.  For example, on September 17, 2013, one opponent commented:

> I live in Bloomingburg, on the very street that this Hasidic Village is being built.  I have been fighting this illegal development for a year. The

developer is shifty and completely untrustworthy . . . It is DISGUSTING. They should be put away for what they are doing.  The hate that people have for them has nothing to do with being anti-Semitic, it has to do with being anti-Hasidic, because these people are in a cult where they feel they are superior to others and don't have to follow the rules.

67.     As a small sample, other comments on news articles regarding the development of the Chestnut Ridge project have stated:

- "This is very bad news for the 420 people that currently inhabit this small town. Their lives will [] deteriorate with this new batch of scum moving in"

- "Great; more parasites in upstate NY"

- "Notice to the current residents of Bloomingburg . . . Enforce every by-law for cleanliness, grass cutting, etc. etc. as they will turn your town into a garbage heap"

- "Just what Bloomingburg doesn't need—Satmars"

- "These people are like alien life forms"

- "The resid[ents] of Bloomingburg will, unfortunately, yearn for a Final Solution"

- "The only solution is a preemptive tactical nuke"

68.     In addition, town residents placed signs adjacent to the developments expressing the view that the Jewish development was procured by "greed and politics" going "all the way to Albany" that will signal the death of the community.  These signs were permitted to hang in place in the Village for months.

69.     In order to demonstrate that Jewish persons are not welcome in Bloomingburg, residents have erected a 20-foot high wooden cross adjacent to Chestnut Ridge.  A picture of the cross, with the project in the background, is seen below:



70.     Unfortunately, this kind of anti-Semitic sentiment is not new to Bloomingburg and the surrounding region.  On March 28, 2012, Jewish parents brought a lawsuit against the Pine Bush School District, which includes Bloomingburg, on the ground that school administrators had failed to stop rampant discrimination against Jewish public school students. *See* Complaint (Dkt. No. 25), *Eccleston v. Pine Bush Central School Dist.*, No. 7:12-cv-2303-KMK (S.D.N.Y. Mar. 28, 2012).  Plaintiffs allege that the students had suffered both physical and psychological abuse in the form of relentless anti-Semitic discrimination, harassment, and bullying by other students, without any action by school officials to protect them.  That case is currently pending.  Significantly, the Pine Bush School District sought to interject itself in the review process for the private Jewish school to be operated by Plaintiff Bloomingburg Jewish Education Center, claiming that it was an "involved" agency for purposes of the New York State Environmental Quality Review Act ("SEQRA").  The Pine Bush School District, however, has no approval authority over the school's application to the Planning Board.

71.     The U.S. Attorney for the Southern District of New York has investigated allegations of anti-Semitism at the Pine Bush Schools.  *See* Benjamin Weiser, *U.S. Investigates Anti-Semitism Claims at Pine Bush Schools*, N.Y. TIMES, Nov. 13, 2013, *available at* http://www.nytimes.com/2013/11/14/nyregion/us-investigates-anti-semitism-claims-at-pine-bush-schools.html?_r=0.   This Court (Karas J.) also recently denied the defendants' motions for summary judgment in that case, finding that there were sufficient questions of fact to proceed to trial on the majority of the plaintiffs' claims.

### C.     RCC Allies Take Control of the Village and the Town and Discriminate Against Plaintiffs and the Hasidic Community

72.     The Rural Community Coalition has succeeded in electing local officials in Bloomingburg and Mamakating who support their goal of preventing additional Hasidic people from moving into the area.   Defendant William Herrmann, one of the RCC's founders, was elected as the Mamakating Town Supervisor, and took office in January 2014.   One of Herrmann's campaign slogans was to "stop 400 from turning into 4000," a reference to the current population of Bloomingburg (around 400) and a derogatory and hyperbolic reference to the size of the Hasidic families he expects to move into the 396 units of Chestnut Ridge.   Since coming to office, Herrmann has told one Town employee that the "people elected him to stop the Jewish infiltration," that this was "the only reason he took office," and that the Town would seek to take back the Chestnut Ridge property in order to help "keep the Jews out of the area."

73.     The Village also elected a new mayor, Defendant Gerardi, and two new trustees in March 2014.   Together, Gerardi, along with Defendants Johnson and Roemer, make up the Village Board of Trustees.   Those individuals ran on a platform to stop additional Hasidic Jewish individuals from moving into the Village.

74.     On January 24, 2014, the RCC commenced a second action against the Chestnut Ridge project in the New York Supreme Court for Sullivan County, *Rural Community Coalition, Inc. et al. v. Village of Bloomingburg et al.*, No. 2014-212.   That action seeks to enjoin construction of the project on the new legal theory that Bloomingburg's annexation of the project site—over seven years ago—was invalid under state law.

75.     At Mr. Herrmann's direction, Mamakating appeared in support of the RCC's application for an injunction against the Chestnut Ridge project, even though the Town was a co-petitioner in the annexation petition, had expressly approved the annexation in the 2006, and was named as a ***defendant*** in the litigation.   The Town even served cross claims attacking the approvals that had been granted for Chestnut Ridge, and it separately moved, on multiple occasions, for a preliminary injunction to stop construction and the issuance of any building permits or certificates of occupancy.   Bloomingburg was also a co-petitioner in the annexation petition, had expressly approved the annexation in 2006, was named as a defendant in the litigation, and initially opposed the injunction.     With the Gerardi administration in place, the Village withdrew its prior opposition to the injunction and instead supported the issuance of an injunction prohibiting construction of the Chestnut Ridge project.   The Village's filing also breached the development agreement with Sullivan Farms pursuant to which the developer built a $5 million sewage plant and the Village pledged in return to cooperate in facilitating the construction of the project.

76.     Bloomingburg has annexed other land and properties from Mamakating over the past 14 years, including for a senior housing project in 2000.   The land for the senior housing project employed the same annexation process that was used for the 2006 Chestnut Ridge annexation.   The Town's and Village's decisions to challenge the 2006 annexation of the

Chestnut Ridge project site and adjoining lands, but not the 2000 annexation, plainly demonstrates that the litigation against the Chestnut Ridge project is a part of the Town's and Village's concerted campaign of discrimination against Plaintiffs based on their belief that "the developer planned a Hasidic community."

77.    In February 2014, the New York State Supreme Court issued a preliminary injunction enjoining nearly all construction on the Chestnut Ridge project site.  The Appellate Division, Third Department, however, vacated the injunction on June 5, 2014.  The Third Department reasoned that the plaintiffs could not demonstrate a likelihood of success on the merits because the suit was likely untimely, since the annexation was a public action that had occurred nearly eight years before.  The state court litigation remains pending.

### D.    Bloomingburg Seeks To Block Additional Development Through a Village-Wide Building Moratorium

78.    One week after the Appellate Division vacated the preliminary injunction blocking development at Chestnut Ridge, on June 12, 2014, at a special meeting, Bloomingburg adopted a law that sought to achieve the same effect.  Local Law No. 6 of 2014 establishes a Village-wide moratorium suspending the receipt, consideration, or issuance of *all* residential and commercial building permits in the Village, including at the fully approved Chestnut Ridge and the private religious school.[2]  The moratorium lasts 90 days by its terms, with the possibility of multiple extensions of up to 360 days.

79.    Village Local Law No. 6 was promulgated pursuant to a message of necessity from Mayor Gerardi, which states:

---

[2]    The Village originally relied upon the moratorium to avoid taking any action at all on permits.  After Sullivan Farms moved for a preliminary injunction, the position of the Village Defendants shifted so as to permit building on foundations and the renewal of expired permits at Chestnut Ridge.

> The facts necessitating an immediate vote on the proposed local law are as follows: The Village has received a substantial number of complaints about the reported and documented failure of some residential and commercial owners and contractors to comply with the dictates of the Building Code of New York State, the Multiple Residence Law of New York State, the Fire Code of New York State, Industrial Code Rule 56-Asbestos, NYCRR Title X, Part 67-Lead Paint, and other applicable Federal and State law, which non-compliance poses an immediate and substantial risk to the health, safety, and welfare of those living and working in the Village.

80.     The moratorium has already been extended once, on September 10, 2014 for 90 days.  During a public hearing discussing the extension, the Village Board admitted that virtually no progress had been made regarding the supposed review of the zoning code that purportedly justified initial passage of the moratorium.  Similarly, the Village's review of the "multitude" of complaints related to health and safety issues was, "for a variety of reasons," not yet complete.

81.     The Village Defendants do not claim to have investigated any complaints since issuing the moratorium.  Indeed, in opposing litigation over the moratorium, the Village Defendants relied primarily upon complaints submitted *after* the moratorium was enacted.  None of the complaints concerned new construction.

82.     In September 2014, almost three months after the moratorium was enacted, the Village Defendants, through their new building inspector (their fourth since Mayor Gerardi took office), sent letters to Village property owners asking to conduct fire inspections of more than 60 buildings.  But fire inspections of *existing construction* cannot justify a moratorium on *new construction*, nor can correspondence from *September* justify a measure taken in *June*.  Lacking any legitimate need for the moratorium, Defendants evidently are conducting fire inspections on existing properties as a *post hoc* rationalization and a pretext for further delay.

83.     The Village also has contended that Local Law No. 6 sought to ensure that its zoning laws conform to the comprehensive plan of the Town and the handling of hazardous

24

waste.  Yet these reasons are clearly pretextual.  First, the Town's comprehensive plan does not apply to the Village.  Second, as noted, Local Law No. 6 was enacted just one week after the New York State Appellate Division vacated the preliminary injunction that had enjoined construction of the Chestnut Ridge project.  There can be no serious doubt but that the moratorium was issued to replace the injunction with yet another roadblock to development.

84.     Third, the Village does not have any regulatory authority over the handling of hazardous waste, including asbestos.  Asbestos control is under the exclusive purview of the New York State Department of Labor.  Moreover, Local Law No. 6 was purportedly enacted in response to "the investigation of a substantial number of complaints" allegedly regarding compliance with the Building Code that related *only* to Jewish-owned properties and included complaints that individuals were entering residences with a Torah and that Jewish-owned buildings were being used as a shul or a mikvah.  These complaints did not concern hazardous materials.

85.     Fourth, the Chestnut Ridge project does not concern any hazardous waste issues. Chestnut Ridge consists entirely of new construction with new materials that were approved and are regularly inspected by the Village Building Inspector.  In fact, the Village's former Building Inspector, Alfred Fusco III, promptly responded to a specific complaint made in May 2014 requesting an asbestos inspection by saying that "I checked.  No asbestos possible on structure."

86.     Defendants' motivation is further demonstrated by the fact that the Village has used the law to avoid acting upon permit applications submitted before its enactment.  Notably, Plaintiffs submitted approximately 80 additional building permit applications, including for a clubhouse and fully site-plan approved shopping center, prior to the issuance of Local Law No. 6.  These applications were ignored, and to this day, no action has been taken.

87.     The moratorium even precludes Hasidic Jewish individuals from moving into existing housing in the Village by preventing the construction of Kosher kitchens that require separate sinks for dairy and meat items.  The moratorium is effectively keeping new Hasidic Jewish residents out of the Village by refusing to issue any building permits.

88.     There is simply no reasonable doubt but that Local Law No. 6 of 2014 was enacted to impair Plaintiffs' constitutionally vested rights, to exclude Hasidic Jewish individuals from the Village, and to block uses of land necessary for the practice of Hasidic Judaism.

## II.     THE PRIVATE RELIGIOUS SCHOOL – BLOOMINGBURG JEWISH EDUCATION CENTER

89.     Defendants' campaign of religious discrimination has also extended to their efforts to thwart the development of a private religious school on 132 Main Street.  The Bloomingburg Jewish Education Center, a not-for-profit religious corporation, intends to operate the private religious school for the instruction of Hasidic Jewish children.

90.     As a Jewish private religious school, the Bloomingburg Jewish Education Center will provide its students with a dual curriculum in Judaic and general studies.  Judaic principles and concepts are reinforced in both general study and religious study classes.  At the kindergarten and nursery school levels, no distinction is drawn between religious and general studies.  In the first through eighth grades, approximately one-half of the school day is spent on general studies and the other half on Judaic studies, including study of the Talmud and Jewish history.

91.     Principles of Orthodox Judaism provide that it is the parents' duty to teach the Torah to their children and the school will be operated in accordance with this, and other, Judaic principles.  Thus, the private religious school constitutes a land use protected by RLUIPA.

92.    Learning Tree's property currently has a new building on the property that was constructed in the spring of April 2013 for use as an antique car garage.  Learning Tree also owns an 11.43-acre parcel of vacant real property that is adjacent to the proposed religious school site and that would be available for use in connection with the school.

### A.    Bowing to Intimidation and Discrimination, the Village Planning Board Denies Routine Approvals To Prevent the Religious School from Opening

93.    On July 10, 2013, Learning Tree submitted an application to the Village Planning Board seeking approval to amend the site plan for the proposed religious school site to convert the existing building into a private religious school.  The site plan concerns the relationship of a building to the surrounding area (not the interior construction in the building).  Learning Tree did not propose any changes to the size, location, or footprint of the existing building.  The only site plan changes required to accommodate Learning Tree's proposed use would be to widen the existing accessway to ensure an appropriate turning radius for school buses and related improvements to ensure adequate parking.

94.    In connection with its site plan application, Learning Tree submitted a full environmental assessment form pursuant to SEQRA, drawings depicting Learning Tree's proposed site plan, and letters to the Village Planning Board's engineering consultant providing additional information concerning the project.  Because Learning Tree's proposed site plan also contemplated use of Learning Tree's adjacent parcel for reserve parking, should it be needed at some point in the future, Learning Tree also began the process to consolidate the adjacent parcel with the proposed school site.  By submitting these various documents, Plaintiffs fully complied with the necessary requirements for site plan approval pursuant to Village Code Section 11.

95.    After the Sullivan County Real Property Tax Department indicated that the Planning Board must approve the requested changes, Learning Tree submitted an application to

the Planning Board seeking approval for the lot consolidation for use in connection with the proposed private religious school.

96.     Learning Tree's application was met with vehement local opposition.  During the Village Planning Board proceedings, hundreds of area residents voiced their opposition to the religious school.    The Village Planning Board was set to consider Learning Tree's application for site plan approval at its August 29, 2013 meeting, which was held at Village Hall.  Before the meeting could begin, however, a crowd of over 150 opponents overwhelmed Village Hall, forcing the meeting to be cancelled.    A video of this meeting is available at http://www.youtube.com/watch?v=cIoBHPGl_uU.

97.     Intent on preventing the Village Planning Board from acting on Learning Tree's application, over 350 opponents of the proposed private religious school again attempted to overrun the Village Planning Board's meeting on September 26, 2013, shouting and chanting "Shut it down," "You can't hold this meeting," "We're not going to let you hold this meeting," "The meeting will not proceed," "Postpone the meeting," and "This meeting is over" at the Planning Board members.    A video of this meeting is available at http://www.youtube.com/watch?v=wZyEQ7rYoIg.

98.     The crowd was so raucous and unruly that the State Police had to be called to ensure the safety of Learning Tree's representative and the Village Planning Board members. The former Mamakating Supervisor, who attended the September 26 meeting, called the crowd "an angry mob scene."

99.     In order to appease the crowd at the September 26 meeting, Defendant Anne Heanelt moved to deny Learning Tree's application without affording Learning Tree's

representative any opportunity to address the Board regarding the project or conducting the requisite SEQRA review.

100.    Then-Village Attorney John Kelly advised the Village Planning Board that without a presentation from Learning Tree's representative regarding the project or performing the Board's obligations under SEQRA, any determination would likely be invalid and annulled. Upon Mr. Kelly's advice, Ms. Heanelt's motion failed.

101.    Over the opponents' shouts and taunts, the Village Planning Board managed to vote to appoint itself as lead agency for the SEQRA review of Learning Tree's application at the meeting.  The Village Planning Board was otherwise forced to close the September 26 meeting because of the opponents' raucous conduct.

102.    Learning Tree's application for site plan approval next came up for consideration at the December 12, 2013 meeting of the Planning Board.  The meeting was moved to a nearby firehouse because over 350 opponents of the private religions school flooded the meeting.  A video of this meeting is available at http://www.youtube.com/watch?v=wZyEQ7rYoIg.

103.    Notably, the only issues before the Planning Board at that meeting in connection with Learning Tree's application were to (1) deem the site plan application complete, (2) issue a negative declaration under the State Environmental Quality Review Act, and (3) schedule a public hearing (even though a public hearing is not required).

104.    At that meeting, the discussion of Learning Tree's site plan for the school lasted less than eight minutes, and the Planning Board engaged in no discussion of the considerations permitted under New York Village Law § 7-725-a and Article XI of the Village's zoning code with respect to the school.

105.    Instead, Defendant Andrew Finnema simply asked Learning Tree's representative: "Why do we need another school in Bloomingburg?"  Whether a new school is needed in the Village is not a permissible consideration of the Village Planning Board's site plan review under New York Village Law § 7-725-a and the Village's zoning code.  It is likewise unlawful under RLUIPA for the Planning Board to deny an application for a religious school on the ground that a secular school was available.

106.    Defendant Finnema similarly concluded that the school's application should be denied because he did not believe that the Village needed a new school, stating: "If this is a community [Chestnut Ridge] that's been incorporated into this Village that's -- anybody here can buy a unit, then they [the children] can go to Pine Bush School District.  I don't see the need for a school."   Defendant Heanelt likewise did not entertain any discussion of Learning Tree's proposal, stating: "I'm just voting no on this."  With each statement by Defendants Finnema and Heanelt, the crowd erupted in applause.

107.    Without addressing any of the permissible statutory considerations for the site plan review, the Village Planning Board arbitrarily denied Learning Tree's application on a three-to-one vote.  Although the Village Code requires the Planning Board to notify Learning Tree in writing of the reason for its disapproval, the Planning Board never provided any explanation as to why its application was summarily rejected.  Thus, the Planning Board's vote showed that it had no intention of permitting the private religious school in the Village, regardless of the law.

108.    Learning Tree's application for the proposed lot consolidation was also perfunctorily denied at the December 12, 2013 Village Planning Board meeting.  The opponents thus accomplished what they set out to do: impose a discriminatory road block in the way of the

Hasidic Jewish population in the hope that Hasidic citizens will be deterred from moving into Bloomingburg or that those already there will be obliged to move away.

**B.      Confronted with Court Imposed Obligations,
           the Village Board Voted To Dissolve the Planning Board**

109.     Learning Tree commenced a N.Y. C.P.L.R. Article 78 proceeding in New York State Supreme Court, Sullivan County to seek redress from the Village Planning Board's illegal actions.  In March 2014, the New York Supreme Court advised the parties that it intended to void the Village Planning Board's illegal action and directed the Village Planning Board to reconsider the applications.  Notwithstanding that direction, the Village Planning Board failed to convene a meeting to reconsider the applications for the private religious school.

110.     On May 12, 2014, the New York Supreme Court annulled the denial of site plan approval and ordered the Village Planning Board to reconsider Learning Tree's applications based solely on the factors set forth in both the New York Village Law and Village's zoning law within 30 days of the court's order.  The court extended that period to June 30, 2014.

111.     Rather than comply with the court's order, the Village Board of Trustees voted to dissolve the Village Planning Board and enacted a local law passing off its planning board functions to the Mamakating Planning Board.  On June 17, 2014, the Town subsequently entered into an inter-municipal agreement to facilitate this subterfuge.  By dissolving the Village Planning Board, the Village abdicated its obligation to reconsider and determine the application for site plan approval of the private religious school, which had already gone through almost a year of public debate, in furtherance of the scheme to exclude the school and any other uses of land that would serve the needs of Hasidic Jewish residents in the Village.

112.     Reflecting the arbitrary nature of these activities, the dissolution of the Village Planning Board and the Zoning Board of Appeals was invalid under state and local law.  N.Y.

Village Law Sections 7-718(9) and 7-712(9) allow for removal of planning board members only for cause, after a public hearing.  No such hearing took place here and New York courts have held that the abolition of a planning board and replacement with a new board constitutes an unlawful de facto removal without cause.

113.   Village Law Sections 7-741(4)(a) and (b) do not provide for the wholesale transfer of planning board and zoning board of appeal authority from one municipality to another.  Rather, the Village Law authorizes "consolidated" planning and zoning boards "which may replace individual (boards)."  The Village has, therefore, acted in direct violation of the New York Village Law in a plain attempt to circumvent the orders of the New York Supreme Court.  The Village transferred authority from the Village boards to the Town boards, with absolutely no consideration given to how the interests of the Village (and its distinct zoning and subdivision laws) would be addressed.

114.   The Village could not dissolve the boards on its own.  Rather, the Village was required to reach an agreement with the Town to assume Planning Board and Zoning Board jurisdiction over matters within the Village.  The Village found a willing ally in the Town, led by Supervisor Herrmann, which shared the Village's interest in further delay and obstruction of Plaintiffs' projects to prevent what Herrmann had described as the "Jewish infiltration" to the area.  On June 17, 2014, Herrmann and Gerardi signed inter-municipal agreements to transfer these responsibilities to Mamakating.

115.   After receiving jurisdiction over Learning Tree's site plan application, the Mamakating Planning Board refused to take action by the court-ordered deadline that bound the Village Planning Board, which passed five months ago.  Instead, in a transparent effort at delay, the Town Planning Board has claimed that it must conduct a *de novo* review of the applications,

including further review of the site plan application—made over *a year ago* on July 10, 2013 essentially for the reuse of an existing building.

116.   The Mamakating Planning Board has requested that Learning Tree re-submit materials previously provided to the Village Planning Board; it has invited people who have no official roles in the Town to comment on Learning Tree's application; it has enlisted multiple building consultants and engineers to re-review the projects with respect to their pending application; and it has charged their various fees to Learning Tree, over and over again as it repeatedly switches engineers and consultants.  These changes in consultants and engineers were unnecessary and serve as a pretext for ongoing delay.  Each consultant or engineer has started their review anew without relying upon *any* of the research or investigation done previously.

117.   The Mamakating Planning Board fired its most recent engineer and retained a new one, even though the school had already been reviewed by at least five different engineers and building inspectors by now.   The new Code Enforcement Officer has rendered a determination that the existing, approved building is not oriented appropriately to Main Street, notwithstanding the fact that the existing building, the footprint, and its orientation will not change when it is converted to a school.  Indeed, the building previously received from the Village Planning Board and Village Building Inspector site plan approval, a building permit, and a certificate of occupancy under the Village's Zoning Code.  The Town's sudden concern with the orientation of Learning Tree's building is plainly a pretext for further delay, obstruction, and ultimate denial.

118.   In addition to endless demands, the Town continues to delay the process with irrelevant inquiries.  For example, the Town's planner has asked if the Planning Board has the authority to ensure that the school would *never* receive any State-mandated services.  The

Planning Board, however, has no authority to condition its approval pursuant either to SEQRA or its site plan review authority on whether the school would *ever* receive State funding, and so even this suggestion by the Town planner is yet another delay tactic.

119.   The Town Planning Board also has raised questions about the school's compliance with the Building Code with respect to fire protection.  Upon the receipt of site plan approval, Plaintiffs have submitted plans demonstrating that the building can be renovated so as to comply with all applicable Building Code requirements, including fire safety.  However, the Town Planning Board does not have any jurisdiction over fire protection within the building. The Planning Board's authority concerns only the placement of fire hydrants and the adequacy of road access by fire equipment.  The Planning Board does not have authority over fire protection in the building.  Rather, the sole question is of the appropriateness of the site plan for the development.

120.   Learning Tree's site plan application is fully compliant with all safety requirements showing the requisite fire truck access on the site plan.  Indeed, the Bloomingburg Fire District has submitted multiple letters to the Town Planning Board confirming that in its view, the site plan meets all fire safety requirements.  Further underscoring the insincerity of the Town's sudden interest in fire safety, it bears noting that the Fire District's Firehouse is immediately adjacent to the proposed school.

121.   In addition, given the building moratorium imposed by Local Law No. 6, the Village has further stalled the completion of the religious school until that moratorium is lifted or declared invalid, even if site plan approval were to be granted in the interim.

122.   As result of these unlawful actions, Learning Tree has been unable to obtain routine site approvals for over a year, and Bloomingburg Jewish Education Center has not been

able to open for the 2014-2015 school year.  The net effect of these actions is that the Village and the Town are effectively preventing the construction and operation of a private religious school within the Village limits, thereby substantially burdening the religious exercise of the students who would attend the school.

123.    These actions have caused injury to Bloomingburg Jewish Education Center and Learning Tree.  They have also caused specific injuries to some of the individual plaintiffs in this action.  For example, Plaintiff Sheindel Stein currently must provide transportation for her children to Kiryas Joel schools, which are more than twenty-five minutes away.  Bloomingburg Jewish Education Center would be within walking distance from her home.

124.    Plaintiff Malka Rosenbaum has seven children, ages three months to 14 years. She intends to send her school-age children to Bloomingburg Jewish Education Center, but is currently obliged to home school them because the religious school is not open.  This prevents Mrs. Rosenbaum from obtaining a job.  Additionally, Mrs. Rosenbaum is not able to teach her sons all of the subjects required by their religion. Her husband, Rabbi Chaim Rosenbaum, must spend additional time teaching his children when he returns from work in the evenings.

C.    **The Village Fabricates Additional Permitting Requirements for Property Being Used for Religious Purposes**

125.    The Village also has fabricated a permitting requirement for drilling a well as a way of creating an additional obstacle for Learning Tree.  In Plaintiffs' prior experiences with the Village, no well permit has ever been required.  For example, a well was necessary to build the wastewater treatment plant, but no permit was required to drill the well.  Although the control building required a permit, no permit was required to drill the well.  Plaintiffs also drilled five test wells for the Chestnut Ridge project, but were never required to obtain permits.

126.    One week after the completion of the well for the wastewater treatment plant, the Village's most recent Building Inspector, Joe Smith, issued a stop work order on a well being drilled by Learning Tree Properties stating that they had not obtained a permit to drill the well.

127.    As far as Plaintiffs are aware, the Village has never required anyone to obtain a permit for drilling a well.  In fact, the Village does not have an application for well permits and in response to requests under New York's Freedom of Information Law, the Village was unable to produce either a copy of a local law or ordinance requiring such a permit, or any such permits previously granted to any other landowners.  Thus, the Village directed Learning Tree Properties to cross out the word "building" on the building permit application and replace it with "well." This is another example of a discriminatory burden that the Village has imposed only on Jewish-owned properties.

## III.    THE DISSOLUTION PETITION

128.    In order to avoid the court orders against the Village and the Village's own issuance of prior approvals, the Village is now conspiring with the Town to dissolve itself.  If this occurs, then the Town of Mamakating would assume control over all affairs previously conducted by the Village.  As with the dissolutions of the Village Planning Board and the Village ZBA, the supporters of the dissolution petition hope that dissolving Bloomingburg will block further development and allow the Village to avoid its legal obligations.

129.    On May 20, 2014, the Village received proposals for professional services to conduct an "urgent" dissolution study.  On June 3, 2014, the Village Clerk, Eileen Rogers, emailed the New York State Grants Gateway indicating that she was "anxiously awaiting" information needed to submit a grant application because "the process of urgent and timely

dissolution of the Village of Bloomingburg is dependent on obtaining this grant with the July 2 deadline."

130.    The Village of Bloomingburg has been in existence for 181 years.  It was founded in 1833.  The sudden and "urgent" need to dissolve the historic Village can be only be attributed to Defendants' broader conspiracy of stopping or delaying existing development projects and preventing Hasidic Jews from moving into Bloomingburg.

131.    Working closely with Village officials, the Rural Community Coalition initiated its own dissolution petition, which the Mayor and the two members of the Village Board of Trustees signed.  On July 7, 2014, the Village Clerk certified to the Village Board that the petition had the requisite number of signatures, and the Village Board called for a referendum.

132.    The Village Board scheduled the referendum vote for September 30, 2014, during the Jewish High Holy Days, in the ten-day period of time between Rosh Hashanah and Yom Kippur.  These holidays signify the most sacred time of the year in the Jewish faith.  Defendants obviously hope that the Orthodox Jews of Bloomingburg will be distracted by their religious observances and therefore will refrain from participating in the referendum vote.

## IV.    THE DISCRIMINATORY ENFORCEMENT OF THE VILLAGE AND TOWN BUILDING CODE AND OTHER ACTS OF RELIGIOUS DISCRIMINATION

133.    Religious discrimination in the small Village of Bloomingburg is worsening every day.  Village officials are continuing their efforts to stall progress of construction on Jewish-owned properties, and inconsistently applying building code regulations in an effort to penalize Jews throughout the Village.  Members of the community, including Village officials such as the Mayor himself, have engaged in verbal harassment and made repeated anti-Semitic statements.  These actions have escalated to acts of vandalism and assault towards members of the Hasidic community.

A.    **The Town Exercises Its Authority To Frustrate Development In Areas Subject Its Jurisdiction**

134.    While many of the examples of discrimination fall within Bloomingburg itself, the Town similarly has acted to delay or obstruct matters within its own jurisdiction.  For example, Plaintiff Winterton Properties has been seeking for nearly a year to convert its property at 51 Winterton Road into a mikvah for the religious use of Hasidic Jews in the community.  A mikvah is a Jewish ritual bath in which women use the pool for ceremonial religious purposes, along with prayer, meditation, and worship, all with the purpose of reestablishing their purity and rendering them able to participate in the religious life of their community.

135.    51 Winterton Road is located in the Town of Mamakating, just over the Bloomingburg line, and it was previously used commercially as a day spa as well as a residence. 51 Winterton Road is zoned as part of the "Village Center," which permits a wide variety of uses, including both commercial uses and uses as a neighborhood place of worship.  After Winterton Properties acquired the building to use as a mikvah, Mamakating notified Winterton Properties that it would need to apply for site plan approval, even though the Town had approved the site plan for the property's prior use as a day spa.

136.    Winterton Properties applied in December 2013 for site plan approval to convert the building to use as a mikvah.  In January 2014, Defendant Herrmann and the Town's Code Enforcement Officer illegally trespassed at Winterton Properties without a warrant or the permission of the owner, "inspected" the property," and issued a stop work order on the ground that Winterton Properties had begun to make improvements without a permit.

137.    The Town did not act on Winterton Properties' request for permits and site plan approval for several months.  On May 12, 2014, the Mamakating Building Inspector, after consultation with the Town Planning Board's attorney, determined that Plaintiffs' proposed use

of the property was permitted as of right as a neighborhood place of worship under the Town's Zoning Local Law and was a religious land use protected by Federal and State law.

138.    On July 3, 2014, Plaintiffs received site plan approval for the mikvah by resolution of the Town Planning Board, dated June 24, 2014.  Upon obtaining site plan approval, Plaintiffs applied for a demolition permit and a building permit for the mikvah with the Town Building Inspector.   Plaintiff's permit applications included all necessary site plan approvals and demonstrated that the property conformed to all requirements under Town Zoning Local Law Section 199-61, the New York Uniform State Fire Prevention and Building Code, and the Planning Board's site plan approval.

139.    Even though the Mamakating Building Inspector had approved the use of the property for a mikvah, members of the community appealed the Building Inspector's determination to the Town Zoning Board of Appeals, the chair of which was appointed by Defendant Herrmann.  The Zoning Board of Appeals should have been able to confirm the Building Inspector's decision quickly, but as with so many of Plaintiffs' other projects, even the most routine approvals result in denial or delay.  The Zoning Board of Appeals conducted several meetings since the summer regarding whether the proposed use as a mikvah is considered a neighborhood place of worship dragging out their decision well past the close of the public hearing in August 2014.  Throughout the pendency of the appeal, the Mamakating Building Inspector simply ignored Plaintiffs' existing applications for a demolition permit and building permit.

140.    On November 24, 2014, the Town Zoning Board of Appeals determined that 51 Winterton Road could not be used as a mikvah.  The Town Zoning Board concluded that the term, "neighborhood place of worship," did not include a mikvah.  The Town Zoning Board did

not provide a reasoned basis for this conclusion, explain how a mikvah should be classified, or explain why that alternative classification would not be a permissible use in the Village Center.

141.    During the Town Zoning Board of Appeals' meeting, three members of the Zoning Board of Appeals admitted that the proposed use a mikvah would be a religious use of the property.  Even so, the Zoning Board of Appeals, after an hour-long executive session closed to the public, voted unanimously that the mikvah could not be located at 51 Winterton Road and thus overruled the Town's own Building Inspector's determination.

142.    There is no rational basis why a building that previously operated as a day spa cannot be converted to use as a mikvah, and the Board did not articulate any.  The denial is another example of the blatant and systemic discrimination Plaintiffs face when seeking even the most rudimentary or routine approvals from the Village or the Town.

143.    Yet 51 Winterton Road is not the only property that has been subject to discrimination by the Town.  The Town also has inexplicably delayed issuing a building permit application to renovate an existing house for use as a residence for Rabbi B.N. Halberstam.  In May 2014, a building permit was applied to convert an existing garage located at the property, 52 Winterton Road, into a religious study for the Rabbi's use as he intends to occupy the single-family residence.

144.    In connection with the rabbi's study, the Town Building Inspector has focused on construction by a prior owner who did work in the basement without any permit.  While this work was completed by a ***prior*** owner, she has used her concern to hold up granting a permit for construction on the garage to the new owner, who has not done any work on the property.  The building inspector has insisted that Plaintiffs remedy the violation of the prior owner before a permit is granted for the existing garage, an entirely separate parcel of land from the basement

subject to the violation. Winterton Properties commenced a mandamus action, and the Mamakating Building Inspector has continued to refuse to issue a building permit during the pendency of this proceeding. On November 25, 2014, just one day before the filing of the First Amended Complaint, the Town Building Inspector finally notified Plaintiffs that she intended to issue a permit in return for a payment of a $1,000 fee.

145. As the Town Supervisor, and founder of the RCC, Mr. Herrmann actively supports the RCC's discriminatory agenda. As discussed above, on behalf of the Town, Mr. Herrmann has entered into inter-municipal agreements with Bloomingburg for the purpose of frustrating Plaintiffs' projects and assisting the Village in engaging in unlawful acts of discrimination and obstruction. These inter-municipal agreements that permitted it to assume jurisdiction over Planning Board and Zoning Board of Appeals matters that were previously handled by the Village. These agreements were not done for neutral or legitimate reasons, but rather were done to permit further delay and discrimination.

146. According to another former Town official, Mr. Herrmann has stated that he plans to build an amphitheater in the park adjoining the Chestnut Ridge development. In so doing, he has stated that he would build the amphitheater speakers to point directly at Chestnut Ridge so that the noise would discourage people from living there.

147. Mr. Herrmann, in an effort to strengthen the Rural Community Coalition presence, has appointed a number of vocal opponents of the Jewish community, who had made anti-Semitic and other derogatory comments to various town boards. These appointees include an alternate to the Town Planning Board, Richard Morris, who is openly supportive of the anti-Hasidic cause.

148.    The Town is currently seeking to place even greater limits on Plaintiffs' properties, proposing multiple new local laws that would condition any approval or permit "related to real property" upon the payment of all "property taxes and other assessments, liens, and charges previously levied by or on behalf of the Town" with respect to the property that is the subject of the approval or permit.  Another proposed local law would seek to shift virtually any cost incurred by the Town, including employee salaries and administrative costs, onto those who supposedly made the exercise of police powers necessary.   The Town Defendants are apparently considering these local laws to give themselves additional power and pretexts to impose costs on Plaintiffs on an arbitrary and discriminatory basis.

**B.     The Village Acts Arbitrarily To Delay And Frustrate Plaintiffs In Their Efforts To Obtain Necessary Permits And Other Approvals**

149.    The Village also has taken countless measures to impose arbitrary and discriminatory burdens on Plaintiffs.  Since Mayor Gerardi's election, the Village has cycled through building inspectors in an effort to find individuals who would discriminate against Plaintiffs' properties.  For instance, a former village engineer, Tom Depuy was told by the engineer that replaced him, Alfred Fusco, Jr., that he was removed because he refused to condemn Jewish-owned buildings.

150.    Todd Korn, a former building code enforcement officer who performed Village inspections on behalf of Fusco Engineering & Land Surveying, had on numerous occasions been told to handle "those people's" properties differently.  Those instructions came from various individuals, including Defendants' Mayor Gerardi, Village Trustee James Johnson, and Village Clerk Eileen Rogers.  On one occasion, Mr. Korn was told by Ms. Rogers to do something about a complaint that there was a "little Jew kid" riding his bike with no helmet.  Mr. Korn responded to Ms. Rogers that he, as a building code enforcer, could do nothing to respond to this complaint.

151.    Mr. Korn was repeatedly asked to follow up on every complaint made regarding Jewish-owned properties, an attitude that did not exist for any other property in the Village.  For instance, on another occasion, Mr. Korn received a complaint about a non-Jewish owned property and gave it to Ms. Rogers, who told Mr. Korn not to worry about that complaint, because "she's one of us."

152.    Fusco Engineering, for whom Mr. Korn works, had its contract with the Village terminated on August 13, 2014.  The Village has since hired a new, more aggressive Code Enforcement Officer, who issues orders at the direction of Village, regardless of whether he has the legal authority to do so.  The new code enforcement officer (the third since the March election) is a friend of the Bloomingburg mayor, and he has been assisting the mayor in his goal of obstructing and preventing all "Jewish" building in the Village.

153.    On August 18, Mayor Gerardi, trespassed onto Learning Tree's property in order to question a hydrogeologist, Bob Miller, about what he was doing on the property.  Mr. Miller replied that he was "drilling an exploratory potable water well."

154.    Mayor Gerardi responded that the senior living home at 68 Godfrey Road was complaining that their well had gone dry, and implied that well drilling at the Learning Tree site caused this drought.   It was not physically possible, however, for the drilling of a test well at the Learning Tree site to affect 68 Godfrey Road, because the Learning Tree test wells had not yet withdrawn any water.  In any event, given the distance between the properties, it is highly unlikely that any producing water supply wells at the Learning Tree site would have any impact on the 68 Godfrey Road water supply.  In fact, the 68 Godfrey Road well had gone dry even before Learning Tree began drilling.

155.    The Village's stop work order sought to enjoin the drilling of water supply test wells in connection with the development on Learning Tree's property upon the ground that the well must comply with a provision of the Mamakating Town Code that purports to requires a property owner to obtain a well permit before developing a water supply well in the Town.  That provision, however, only applies outside the Village of Bloomingburg.  The Village, along with its Code Enforcement Officer, lacks the authority under the New York Village Law, or any other statute, to enforce the Town of Mamakating's Code against Village properties.  In fact, the Village does not have a well permit requirement, and when Plaintiffs requested all such permits the Village has requested under New York Freedom of Information Law, the Village turned up no results.  The Village simply created a new type of permit for Plaintiff's property by instructing Learning Tree to submit an application that had crossed out the word "building" and instead put the term "well" to denote the type of permit the Village was now requiring.

156.    As a result of the Village's wholly discriminatory enforcement of its zoning law, Learning Tree's well driller was forced off the project site, which has further delayed the possible opening of the private religious school.  The August 18, 2014 stop work order only further demonstrates the extent to which the Village is willing to go to prevent Plaintiffs from exercising their constitutional rights by conjuring and attempting to enforce new laws only against Jewish-owned properties.  The Village's attempt to enforce the Town's Code against Learning Tree is clearly yet another step in the Village's discriminatory campaign.

157.    Mr. Korn also issued a stop work order at 79 Main Street, a property owned by Commercial Corner, which was formerly (and will soon reopen as) a hardware store.  Mayor Gerardi, after hearing that Hasidic people were still entering and exiting the building, told Mr. Korn to throw "those things out."  Mr. Korn informed the Mayor that if no work was being

conducted, he could not merely prevent the owners of the building from entering and exiting. Ms. Rogers reacted with anger, asking Mr. Korn what use he is if he does not do what the Mayor and Ms. Rogers ask him to do.

158.     Plaintiffs have appealed the stop work order on 79 Main Street, because it was based upon an alleged change of use that did not occur.  While on appeal, the order is stayed and cannot be enforced.  But this has not stopped Village officials from abusing their authority.  A second stop work order was issued on August 20, 2014 alleging the same violation and that no one should enter the property.  The second stop work order does not cite any change of facts or circumstances, nor does it issue a specific code violation Plaintiffs are alleged of violating.  No reason was provided that would warrant the issuance of a duplicative order, and the Village has declined to issue any clarifying information.

159.     Section 12.5.1 of Village Zoning Code requires that the building code enforcement officer first provide notice of the violation being alleged, and an opportunity to remedy the alleged violation within a reasonable amount of time.  Not only were Plaintiffs denied notice of the alleged violation prior to issuance of the second stop work order, but Plaintiffs were not provided with an opportunity to remedy any alleged violation.

160.     On August 20, 2014, a group of approximately 100 Jewish students from a nearby area visited Bloomingburg to pray in the morning, visit a restaurant, and then continue on to a field trip in the Catskill Mountains.  With permission from the owner of 79 Main Street, Commercial Center, the students sought to use the building as a meeting place for their morning prayers, which take approximately forty minutes.  During this meeting, a building code enforcement officer ordered them to vacate the building immediately.  This officer threatened to call the State Police if the student group did not vacate the premises within ten minutes.  Even

though the officer had no authority to force this group out of the building, the group nonetheless complied with his discriminatory demands.  After observing this harassment, a sympathetic non-Jewish resident of the Village invited the group to use his nearby lot to pray outdoors.

161.    In addition to 79 Main Street, Plaintiffs have tried to open a kosher pizza restaurant in a space that was previously also occupied by a pizza restaurant.  This transition from one restaurant to another, without a change of use, should be routine and typically does not require a building permit or any special governmental approvals.  Nonetheless, this process was held up by the Village for many months and is but one more example of the endless hoops Plaintiffs have been forced to jump through regarding their properties.

162.    For instance, the Village required stamped plans for the installation of an oven hood in the restaurant.  The manufacturer of the oven hood – the largest privately held fabricator of commercial kitchen ventilation systems in the United States with over 70 sales offices – advised that in the 38 years that they have been in business, they have never been required to provide stamped plans for a simple commercial oven hood.

163.    Similarly, on a different parcel of land owned by Plaintiffs two storefronts away, there is an above-ground gasoline storage tank.  The Mayor made clear to Mr. Korn that the certificate of occupancy for the pizza restaurant is not to be issued until the gasoline storage tank is removed.  The storage tank, however, is not located on the same property as the pizza restaurant and should in no way prevent the issuance of a certificate of occupancy for it.  The only connection between the certificate of occupancy for the pizza restaurant and the storage tank is that they are both located on property owned by Jewish business owners.

164.    In stark contrast, a nearby non-Jewish business that required a change of use from a warehouse space to a retail thrift shop proceeded to open for business with no approvals and no

building permits.  At the time this lawsuit was filed, no stop orders had been issued despite a number of complaints.  Not only have the necessary permits not been obtained, the size of the shop's sign is too large under the Village's size regulations.  Additionally, the sign is not affixed to the building as required.  Instead, the sign is freestanding and weighed down by sandbags. But Defendants have not sought to bring this store, run by non-Jewish individuals, into compliance with the regulations.  After Plaintiffs commenced this lawsuit and mentioned the thrift shop, the Village issued a "stop work" order at the thrift shop.  Despite the stop work order, however, the Quickway Thrift Shop remains open for business.

165.    The Village's disparate enforcement of building regulations highlights its true intention to discriminate against Jewish businesses.

166.    Meanwhile, the harassment and intimidation of the Village's Jewish residents have intensified.  Angry protesters have hectored and cursed at Orthodox Jewish women as they push baby strollers through the streets.  They have similarly cursed and threatened Sullivan Farm's principals on a number of occasions, resulting in frequent complaints to the police. Hasidic residents have been cursed at while walking to religious services, with one 17-year old girl being yelled at to "eat shit and die."  Inflammatory comments like this are met with the overwhelming approvals of the crowds of protestors.  Coffee cups have been hurled at members of the Hasidic community walking through the streets of Bloomingburg.

167.    Plaintiff Rosenbaum and her family have been personally subjected to acts of discrimination occurring throughout Bloomingburg.  On one occasion, someone pushed her seven year old son's head while driving past him.  Cars have honked at her as they drove past. Mrs. Rosenbaum is also burdened by not having a mikvah in Bloomingburg because she must pay someone to drive her a considerable distance to get to one.

168.    The anti-Semitic sentiment throughout the community is unmistakable.  Jews are often belittlingly referred to as "those people" by members of the Village government, including Defendants Gerardi, Johnson, and Rogers, and members of the community.  Workers completing jobs related to the housing development have been the subject of smashed car windshields, tossed beer bottles, and have even been told to "die, you Jew lover."  Bumper stickers depicting a red line through a picture of a Hasidic man with peyot (traditional side curls worn by boys and men in the Orthodox Jewish community) have been openly displayed throughout the community.

169.    In four out of six consecutive nights in June and July 2014, someone broke plate glass windows in Jewish-owned buildings that will house the kosher pizza shop and other businesses that will serve residents of the Village.  All of these buildings are owned by Plaintiff or entities related to Plaintiff.  In response to the acts of vandalism directed at the Jewish-owners properties, Mamakating Supervisor William Herrmann pointedly refused to characterize the event as a hate crime, which he derided as "the developer's interpretation of the event."  Instead, he opined that it was possible that the principals of Sullivan Farms had created a "self-produced event to deflect attention away from the developer" or that unidentified contractors, workers, or tenants may have been pursuing a private grievance.

170.    The individual who committed these actions, a resident of the Village of Wurtsboro, which is also part of Mamakating, was arrested on August 4, 2014 by the New York State police.  Following his release on bail, he thanked the community "for the outpouring of support and positive messages of solidarity.  It brought frustrated tears of joy to hear our local firemen honking and cheering my release."

**AS AND FOR A FIRST CAUSE OF ACTION**
**"Substantial Burden"**
**Religious Land Use and Institutionalized Persons Act of 2000**
**42 U.S.C. § 2000cc-2(a)**

**(Against all Defendants)**

171.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

172.    Defendants have deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations, including the building moratorium and denial of use applications for the religious school and the mikvah in a manner that places a substantial burden on the Plaintiffs' religious exercise without any compelling interest, and without using the least restrictive means of furthering any compelling interest.

173.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

174.    Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  Plaintiffs will continue to suffer damages unless the Defendants' acts and conduct complained of are permanently enjoined.

A.    **The Religious School**

175.    Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

176.    The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

177.    The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

178.    There is no compelling governmental interest justifying the denial of an application to use the property for a private religious school.

179.    As discussed above, Defendants' denial of the religious school's site plan, the basis for the moratorium, the Planning Board's dissolution, and the Village's dissolution were instituted for the sole purpose of stopping the completion and operation of the private religious school and other Jewish owned businesses, including the completion of Chestnut Ridge. Defendants' intention of blocking the operation of the religious school is evidenced by the timing and circumstances surrounding the enactment of the local laws and dissolutions, which have now similarly been stalled through the efforts of the Town Planning Board  including:

- **September 26, 2013:**  The Village Planning Board considered Learning Tree's site plan application on September 26, 2013.  Although the Village Planning Board was inclined to deny the application on the spot, they followed the Village attorney's recommendation to allow the religious school to present its application at the next meeting.

- **December 12, 2013:**  At the December 12, 2013 meeting, the Village Planning Board denied the private religious school's application without providing an opportunity for the school to present its application or giving a legitimate explanation for the denial.  Defendant Planning Board Member Anne Heanelt stated, "I'm just voting no on this," with no explanation.  Similarly, Defendant Planning Board Member Andrew Finnema asked, "Why do we need another school in Bloomingburg?"  Federal law in fact prohibits the Village Planning Board from denying Hasidic Jews their right to religious instruction based upon the existence of a secular public school, so the purported "need" for a school was legally irrelevant to the state law question whether the driveway may be widened and a parking lot sited next door.

- **May 12, 2014:**  On May 12, 2014, the New York Supreme Court annulled the denial of Learning Tree's site plan and ordered the Village Planning Board to reconsider Learning Tree's applications.

- **May 22, 2014:** Just ten days after being ordered to reconsider Learning Tree's applications, the Village Board of Trustees discussed instituting a moratorium on all construction within the Village, dissolving the Village Planning Board, and dissolving the Village Board of Appeals.

- **June 12, 2014:** The Village Board of Trustees enacted Local Law Nos. 4 and 5 provide for the Town of Mamakating to take over the responsibilities of the Village's Planning Board and ZBA functions, and enacted Local Law No. 6 to institute a building moratorium.

- **June 17, 2014**: The Town entered into an inter-municipal agreement with the Village to assume jurisdiction over the Village's Planning Board and ZBA functions.

- **July 7, 2014**: The Village Clerk certified to the Village Board that the petition to dissolve the Village of Bloomingburg into the Town of Mamakating (supported by Mayor Gerardi and the Village Board of Trustees) had the requisite number of signatures. The Village Board then called for a referendum.

- **September 30, 2014**: The referendum vote took place on September 30 2014, during the Jewish High Holy days.

180.    The Town Defendants signed an inter-municipal agreement with the Village that was adopted by the Town Board and signed by Defendants Herrmann and Gerardi. This agreement allows the Town of Mamakating to continue the delay of Plaintiffs' school application. Despite the Village's ability to finalize decision on the school application, and the New York Supreme Court's order to reconsider such application, the Town Planning Board assumed jurisdiction for the purpose of further delaying the opening of the religious school. The Town's officials have essentially restarted the entire review process anew almost a year after the school site plan application was first initiated with the Village. The Town Defendants continue to stall any decision regarding the school application by seeking new requirements from Plaintiffs at every turn.

181.    The Town Defendants have deliberately avoided making a final decision on the site plan application and by so doing, have constructively denied it. Learning Tree's application has become futile as a matter of law because it is inevitable that the Town Planning Board will

refuse the application, taking into consideration the record of the Town Defendants' hostility, delay, and obstruction.

### B.    <u>The Mikvah</u>

182.    The use of the property located at 51 Winterton Road in Mamakating for a mikvah is a permitted use as a neighborhood house of worship within the Village Center zone in which the property is located.

183.    This property previously operated as day spa, a non-religious commercial use, as well as a single-family residence.

184.    A mikvah is a Jewish ritual bath in which women use the pool for ceremonial religious purposes, along with prayer, meditation, and worship, all with the purpose of reestablishing their purity and rendering them able to participate in the religious life of their community.   Visiting a mikvah is an essential part of the daily religious practices of many Hasidic Jews.

185.    There is no compelling governmental interest justifying the Town Zoning Board of Appeals ruling that the property cannot be used for a mikvah.

186.    As alleged above, Defendant Herrmann unlawfully targeted 51 Winterton in a discriminatory manner for inspection without permission in an effort to prevent it from being converted to a mikvah for religious use.

187.    The mikvah had been already determined to be a religious use by the Mamakating Building Inspector and the Planning Board, which issued site plan approval after six months of review.   Three of the members of the Town Zoning Board of Appeals who ultimately determined that the property could not be used for a mikvah have declared at the November 24, 2014 Zoning Board of Appeals meeting that a mikvah is a religious use.

188.    Overruling the Town Planning Board and Building Inspector, the Town Zoning Board of Appeals has now denied Plaintiff Winterton Properties and the Hasidic community the use of 51 Winterton Road as a mikvah.  This arbitrary denial of use was issued without justification, rational explanation, or identification of any governmental interest, compelling or otherwise.  The denial substantially burdens Plaintiffs' religious exercise rights.

### AS AND FOR A SECOND CAUSE OF ACTION
### "Equal Terms"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(1)

### (Against all Defendants)

189.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

190.    Defendants have made countless efforts to frustrate or dismantle the development of Jewish-owned properties in Bloomingburg and Mamakating.  As public officials, they have directed others to act upon complaints issued against Jewish-owned properties while instructing that complaints against members of the community who are not Jewish to be ignored.

191.    Complaints about non-Jewish-owned properties go unnoticed, are purposely ignored, or are never filed, while complaints relating to Jewish properties receive immediate and excessive scrutiny, sometimes including personal visits from Mayor Gerardi or Supervisor Herrmann.  Village and Town officials, including Trustees of the Village and the Town Supervisor, often target actions against Jewish-owned properties by acting on, and even submitting, complaints about Jewish-owned properties but not secular-owned properties.

192.    When applied to the religious school and the mikvah, two properties with a use essential for the Hasidic community to practice their religion, this pattern of discriminatory actions by Defendants impose upon Jews  land use regulations which are not imposed upon non-

Jewish landowners and members of the community, and are thus unequal and prohibited under RLUIPA.

193.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

194.    Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage, and injury.  Plaintiffs will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

### A.    **The Religious School**

195.    Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

196.    The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA. The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

197.    The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

198.    There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.

199.    The Village Defendants and the Town Defendants have deprived and continue to deprive Plaintiff Learning Tree, a religious institution, of its right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations, including the

building moratorium, that treat religious assemblies and institutions on less than equal terms as nonreligious assemblies and institutions.

200.    In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders requiring a re-examination of the religious school application, the Village and the Town have applied various ordinances, including the building moratorium, unequally against Jewish owned properties and businesses.    Defendants' discriminatory intentions are evidenced by the timing and circumstances of their actions, including:

- **September 26, 2013:**  The Village Planning Board considered Learning Tree's site plan application on September 26, 2013.  Although the Village Planning Board was inclined to deny the application on the spot, they followed the Village attorney's recommendation to allow the religious school to present its application at the next meeting.

- **December 12, 2013:**  At the December 12, 2013 meeting, the Village Planning Board denied the private religious school's application without providing a legitimate explanation for the denial.  Defendant Planning Board Member Anne Heanelt stated, "I'm just voting no on this," with no explanation.  Similarly, Defendant Planning Board Member Andrew Finnema asked, "Why do we need another school in Bloomingburg?"  Federal law in fact prohibits the Planning Board from denying Hasidic Jews their right to religious instruction based upon the existence of a secular public school, so the purported "need" for a school was legally irrelevant to the state law question whether the driveway may be widened and a parking lot sited next door.

- **May 12, 2014:**   On May 12, 2014, the New York Supreme Court annulled the denial of Learning Tree's site plan and ordered the Village Planning Board to reconsider Learning Tree's applications.

- **May 22, 2014:**  Just ten days after being ordered to reconsider Learning Tree's applications, the Village Board of Trustees discussed instituting a moratorium on all construction within the Village, dissolving the Village Planning Board, and dissolving the Village Board of Appeals.

- **June 12, 2014:**  The Village Board of Trustees enacted Local Law Nos. 4 and 5 provide for the Town of Mamakating to take over the responsibilities of the Village's Planning Board and ZBA functions, and enacted Local Law No. 6 to institute a building moratorium.

- **June 17, 2014**:  The Town entered into an inter-municipal agreement with the Village to assume jurisdiction over the Village's Planning Board and ZBA functions.

- **July 7, 2014**:  The Village Clerk certified to the Village Board that the petition to dissolve the Village of Bloomingburg into the Town of Mamakating (supported by Mayor Gerardi and the Village Board of Trustees) had the requisite number of signatures.  The Village Board then called for a referendum.

- **September 30, 2014**:  The referendum vote took place on September, 30 2014, during the Jewish High Holy days.

201.    The Village Defendants denied Learning Tree's site plan application for development of the private religious school, they voted in favor of Local Law Nos. 4, 5, and 6, and have delayed making decisions on any applications by Jewish owned businesses currently before them.

202.    The Town Defendants signed an inter-municipal agreement with the Village that was adopted by the Town Board and signed by Defendants Herrmann and Gerardi.  This agreement allows the Town of Mamakating to continue the delay of Plaintiffs' school application.  Despite the Village's ability to finalize decision on the school application, and the New York Supreme Court's order to reconsider such application, the Town Planning Board assumed jurisdiction for the purpose of further delaying the opening of the religious school.

203.    The Town Defendants have deliberately avoided making a final decision on the site plan application, choosing instead to pursue an endless series of demands and irrelevant inquiries as a pretext for indefinite delay.  Town officials have restarted the entire review process anew almost a year after the school site plan application was first initiated with the Village. These tactics are a constructive denial of Learning Tree's application, and have rendered the application process futile as a matter of law.

B.     **The Mikvah**

204.    The use of the property located at 51 Winterton Road in Mamakating for a mikvah is a permitted use as a neighborhood house of worship within the Village Center zone in which the property is located.

205.    This property previously operated as day spa, a non-religious commercial use, as well as a single-family residence.

206.    The mikvah had been already determined to be a religious use by the Mamakating Building Inspector and the Town of Mamakating Planning Board which issued site plan approval for the mikvah in June of 2014 after six months of review.  Additionally, three of the members of the Town Zoning Board of Appeals declared at the November 24, 2014 Zoning Board of Appeals meeting that  a mikvah is a religious use.

207.    Overruling the Town Planning Board and Building Inspector, the Town Zoning Board of Appeals has now denied Plaintiff Winterton Properties and the Hasidic community the use of 51 Winterton Road as a mikvah.  This arbitrary denial of use was issued without justification, rational explanation, or identification of any governmental interest, compelling or otherwise.

208.    The denial imposes upon Plaintiffs a land use regulation in a manner that is on unequal terms with the application of land use regulations imposed upon the prior owner of the property, who used it for a purpose that was similar to the proposed mikvah, but non-religious. These unequal terms imposed upon religious use and users violates RLUIPA.

209.    Defendant Herrmann targeted 51 Winterton in a discriminatory manner for inspection without permission in an effort to prevent it from being converted to a mikvah for

religious use.  This imposed unequal terms of land use enforcement on the current owners to which the prior, non-religious owners were not subject.

210.    There is no compelling governmental interest justifying the Town Zoning Board of Appeals ruling that the property cannot be used for a mikvah.

### AS AND FOR A THIRD CAUSE OF ACTION
### "Nondiscrimination"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(2)

### (Against all Defendants)

211.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

212.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

213.    The Village Defendants and the Town Defendants have deprived and continue to deprive Plaintiffs, including religious assemblies and institutions, of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations, including the building moratorium, and denial of use applications of the religious school and the mikvah that discriminate against the Plaintiffs on the basis of religion.

214.    Jewish-owned properties in Bloomingburg and Mamakating face unwavering discrimination against them by the Village Defendants and the Town Defendants.  For instance, Jewish-owned properties and businesses in compliance with the applicable regulations face never ending stop work orders, while those properties and businesses owned by non-Jewish individuals that are not in compliance and are known to not be in compliance, have yet to receive any enforcement against them.  Complaints regarding non-Jewish-owned properties are ignored, whereas every complaint about construction sites or property owned by Jewish individuals are

immediately scrutinized and often personally inspected by the Mayor, a responsibility not designated to be under the Mayor's purview.  Village and Town officials, including Trustees of the Village and the Town Supervisor, often target actions against Jewish-owned properties by acting on, and even submitting, complaints about them while taking no actions against any other properties.

215.    When applied to the religious school and the mikvah, two properties with a use essential for the Hasidic community to practice their religion, these actions by Defendants impose upon Plaintiffs land use regulations that discriminate against Plaintiffs and the Hasidic Jewish community on the basis of their religion, and are thus prohibited under RLUIPA.

216.    The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

217.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer damages unless the Defendants' acts and conduct complained of are permanently enjoined.

### A.    The Religious School

218.    Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

219.    The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

220.    The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

221.    In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders against the Village, Defendants voted to enact Local Law Nos. 4, 5 and 6.  Village Local Law No. 6 of 2014 provides no exception to the building permit moratorium for the private religious school, even though the application to develop the school building was made over a year ago, well before the enactment of Village Local Law No. 6.

222.    The Village Defendants also denied Learning Tree's site plan application for development of the private religious school for no reason other than religious discrimination. The Town Defendants signed an inter-municipal agreement with the Village that was adopted by the Town Board and signed by Defendants Herrmann and Gerardi.  This agreement allows the Town of Mamakating to continue the delay of Plaintiffs' school application. Despite the Village's ability to finalize decision on the school application, and the New York Supreme Court's order to reconsider such application, the Town Planning Board assumed jurisdiction for the purpose of further delaying the opening of the religious school.  The Town's officials have essentially restarted the entire review process anew almost a year after the school site plan application was first initiated with the Village.  The Town Defendants continue to stall any decision regarding the school application by seeking new requirements from Plaintiffs at every turn.

223.    The Town Defendants have deliberately avoided making a final decision on the site plan application and by so doing, have constructively denied it.  Learning Tree's application has become futile as a matter of law, because it is inevitable that the Town Planning Board will refuse the application, taking into consideration the record of the Town Defendants' hostility, delay, and obstruction.

B.    **The Mikvah**

224.    The use of the property located at 51 Winterton Road in Mamakating for a mikvah is a permitted use within the zone in which the property is located.

225.    This property previously operated as day spa, a non-religious commercial use as well as a single-family residence.

226.    There is no compelling governmental interest justifying the denial of an application to use the property as a mikvah ritual bath.

227.    The mikvah bathing facility had been already determined to be a religious use of 51 Winterton Road by the Mamakating Building Inspector and the Town of Mamakating Planning Board.  Additionally, three of the members of the Town of Mamakating Zoning Board of Appeals declared at the November 24, 2014 Zoning Board of Appeals meeting that the proposed use of a mikvah would be a religious use.

228.    Overruling the Town Planning Board and Building Inspector, the Town Zoning Board of Appeals has now denied Plaintiff Winterton Properties and the Hasidic community the use of 51 Winterton Road as a mikvah.  This arbitrary denial of use was issued without justification, rational explanation, or identification of any governmental interest, compelling or otherwise.

229.    Furthermore, Defendant Herrmann targeted 51 Winterton in a discriminatory manner for inspection without permission in an effort to prevent it from being converted to a mikvah for religious use.  This imposed unequal terms of land use enforcement on the current owners to which the prior, non-religious owners were not subject.

230.    The denial and the actions of Defendant Herrmann impose upon Plaintiffs a land use regulation that discriminates against them and the Hasidic Jewish community on the basis of their religion, in violation of RLUIPA.

231.    There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.

### AS AND FOR A FOURTH CAUSE OF ACTION
### "Exclusions and Limits"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc-2(b)(3)(A)

### (Against all Defendants)

232.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

233.    Due to the actions alleged in detail above, Defendants, have also deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing a land use regulation that totally excludes religious practices of Hasidic Jews from Bloomingburg by barring Plaintiffs from establishing anywhere in the jurisdiction the religious school or the mikvah, facilities which are essential to the practice of Hasidic Judaism.

234.    The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

235.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer damages unless the Defendants' acts and conduct complained of are permanently enjoined.

A.      **The Religious School**

236.    Hasidic Jewish religion and culture require religious single sex schools for the education of Hasidic Jewish children.

237.    The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

238.    The use of the property located at 132 Main Street in Bloomingburg for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

239.    The sole purpose of the Defendants' actions was to stop the completion and operation of a private religious school.

240.    As discussed above, Defendants' denial of the religious school's site plan, the basis for the moratorium, the Planning Board's dissolution and the Village's contemplated dissolution, sought in collusion with the Town, bar the completion and operation of the private religious school, the operation of other Jewish owned businesses, including the completion of Chestnut Ridge, and serve no legitimate purpose as evidenced by the timing of their actions and surrounding circumstances, including:

- **September 26, 2013:** The Village Planning Board considered Learning Tree's site plan application on September 26, 2013. Although the Village Planning Board was inclined to deny the application on the spot, they followed the Village attorney's recommendation to allow the religious school to present its application at the next meeting.

- **December 12, 2013:** At the December 12, 2013 meeting, the Village Planning Board denied the private religious school's application without providing a legitimate explanation for the denial. Defendant Planning Board Member Anne Heanelt stated, "I'm just voting no on this," with no explanation. Similarly, Defendant Planning Board Member Andrew Finnema asked, "Why do we need another school in Bloomingburg?" Federal law in fact prohibits the Planning Board from denying Hasidic Jews their right to religious instruction based upon the existence of a secular public school, so the purported "need" for a school was

legally irrelevant to the state law question whether the driveway may be widened and a parking lot sited next door.

- **May 12, 2014:**  On May 12, 2014, the Supreme Court annulled the denial of Learning Tree's site plan and ordered the Village Planning Board to reconsider Learning Tree's applications.

- **May 22, 2014:**  Just ten days after being ordered to reconsider Learning Tree's applications, the Village Board of Trustees discussed instituting a moratorium on all construction within the Village, dissolving the Village Planning Board, and dissolving the Village Board of Appeals.

- **June 12, 2014:**  The Village Board of Trustees enacted Local Law Nos. 4 and 5 provide for the Town of Mamakating to take over the responsibilities of the Village's Planning Board and ZBA functions, and enacted Local Law No. 6 to institute a building moratorium.

- **June 17, 2014**:  The Town entered into an inter-municipal agreement with the Village to assume jurisdiction over the Village's Planning Board and ZBA functions.

- **July 7, 2014**:  The Village Clerk certified to the Village Board that the petition to dissolve the Village of Bloomingburg into the Town of Mamakating (supported by Mayor Gerardi and the Village Board of Trustees) had the requisite number of signatures.  The Village Board then called for a referendum.

- **September 30, 2014**:  The referendum vote took place on September, 30 2014, during the Jewish High Holy days.

241.    There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.

242.    In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders against the Village, the Village Defendants, in collusion with the Town Defendants, voted to enact Local Law Nos. 4, 5, and 6.  The Village Defendants also denied Learning Tree's site plan application for development of the private religious school, and now the Town Defendants have continued to constructively deny the application through indefinite and needless delay.

243.    The Village Board of Trustees and Defendants Frank Gerardi, James Johnson, and Katherine Roemer as Trustees of the Village voted in favor of Local Law Nos. 4, 5, and 6.

244.    Village Local Law No. 6 of 2014 provides no exception to the building permit moratorium for the private religious school, even though the application to develop the school building was made over a year ago, well before the enactment of Village Local Law No. 6.

245.    The refusal to issue a building permit, and the continued denial of site plan approval and lot consolidation approval, for the private religious school in reliance on Village Local Law No. 6 of 2014 prohibits the development and operation of religious schools necessary to the practice of Hasidic Judaism in the Village of Bloomingburg.

246.    The Town Defendants signed an inter-municipal agreement with the Village that was adopted by the Town Board and signed by Defendants Herrmann and Gerardi.  This agreement allows the Town of Mamakating to continue the delay of Plaintiffs' school application. Despite the Village's ability to finalize decision on the school application, and the New York Supreme Court's order to reconsider such application, the Town Planning Board assumed jurisdiction for the purpose of further delaying the opening of the religious school.

247.    The Town Defendants have deliberately avoided making a final decision on the site plan application, choosing instead to pursue an endless series of demands and irrelevant inquiries as a pretext for indefinite delay.  Town officials have restarted the entire review process anew almost a year after the school site plan application was first initiated with the Village. These tactics are a constructive denial of Learning Tree's application, and have rendered the application process futile as a matter of law.

**B.    <u>The Mikvah</u>**

248.    The use of the property located at 51 Winterton Road in Mamakating for a mikvah is a permitted use within the zone in which the property is located.

249.    This property previously operated as day spa, a non-religious commercial use, as well as a single-family residence.  There is no compelling governmental interest justifying the Town Zoning Board of Appeals ruling that the property cannot be used for a mikvah.

250.    The mikvah had been already determined to be a religious use by the Mamakating Building Inspector and the Town of Mamakating Planning Board which issued site plan approval for the mikvah in June of 2014 after six months of review.  Additionally and confusingly, three of the members of the Town of Mamakating Zoning Board of Appeals who ultimately determined that the property could not be used for a mikvah,  declared at the November 24, 2014 Zoning Board of Appeals meeting that  a mikvah is a religious use.

251.    Overruling the Town Planning Board and Building Inspector, the Town Zoning Board of Appeals has now denied Plaintiff Winterton Properties and the Hasidic community the use of 51 Winterton Road as a mikvah.  This arbitrary denial of use was issued without justification, rational explanation, or identification of any governmental interest, compelling or otherwise.

252.    Defendant Herrmann targeted 51 Winterton in a discriminatory manner for inspection without permission in an effort to prevent it from being converted to a mikvah for religious use.  This imposed unequal terms of land use enforcement on the current owners to which the prior, non-religious owners were not subject.

253.    The denial and the actions of Defendant Herrmann impose upon Plaintiffs a land use regulation that totally excludes from Bloomingburg a suitable mikvah for use by women of the Hasidic community in violation of RLUIPA.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**"Exclusions and Limits"**
**Religious Land Use and Institutionalized Persons Act of 2000**
**42 U.S.C. § 2000cc-2(b)(3)(B)**

**(Against all Defendants)**

254.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

255.    Defendants have deprived and continue to deprive the Plaintiffs of their right to the free exercise of religion, as secured by RLUIPA, by imposing and implementing land use regulations upon the religious school and the mikvah that unreasonably places limits on religious institutions within Bloomingburg and Mamakating.

256.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

257.    Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  Plaintiffs will continue to suffer damages unless Defendants' acts and conduct complained of are permanently enjoined.

A.    <u>The Religious School</u>

258.    Hasidic Jewish religion and culture require development of religious single sex schools for the education of Hasidic Jewish children.

259.    The development of the private religious school constitutes protected religious exercise within the meaning of RLUIPA.

260.    The use of the property at issue for a private religious school is a permitted use within the zone in which the property is located and no use variance is required.

261.    There are no other legitimate impediments to the use of the property at issue for a private religious school.

262.    In furtherance of the scheme to oppose development of Jewish-owned properties and in order to sidestep recent judicial orders requiring the Village to revisit its denial, the Village Defendants, in collusion with the Town Defendants, voted to enact Local Law Nos. 4, 5 and 6.

263.    The Village Defendants denied Learning Tree's site plan application for development of the private religious school.   The Town Defendants have continued to constructively deny the application through indefinite and needless delay.

264.    By enacting a building moratorium within the Village of Bloomingburg, and together with the Town Defendants' inaction on the site plan application, the Village has placed an unreasonable limit on the ability to provide religious institutions for Hasidic Jews within the jurisdiction.

265.    The refusal to issue a building permit and the continued denial of site plan approval and lot consolidation approval for the private religious school in reliance on Village Local Law No. 6 of 2014 prohibits the development and operation of religious schools necessary to the practice of Hasidic Judaism in the Village of Bloomingburg and Town of Mamakating.

266.    As a result of the dissolution of the Village Planning Board and ZBA, the Defendants argue that the issues arising from the building moratorium and the denial of Learning Tree's applications are currently before Defendant the Planning Board of the Town of Mamakating.  The Planning Board of the Town of Mamakating, the Town of Mamakating and Supervisor Herrmann are instituting the same tactical games as the Village to delay and prevent the operation of a religious school and Jewish owned businesses.

267.    The Town Defendants signed an inter-municipal agreement with the Village that was adopted by the Town Board and signed by Defendants Herrmann and Gerardi.   This

agreement allows the Town of Mamakating to continue the delay of Plaintiffs' school application. Despite the Village's ability to finalize decision on the school application, and the New York Supreme Court's order to reconsider such application, the Town Planning Board assumed jurisdiction for the purpose of further delaying the opening of the religious school.

268.    The Town Defendants have deliberately avoided making a final decision on the site plan application, choosing instead to pursue an endless series of demands and irrelevant inquiries  as a pretext for indefinite delay.  Town officials have restarted the entire review process anew almost a year after the school site plan application was first initiated with the Village.  These tactics are a constructive denial of Learning Tree's application, and have rendered the application process futile as a matter of law.

269.    There is no compelling governmental interest justifying the denial of an application to use the property at issue for a private religious school.  Despite these facts, and the pendency of the site plan application for over a year, Defendants have continued to refuse to issue site plan approval and lot consolidation for the private religious school and have continued to stymie the application in an attempt to delay the opening of the school indefinitely.  These actions unreasonably limit the Plaintiffs' ability to establish the institutions and structures necessary to practice their religion in Bloomingburg, in violation of RLUIPA.

**B.**    **The Mikvah**

270.    The use of the property located at 51 Winterton Road in Mamakating for a mikvah is a permitted use as a neighborhood house of worship within the Village Center zone in which the property is located.

271.    This property previously operated as day spa, a non-religious commercial use, as well as a single-family residence.

272.    There is no compelling governmental interest justifying the Town Zoning Board of Appeals ruling that the property cannot be used for a mikvah.

273.    The mikvah had been already determined to be a religious use by the Mamakating Building Inspector and the Town of Mamakating Planning Board which issued site plan approval for the mikvah in June of 2014 after six months of review.  Additionally and confusingly, three of the members of the Town of Mamakating Zoning Board of Appeals who ultimately determined that the property could not be used for a mikvah,  declared at the November 24, 2014 Zoning Board of Appeals meeting that  a mikvah is a religious use.

274.    Overruling the Town Planning Board and Building Inspector, the Town Zoning Board of Appeals has now denied Plaintiff Winterton Properties and the Hasidic community the use of 51 Winterton Road as a mikvah.  This arbitrary denial of use was issued without justification, rational explanation, or identification of any governmental interest, compelling or otherwise.

275.    Defendant Herrmann targeted 51 Winterton in a discriminatory manner for inspection without permission in an effort to prevent it from being converted to a mikvah for religious use.  This imposed unequal terms of land use enforcement on the current owners to which the prior, non-religious owners were not subject.

276.    The denial and the actions of Defendant Herrmann impose upon Plaintiffs a land use regulation that places an unreasonable limitation on the Plaintiffs ability to practice their religion in Mamakating, in violation of RLUIPA.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3604

### (Against the Village Defendants)

277.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

278.    The Village Defendants, by their continuing conduct, acts and legislative enactments that prevent the approval of, and construction and utilization of Chestnut Ridge, have intentionally discriminated against the Plaintiffs by making housing "unavailable" within the Village of Bloomingburg on the basis of religion in violation of 42 U.S.C. § 3604.

279.    By enacting a building permit moratorium, unequally applying existing ordinances, and issuing frivolous stop work orders, the Village Board of Trustees, along with its members, have precluded Hasidic Jewish individuals from moving into the Village, or into existing housing, by virtue of preventing the completion of any construction including Kosher kitchens.  Since the building moratorium is effective for 90 days, and can be extended for three additional 90-day periods, the moratorium can effectively keep Hasidic Jewish residents out of the Village for up to one year by simply refusing to issue any building permits.  The moratorium was extended for a second 90-day period on September 10, 2014.

280.    The Village Board of Trustees, Mayor Gerardi, James Johnson, and Katherine Roemer, through the adoption of Village Local Law No. 6 of 2014 (the building moratorium), and the application of existing ordinances, including the issuance of stop work orders, has openly discriminated against the Hasidic Jewish residents of Bloomingburg on account of their religion by prohibiting the development of the Chestnut Ridge project that would provide housing with all of the necessary religious requirements, such as Kosher kitchens.

71

281.    The election of Village and Town officials who openly support the Rural Community Coalition's cause shows a tacit approval of discrimination on the basis of religion within the community, and that the Village and Town officials are now acting on behalf of their constituents to block Hasidic Jews from building or moving into housing developments in the Village.

282.    Despite the fact that Sullivan Farms has obtained all necessary approvals from the Village of Bloomingburg for the construction of Chestnut Ridge and has acquired vested rights in the project by constructing in reliance on lawfully granted approvals over numerous years, the Village's local law prevents the issuance of the remaining building permits necessary to complete the construction of the townhomes.

283.    The overwhelming animus towards the Hasidic Jewish community has resulted in the disparate treatment of them by the Village Defendants.

284.    The Village Board of Trustees voted in favor of Local Law Nos. 4, 5 and 6. Defendants have instructed that ordinances be applied unfairly to the Hasidic Jewish Community to prevent them from moving into the area.

285.    The Village Defendants' actions, among other things, block the building of the religious school, which effectively prevents the Hasidic Jewish community from moving into Bloomingburg.

286.    Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

287.    Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

288.   Defendants have caused Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and Plaintiffs will continue to suffer such harm unless Defendants' acts and conduct complained of are permanently enjoined.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3617

#### (Against the Village Defendants)

289.   Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

290.   The Village Defendants, by their continuing conduct, acts and legislative enactments that prevent the approval of, and construction and utilization of the Chestnut Ridge project, have intentionally discriminated against the Plaintiffs on account of their having exercised rights, or having aided or encourages other persons to engage in the exercise or enjoyment of rights that are granted or protected by 42 U.S.C. § 3604 in violation of 42 U.S.C. § 3617.

291.   As a direct result of these unlawful actions by Village officials, even though the Chestnut Ridge project received all of its final land use approvals in June 2011, and has been under construction since 2012, the Village has repeatedly discriminated against the development and thereby has intentionally interfered with the Hasidic Jewish communities right to available housing.  Defendants have further sought to coerce and intimidate those who support the Hasidic Jewish community in the hopes of preventing the development of appropriate housing for the community.

292.   As discussed above, the Village Defendants have taken numerous steps to interfere with Plaintiffs' exercise and enjoyment of fundamental rights.

293.    Plaintiffs are aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and they have suffered harm, damage and injury as a result of Defendants' conduct.

294.    Plaintiffs have no adequate remedy at law for such harm, damage and injury caused by Defendants' conduct.

295.    Defendants have caused Plaintiffs to suffer, and continue to suffer irreparable harm, damage and injury, and Plaintiffs will continue to suffer such harm unless Defendants' acts and conduct complained of are permanently enjoined.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### U.S. Constitution, First and Fourteenth Amendments
### 42 U.S.C. § 1983

### (Against all Defendants)

296.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

297.    Defendants' laws and actions deprived and continue to deprive the Plaintiffs of their right to free exercise of religion: (1) by substantially burdening the Plaintiffs' religious exercise without a compelling government interest; (2) by discriminating against and targeting the Plaintiffs; (3) by prohibiting the Plaintiffs from living within the Village's jurisdiction; and (4) by treating religious assemblies and institutions on less equal terms as nonreligious assemblies and institutions.

298.    The Village Defendants are responsible for a multitude of actions that have sought to deprive, and continue to deprive, Plaintiffs of their rights, including the summary denial of the site plan application for Learning Tree by Defendants Village Planning Board, Andrew Finnema, Ann Heanelt and Joseph Roe.  Defendants Heanelt and Finnema's statements at the public

hearings related to the Learning Tree property clearly show that they performed no substantive analysis on the rightful merits of Plaintiff's site plan application, and instead summarily denied the application.

299.   The Village Defendants, including Defendants Village Board of Trustees, Frank Gerardi, Katherine Roemer, and James Johnson, have violated Plaintiffs' free exercise rights by issuing the building moratorium and authorizing the Village to transfer authority of the Village's Planning Board and Zoning Board of Appeal to the Town of Mamakating.  Defendant Gerardi signed the inter-municipal agreement transferring such authority along with Defendant Herrmann.   Defendants Gerardi, Johnson, and Village Clerk Eileen Rogers have made innumerable discriminatory comments concerning their opposition to Plaintiffs and the Hasidic community in Bloomingburg and they have instructed various code enforcement officers to treat complaints against Plaintiffs' properties differently than other properties on grounds of religious discrimination.

300.   Defendants Gerardi and Herrmann have sought personally to inspect several of Plaintiffs' properties, despite being outside their daily job requirements, in an effort to seek out and find alleged violations at Plaintiffs' properties, including, but not limited to, Plaintiffs properties at 51 Winterton Road and 79 Main Street.  For example, stop work orders have been issued and fully enforced against Plaintiffs on numerous properties, yet the Village Defendants have not sought to enforce the stop work orders issued (only after Plaintiffs filed their lawsuit) against the Quickway Thrift Shop, which remains open for business.

301.   The Town Defendants, including Defendants Bill Herrmann, Town Planning Board and Town Zoning Board of Appeals, have continued the Village Defendants' discriminatory conduct.  On behalf of the Town Board, Hermann signed an inter-municipal

agreement with the Village that accepted jurisdiction over the Village's activities.   This
agreement was for the purpose of avoiding a state court order against the Village Planning Board
and to permit the further delay and burdening of Plaintiffs' constitutional rights.

302.   Additionally, the Town Zoning Board of Appeals decided on November 24, 2014
that 51 Winterton Road could not be used as a mikvah.  The Town Zoning Board concluded that
the term, "neighborhood place of worship," did not include a mikvah, overturning a well-
reasoned determination by the Town of Mamakating Building Inspector.  The Town Zoning
Board did not provide a reasoned basis for this conclusion or explain why the mikvah could not
otherwise be justified as a permissible use in the Village Center because the Town's decision
merely continues the pattern of discriminatory acts first set out by the Village Defendants.

303.   Plaintiffs have no adequate remedy at law for the harm and damage caused by
Defendants' violation of their constitutional rights.

304.   Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable
harm, damage and injury.  Plaintiffs will continue to suffer such damages unless the Defendants'
acts and conduct complained of are permanently enjoined.

### AS AND FOR A NINTH CAUSE OF ACTION
### U.S. Constitution, First and Fourteenth Amendments
### 42 U.S.C. § 1983

### (Against all Defendants)

305.   Plaintiffs repeat and reallege all of the foregoing allegations set forth in this
Complaint with the same force and effect as though set forth at length herein.

306.   Defendants' laws and actions deprived and continue to deprive the Plaintiffs of
their right to freedom of intimate association and freedom of expressive association, as secured
by the First Amendment to the United States Constitution and made applicable to the States by

the Fourteenth Amendment, by intruding upon the Plaintiffs' right to the raising and education of children and by intruding upon the Plaintiffs' right to associate for purposes of protected expressive activity.

307.    The Village Defendants are responsible for a multitude of actions that have sought to deprive, and continue to deprive, Plaintiffs of their right to freely associate and practice religion, including the summary denial of the site plan application for Learning Tree by Defendants Village Planning Board, Andrew Finnema, Ann Heanelt, and Joseph Roe. Defendants Heanelt and Finnema's statements at the public hearings related to the Learning Tree property clearly show that they performed no substantive analysis on the rightful merits of Plaintiff's site plan application, and instead summarily denied the application.

308.    The Village Defendants, including Defendants Village Board of Trustees, Frank Gerardi, Katherine Roemer, and James Johnson, have violated Plaintiffs' constitutional rights by issuing the building moratorium and authorizing the Village to transfer authority of the Village's Planning Board and Zoning Board of Appeal to the Town of Mamakating.  Defendant Gerardi signed the inter-municipal agreement transferring such authority along with Defendant Herrmann.  Defendants Gerardi, Johnson and Village Clerk Eileen Rogers have made numerous discriminatory comments concerning their opposition to Plaintiffs and the Hasidic community in Bloomingburg and they have instructed various code enforcement officers to treat complaints against Plaintiffs' properties, including, but not limited to, Chestnut Ridge, differently than other properties.

309.    The Town Defendants, including Defendants Bill Herrmann, and Town Planning Board, have sought to continue the Village Defendants' agenda to prevent Plaintiffs from their

constitutional rights to freely associate and practice religion, for which the Learning Tree school property is a necessary building.

310.    The Village Defendants, including Defendants Village Board of Trustees, Frank Gerardi, Katherine Roemer, and James Johnson, have similarly violated Plaintiffs' ability to freely exercise their religious practice by issuing the building moratorium and authorizing the Village to transfer authority of the Village's Planning Board and Zoning Board of Appeal to the Town of Mamakating.   Defendant Gerardi signed the inter-municipal agreement transferring such authority along with Defendant Herrmann.

311.    Defendants Gerardi and Herrmann have sought to personally inspect several of Plaintiffs' properties, despite being outside their daily job requirements, in an effort to seek out and find alleged violations at Plaintiffs' properties, including, but not limited to, Plaintiffs properties at 51 Winterton Road and 79 Main Street.  For example, stop work orders have been issued and fully enforced against Plaintiffs on numerous properties, yet the Village Defendants have not sought to enforce the stop work orders issued (only after Plaintiffs filed their lawsuit) against the Quickway Thrift Shop, which is still open for business as of November 25, 2014.

312.    The Town Defendants, including Defendants Bill Herrmann, Town Planning Board and Town Zoning Board of Appeals, have continued the Village Defendants' discriminatory conduct.   On behalf of the Town Board, Hermann signed an inter-municipal agreement with the Village that accepted jurisdiction over the Village's activities.   This agreement was for the purpose of avoiding a state court order against the Village Planning Board and to permit the further delay and burdening of Plaintiffs' constitutional rights.

313.    Additionally, the Town Zoning Board of Appeals decided on November 24, 2014 that 51 Winterton Road could not be used as a mikvah.  The Town Zoning Board concluded that

the term, "neighborhood place of worship," did not include a mikvah, overturning a well-reasoned determination by the Town of Mamakating Building Inspector. The Town Zoning Board did not provide a reasoned basis for this conclusion or explain why the mikvah could not otherwise be justified as a permissible use in the Village Center because the Town's decision merely continues the pattern of discriminatory acts first set out by the Village Defendants.

314. By preventing Plaintiffs conversion of an existing day spa into a mikvah used for religious ritual bath purposes, Defendants are inhibiting Plaintiffs' ability to associate as a religious group protected by the United States Constitution.

315. Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

316. Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

### AS AND FOR A TENTH CAUSE OF ACTION
### U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983

### (Against the Village Defendants)

317. Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

318. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty or property, without due process of law."

319. The Village Defendants' laws and policies gave Village Defendants unfettered discretion to grant or deny building permit applications.

320.    The Village Defendants arbitrarily enacted the building moratorium and continue to arbitrarily apply existing ordinances against the Plaintiffs.  The Village Defendants' actions are designed to prevent the completion of both Chestnut Ridge and the Plaintiffs' religious school for children of the Jewish faith, and prevent the Hasidic Jewish community from freely practicing their religion.

321.    The Village lacks authority to impose a moratorium interfering with the beneficial enjoyment of property rights pursuant to its police powers unless it demonstrates that it has acted in response to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and that it is presently taking steps to rectify the problem.

322.    Village Local Law No. 6 of 2014 was not enacted in response to a dire necessity or crisis condition.

323.    The Village also lacks authority to impose a moratorium interfering with the beneficial enjoyment of property rights pursuant to its zoning powers unless it demonstrates that the moratorium has a valid rational basis and is reasonably limited in duration.

324.    The Village's asserted public purpose for the building permit moratorium, i.e., allocating Village resources to the investigation of community complaints about the alleged removal of asbestos and other hazardous waste materials from residences or commercial buildings in the Village and undertaking a comprehensive review of the Village's zoning code, do not provide a valid or rational basis to preclude all construction in the Village.

325.    In fact, the Village failed to provide any evidence that alleged removal of asbestos or hazardous waste materials from residences or commercial buildings has actually occurred in the Village before adopting Village Local Law No. 6 of 2014.

326.    The Village's building inspector investigated the asserted community complaints concerning hazardous waste removal and determined that no such activities were being conducted.

327.    Furthermore, the Village has not identified or taken any steps taken in the almost six months since the moratorium was enacted to address remedies for the alleged storage and disposal of asbestos and other alleged hazardous waste materials from residences or commercial buildings in the Village, provided any basis for concluding that alleviation of the alleged crisis condition necessitates a building permit moratorium of up to one year, nor has the Village provided any indication that a review of its zoning code has even begun.

328.    Thus, the building permit moratorium imposed by Village Local Law No. 6 of 2014 is not reasonably limited in duration.

329.    No substantial risk to the health, safety, or welfare of the residents of the Village exists to support the adoption of the building permit moratorium in Village Local Law No. 6 of 2014.

330.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of constitutional rights.

331.    Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are permanently enjoined.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**U.S. Constitution, Fourteenth Amendment**
**42 U.S.C. § 1983**

**(Against the Village Defendants)**

332.     Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

333.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

334.     The Village Defendants have made numerous attempts to prevent completion of Chestnut Ridge, after all requisite approvals have previously been obtained and a large portion of the construction has been completed, including the construction of a $5 million waste water treatment plant for the benefit of the Village.

335.     With the enactment of Village Local Law No. 6, the Village Defendants seek to prevent further progress on Chestnut Ridge.  Village officials have similarly ignored more than eighty building permits for townhomes and the clubhouse applied for prior to the enactment of the building moratorium.  The Village Defendants now seek to avoid all judicial action in opposition of the Village officials' and communities' goals, by seeking to dissolve the Village entirely and conspire with the Town Defendants to impede Plaintiffs' efforts.

336.     The Village Defendants have similarly taken measures, as described at length above, to frustrate and delay Plaintiffs' ability to open, operate, and have their children attend the religious school.  The Village Defendants have taken these unlawful measures based upon their discriminatory animus targeted against Hasidic Jews.

337.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

338.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983

### (Against all Defendants)

339.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

340.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

341.    Defendants' laws and actions deprived and continue to deprive Plaintiffs of their right to equal protection of the laws with respect to the actions taken in the community against members of the Jewish religion, including the refusal to grant requested approvals for a religious school, and furthermore, the efforts to dissolve the Village of Bloomingburg entirely, which would further stall any progress on the religious school necessary to provide Hasidic children with their guaranteed right to education and religious exercise.  Development of the private religious school is necessary to allow the individual Plaintiffs and all other Hasidic Jewish residents of Bloomingburg to exercise their religion in the Village.

342.    After several postponed meetings, the Village Planning Board staunchly refused to even consider the religious school proposal, instead succumbing to public opposition and

quickly dismissing the proposal without addressing any of the permissible considerations of site plan review, and therefore, arbitrarily denying Learning Tree's application.  This decision was partially based upon the Village Planning Board members' subjective belief that the Village did not need a new school, an impermissible consideration of the Village Planning Board's site plan review under New York Village Law § 7-725-a and the Village's zoning code.

343.    Defendants' laws and actions deprived and continue to deprive Plaintiffs of their right to equal protection of the laws.  Defendant Herrmann and the other Town Defendants have acted with discriminatory animus against Plaintiffs.  The Town Defendants have acted to accept jurisdiction over the Bloomingburg Planning Board in an effort to frustrate a state court challenge to the refusal to grant site plan application to the religious school and to continue to delay any progress on development of Jewish-owned properties by restarting the review process on numerous building permit applications and generally seeking to avoid completing decisions on previously approved applications now that the Planning Board's and ZBA's authority are under the Town of Mamakating's purview.

344.    The Town Defendants have deliberately avoided making a final decision on the site plan application for the private religious school, and by so doing, have constructively denied it.  Learning Tree's application has become futile as a matter of law, because it is inevitable that the Town Planning Board will refuse the application, taking into consideration the record of the Town Defendants' hostility, delay, and obstruction.

345.    The discriminatory actions of the Village Defendants and the Town Defendants to deny Plaintiffs' right to establish a religious school are part of a systemic pattern of abuse designed to deny generally Plaintiffs their right to equal protection under the law.  Numerous examples of this abuse are alleged herein, and include the recent denial by the Zoning Board of

Appeals of the Town of Mamakating of Plaintiffs' application to use 51 Winterton Road as a mikvah.

346.     These actions, therefore, have infringed upon the rights secured by the Fourteenth Amendment, by (1) discriminating against and targeting the Plaintiffs for disfavor; (2) by treating religious institutions on less than equal terms as similarly situated nonreligious institutions; and (3) by enforcing land use regulations which constitute a grave interference with fundamental rights.

347.     The Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

348.     Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**U.S. Constitution, Fourteenth Amendment**
**42 U.S.C. § 1985(3)**

**(Against all Defendants)**

349.     Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

350.     By way of their conduct as set forth in this Complaint, and acting under color of state law, the Defendants have conspired, and continue to conspire, to deprive Plaintiffs, and others similarly situated, of the equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution, on the basis of their religious beliefs and practices.

351.     Defendants' have sought to use their laws and actions to deprive Plaintiffs of equal protection of the law and have taken actions in the community against members of the Hasidic Jewish religion, including refusals to grant routine approvals for a religious school, a housing development, and other Jewish-affiliated properties; by conspiring to transfer jurisdiction from Bloomingburg to Mamakating for the purpose of additional obfuscation and delay; and by pursuing the dissolution of the Village of Bloomingburg.   Together, Defendants, by their actions, seek to disenfranchise Jewish-owned properties while at the same time ignoring regulation violations and complaints against non-Jewish owned properties.   Defendants, as officers of the municipalities plainly take action against Jewish-owned properties as a result of their positions within the community.

352.     The election of Village and Town officials who openly support the Rural Community Coalition's cause shows a tacit approval of discrimination on the basis of religion within the community, interfering with the rights of Village residents – and potential Village residents – to exercise their right to build or move into housing developments in the Village.

353.     The Town Defendants have provided support to the discriminatory efforts of the Village Defendants and have acted in furtherance of Defendants' conspiracy to abridge Plaintiffs' civil rights.   For instance, the Town Defendants have entered into inter-municipal agreement to accept jurisdiction and to permit the dissolution of the Village Planning Board for the sole purpose of evading judicial review of the Village's prior denial of the site plan application for the religious school.   They have then wielded that jurisdiction to continue to delay the opening of the school for the 2014-2015 school year.   The Town Defendants similarly entered in an inter-municipal agreement to provide the Town code enforcement officer to support the Village Defendants' discriminatory efforts.

354.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.  The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### New York State Constitution
### Article I §§ 3, 6, 11

**(Against all Defendants)**

355.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

356.    All of the Defendants, by their acts, have acted under color of law and have conspired and continue to conspire, in breach of Plaintiffs' rights to protect their interests under the law in violation of Article I, § 3 (freedom of association, exercise), Article I, § 6 (due process), Article I, § 9, and Article I, § 11 (equal protection; discrimination in civil rights) of the New York State Constitution.

357.    Thus, the Village Defendants' refusal to grant site plan approval and issue a building permit to Learning Tree for the development of the private religious school in reliance on Village Local Law No. 6 of 2014 places a substantial burden on the religious exercise of the individual Plaintiffs in violation of the Article I, § 3 of the New York State Constitution. Furthermore, the Village's staunch refusal to abide by the New York Supreme Court's order to reconsider the school's site plan application, by instead, with assistance from Town Defendants, immediately dissolving the Village's Planning Board and ZBA, only further shows the Village's ill-will towards Plaintiffs.  The Village Board has not identified any compelling governmental interest for the Village Local Law No. 6 of 2014's effective prohibition on the development of religious schools necessary to the practice of Hasidic Judaism in the Village of Bloomingburg.

358.    The stated purpose alleged by the Village Board for the building moratorium – an investigation into New York State Building Code compliance due to community complaints concerning construction activity in the Village – is merely a pretext for discrimination against the Village's Hasidic Jewish population.  In fact, complaints by disgruntled community members regarding asbestos and hazardous waste were found to be untrue by Village building inspectors.

359.    Article I, § 6 of the New York State Constitution similarly provides, in pertinent part, that "[n]o person shall be deprived of life, liberty or property without due process of law." The Hasidic community has been unceremoniously discriminated against by the continuous refusal to grant building permits and approvals for both the religious school and Chestnut Ridge in direct contravention to state court orders, which has left Village residents – and potential Village residents – without the ability to provide the housing or schooling required under the law.

360.    Article I, § 11 of the New York State Constitution similarly provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof." Actions taken by community members, Village and Town residents, and elected officials have sought to restrict Jewish entry into the community.   Jewish-owned properties receive disproportionate amounts of attention from Village officials, and are scrutinized more so than properties not owned by Jews in the Village.

361.    As a result of Defendants' actions, Plaintiffs have suffered, and continue to suffer irreparable harm, damage and injury, and the plaintiffs will continue to suffer such harm unless the Defendants' acts and conduct complained of are permanently enjoined.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION**
**Building Permit Moratorium is Arbitrary and**
**Capricious under New York State Law**

**(Against Defendants Village of Bloomingburg, Village Board of Trustees, Frank Gerardi,**
**Eileen Rogers, Katherine Roemer, James Johnson)**

362.    Plaintiffs repeat and reallege all of the foregoing allegations set forth in this Complaint with the same force and effect as though set forth at length herein.

363.    On June 12, 2014, Village Local Law No. 6 of 2014 was voted on and enacted by Defendant Village Board of Trustees, which is comprised of Defendants Gerardi, Roemer, and Johnson.

364.    Village Local Law No. 6 of 2014 establishes a moratorium suspending the receipt, consideration, or issuance of ***all*** residential and commercial building permits in the Village, essentially foreclosing all construction and repair in the Village, including of the fully approved Chestnut Ridge project and the private religious school.  The moratorium lasts 90 days by its terms, with the possibility of multiple extensions not to exceed 360 days.

365.    As Village Clerk, Defendant Eileen Rogers works with Defendant Mayor Gerardi and Village Code Enforcement Officer, Joseph Smith, to enforce the moratorium on a daily basis.  The Village lacks authority to impose a moratorium interfering with the beneficial enjoyment of property rights pursuant to its police powers.

366.    Village Local Law No. 6 of 2014 was not enacted in response to a dire necessity or crisis condition.  No substantial risk to the health, safety, or welfare of the residents of the Village exists to support the adoption of the building permit moratorium in Village Local Law No. 6 of 2014.   In the nearly six months since the moratorium's enactment, the Village Defendants have taken no action regarding the alleged comprehensive review of the Village's zoning code, nor have the Village Defendants shown any evidence of a substantial risk to the

health, safety, or welfare of the residents that existed before *or* after the moratorium so as to justify its enactment.

367.    The Village Defendants' enactment and enforcement of the building moratorium is arbitrary and capricious.

368.    Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

369.    Plaintiffs will continue to suffer irreparable harm, damage, and injury unless the building moratorium and dissolution decisions are declared null and void.

370.    For the foregoing reasons, Village Local Law No. 6 of 2014 is invalid, null, and void, and the Village should be enjoined from enforcing it.


WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(1)    enjoining Defendants, their officers, agents, employees, and attorneys from enforcing or endeavoring to prohibit Plaintiffs from using their property located in the Village of Bloomingburg or the Town of Mamakating;

(2)    enjoining the Village Defendants from enforcing or executing Village of Bloomingburg Local Law Nos. 4, 5, and 6 of 2014;

(3)    enjoining the Town Defendants from exercising any jurisdiction over applications concerning properties located in the Village of Bloomingburg;

(4)    enjoining the dissolution of the Village of Bloomingburg;

(5)    enjoining Defendants from further preventing the land use of the private religious school or the mikvah;

(6)     awarding Plaintiffs compensatory damages against Defendants in favor of Plaintiffs as the Court deems just for the loss of Plaintiffs' from fair housing, free exercise of religion, freedom of association, deprivation of Plaintiffs' right to equal protection and due process under the laws, and expenses occurred by Plaintiffs and caused by Defendants' actions in an amount to be determined at trial, but in no event less than $25,000,000.00;

(7)     awarding Plaintiffs the costs, disbursements, and attorneys' fees incurred in connection with this action pursuant to 42 U.S.C. § 1988; and

(8)     awarding Plaintiffs such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 38, Plaintiffs demands a jury on all issues so triable.

Dated: November 26, 2014          DECHERT LLP
       New York, New York

                          By:     /s/ Steven A. Engel
                                  Steven A. Engel
                                  Michael H. Park
                                  Jamie R. Hacker
                                  1095 Avenue of the Americas
                                  New York, New York 10036
                                  (212) 698-3500
                                  (212) 698-3599 (facsimile)
                                  steven.engel@dechert.com

                                  WHITEMAN OSTERMAN & HANNA LLP

                                  John J. Henry
                                  Robert S. Rosborough IV
                                  One Commerce Plaza
                                  Albany, New York 12260
                                  (518) 487-7600
                                  (518) 487-7777 (facsimile)
                                  jhenry@woh.com

                                  *Attorneys for Plaintiffs*