# UNITED STATES DISTRICT COURT
for the
SOUTHERN             DISTRICT OF             NEW YORK

| THE BLOOMINGBURG JEWISH EDUCATION CENTER, *et al*., V. THE VILLAGE OF BLOOMINGBURG, *et al.* | 7:14-cv-07250-KBF |
|---|---|

## SUBPOENA TO PRODUCE DOCUMENTS IN A CIVIL ACTION

TO:  Rural Community Coalition, Inc.
    826 Bloomingburg Road
    Bloomingburg, NY 12721

☒  *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

SEE SCHEDULE A

| Place: DECHERT LLP 1095 Avenue of the Americas New York, New York 10036 (212) 698-3500 | Date and Time: March 20, 2015, 10 a.m. |
|---|---|

☒  *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

SEE SCHEDULE B

| Place: DECHERT LLP 1095 Avenue of the Americas New York, New York 10036 (212) 698-3500 | Date and Time: April 10, 2015, 10 a.m. |
|---|---|

   The deposition will be recorded by this method: Video and stenographically

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: March 9, 2015

*CLERK OF COURT*

OR

_____   /s Jamie R. Hacker

*Signature of Clerk or Deputy Clerk*   *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing Plaintiffs who issues or requests this subpoena, are:

Jamie R. Hacker
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
jamie.hacker@dechert.com

Civil Action No 7:14-cv-07250-KBF

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

    This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____
_____ .

    Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

    I declare under penalty of perjury that this information is true.

Date: _____

                                                                       *Server's signature*

                                                                       *Printed name and title*

                                                                       *Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).**

## SCHEDULE A

The instructions, rules of construction, and definitions set forth in Rules 26, 34, and 45 of the Federal Rules of Civil Procedure and in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York are incorporated herein as if fully set forth.

## DEFINITIONS

1. The terms "**You**," "**Yours**," and "**RCC**" means the Rural Community Coalition.

2. "**Plaintiffs**" refers to the following, collectively:

    a.) "Bloomingburg Jewish Education Center" refers to The Bloomingburg Jewish Education Center, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

    b.) "Sullivan Farms" refers to Sullivan Farms II, Inc., its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

    c.) "Learning Tree Properties" refers to Learning Tree Properties, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

    d.) "Malka Rosenbaum" refers to Malka Rosenbaum, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

    e.) "Sheindel Stein" refers to Sheindel Stein, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under her control.

    f.) "Commercial Corner" refers to Commercial Corner, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

    g.) "Winterton Properties" refers to Winterton Properties, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

3. "**Defendants**" refers to the following, collectively:

a.) "Village of Bloomingburg" refers to the Village of Bloomingburg, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

b.) "Village Board of Trustees" refers to the Village Board of Trustees of the Village of Bloomingburg, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

c.) "Frank Gerardi" refers to Frank Gerardi, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

d.) "Eileen Rogers" refers to Eileen Rogers, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

e.) "Planning Board of the Village of Bloomingburg" refers to the Planning Board of the Village of Bloomingburg, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

f.) "Andrew Finnema" refers to Andrew Finnema, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

g.) "Ann Heanelt" refers to Ann Heanelt, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

h.) "Joseph B. Roe" refers to Joseph B. Roe, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

i.) "Town of Mamakating" refers to Town of Mamakating, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

j.) "Town Board of the Town of Mamakating" refers to Town Board of the Town of Mamakating, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

k.) "Zoning Board of Appeals of the Town of Mamakating" refers to Zoning Board of Appeals of the Town of Mamakating, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

l.) "Planning Board of the Town of Mamakating" refers to Planning Board of the Town of Mamakating, its agents, partners, employees, representatives,

attorneys, and all persons acting or purporting to act on its behalf or under its control.

m.) "Katherine Roemer" refers to Katherine Roemer, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

n.) "James Johnson" refers to James Johnson, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

4. The terms "**Village**" or "**Bloomingburg**" refer to the Village of Bloomingburg, New York.

5. The terms "**Town**" or "**Mamakating**" refer to the Town of Mamakating, New York.

6. The term "**Chestnut Ridge**" means the Villages of Chestnut Ridge townhome development located in Bloomingburg, New York.

7. The term "**Religious School**" means the property located at 132 Main Street in Bloomingburg, New York, owned by Learning Tree Properties and to be operated by Bloomingburg Jewish Education Center.

8. The term "**Mikvah**" refers to the property owned by Winterton Properties at 51 Winterton Road in Mamakating, New York, to be operated as a ritual bathing facility.

9. The term "**Other Plaintiff Properties**" means any properties owned by Plaintiffs other than Chestnut Ridge, the Religious School, or the Mikvah, including, but not limited to 79 Main Street, located in Bloomingburg, New York.

10. The term "**communication**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). Local Civil Rule 26.3(c)(1). This includes, but is not limited to any statement, admission, denial, inquiry, discussion, conversation, negotiation, agreement, contract, understanding, meeting, telephone conversation, letter, correspondence,

memorandum, note, telegram, telex, e-mail, voice mail, text, diskette, advertisement or any other form of oral, written, electronic or other exchange of words, thoughts or ideas to any other person or entity, whether in person, in a group, in a professional or private capacity, by telephone, by letter, by Telex, by e-mail, by posting to a website, social media platform or other dissemination or publication via the Internet, or by other process, electronic or otherwise.

11. The term "**concerning**" means relating to, referring to, describing, evidencing or constituting. Local Civil Rule 26.3(c)(7).

12. The term "**document**" (or "**documents**") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes writings, drawings, maps, designs, plans, graphs, charts, photographs, video recordings, sound recordings, voice mail, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. Fed. R. Civ. P. 34(a); Local Civil Rule 26.3(c)(2).

13. The term "**person**" means any natural person, or any business, legal, or governmental entity, or association. Local Civil Rule 26.3(c)(6).

## INSTRUCTIONS

1. Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

2.	A document is deemed in your actual or constructive possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.  For the avoidance of doubt, a document is deemed in your actual or constructive possession, custody, or control if it is accessible on a network or server that you maintain.

3.	The specifications of this Subpoena are to be construed as being inclusive rather than exclusive.  Thus, words importing the singular include the plural; words importing the plural include the singular; words importing one gender includes both genders; the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the document request inclusive; the word "all" means "any and all" and the word "any" means "any and all." Local Civil Rule 26.3(c)(7).

4.	In producing responsive documents, you should furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your agents, employees, or representatives, including your attorneys or their agents, employees, or representatives.

5.	You are to produce any and all drafts and copies of each document that is responsive to any specification of this subpoena and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

5

6. With respect to Electronically Stored Information ("ESI"):

    a.) All electronic mail and spreadsheets responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

    b.) All other documents responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in properly utilized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

    c.) All documents responsive to this subpoena are to be produced with the metadata normally contained within such documents, and the necessary Concordance or Introspect load files. If such metadata is not available, each document is to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the document.

    d.) Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Plaintiffs' counsel. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost you claim is associated with the search or production of such ESI.

7. All documents that are physically attached to each other when located for production are to be left so attached when produced. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs or any other method, are to be left so segregated or separated when produced. Documents are to be produced in the order in which they were maintained and in the files in which they were found.

8.      If any document, or any part of a document, called for by this Subpoena has been destroyed, discarded, lost, or otherwise disposed of or placed beyond your custody or control, you are to furnish a list identifying each such document by: (i) date, (ii) author; (iii) recipient(s); (iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter; (vi) the document's present or last-known location or custodian; (vii) the date of the document's destruction or other disposition; (viii) the reason for such destruction or other disposition; and (ix) the person authorizing such destruction or other disposition.

9.      Each specification of this subpoena requires production in full, without abbreviation, redaction, or expurgation, of any responsive documents.  If any responsive document is not or cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document is being withheld, and the reason(s) it is being withheld.

10.     Documents not otherwise responsive to specifications of this subpoena are to be produced if such documents mention, discuss, refer to, or explain the documents which are responsive to this subpoena, or if such documents are attached to documents responsive to this subpoena and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

11.     If in responding to this subpoena, you encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

12.      If a privilege is claimed as the basis for not producing any document, you are to furnish a privilege log setting forth, for each such document:  (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; (ii) the type of document, e.g., letter,

7

memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients to each other.  Local Civil Rule 26.2(a).

13. If after producing the documents or things, You obtain or become aware of any further documents or things, which are responsive to this Subpoena, you are required to timely produce such additional documents or things.

14. The requests contained in this Subpoena shall be deemed continuing, and any information, communication or document obtained subsequent to production which would have been provided or produced had it been available or its existence been known at the time of the response shall be provided or produced forthwith in the form of a supplemental response as required by the Federal Rules of Civil Procedure.

## **DOCUMENTS TO BE PRODUCED**

1. All Documents and Communications, including all e-mails, with William Herrmann, Frank Gerardi, Brenda Giraldi, Al Fusco, Jr., Al Fusco III, Joseph Smith, Eileen Rogers, James Johnson, Katherine Roemer, Catherine Herrmann, Clifford Teich, Mort Starobin, Andrew Finnema, Ann Heanelt, or any representative of the Town or the Village.

2. All Documents and Communications, including all e-mails, Facebook postings, comments posted on Internet web pages, or any other social media postings, concerning development in the Town or the Village, including, but not limited to, Chestnut Ridge, the Religious School, the Mikvah, any Other Plaintiff Properties; any Plaintiff; Shalom Lamm; Ken Nakdimen; any affiliate of Plaintiffs; Hasidic Jews; or any person or organization affiliated with the Hasidic Jewish community.

3. All Documents and Communications, including all e-mails, Facebook postings, comments posted on Internet web pages, or any other social media postings, with any person affiliated with the RCC or the Rural Heritage Party, including Anita Hoppe, Leslie Weinstein, David Berg, and Holly Roche concerning development in the Town or the Village, including, but not limited to, Chestnut Ridge, the Religious School, the Mikvah, any Other Plaintiff Properties; any Plaintiff; Shalom Lamm; Ken Nakdimen; any affiliate of Plaintiffs; Hasidic Jews; or any person or organization affiliated with the Hasidic Jewish community.

4. All Documents and Communications, including all e-mails, concerning upcoming or past elections in the Town or the Village, including any scripts, talking points, or electioneering materials.

5. All Documents and Communications, including all e-mails, Facebook postings, comments posted on Internet web pages, or any other social media postings, concerning any actions taken or statements made by any Defendant, or any other employee, official, or representative of the Village or the Town concerning Hasidic Jews, Plaintiffs, or their affiliates, or that otherwise might lead to the discovery of evidence that Defendants treated any Plaintiff differently, unfairly or punitively relative to the treatment by Defendants of non-Jewish persons or organizations.

6. All Documents and Communications, including all e-mails, Facebook postings, comments posted on Internet web pages, or any other social media postings, concerning any complaints made in connection with Chestnut Ridge, the Religious School, the Mikvah, Other Plaintiff Properties, or any other properties thought to be affiliated with Shalom Lamm, Kenneth Nakdimen, and/or any Hasidic Jewish person in the Village or Town.

7. All Documents and Communications, including all e-mails, Facebook postings, comments posted on Internet web pages, or any other social media postings, concerning any complaints made in connection with properties in the Town or Village not affiliated or thought to be affiliated with Shalom Lamm, Kenneth Nakdimen, or Hasidic Jewish persons.

8. All Documents and Communications, including all e-mails, between the RCC or its members and any government entity, including the Federal Bureau of Investigation, concerning the registration of voters in Bloomingburg, allegations or evidence of voter fraud, Chestnut Ridge, the Religious School, the Mikvah, Other Plaintiff Properties, or any other properties thought to be affiliated with Shalom Lamm and/or Kenneth Nakdimen in the Village or Town.

9. All Documents and Communications reflecting the membership of the RCC, all donors and prospective donors to the RCC, mailing or e-mail lists of those receiving communications and solicitations from the RCC, and any filings with the State or other governmental entity under the election, corporation, or tax laws.

## SCHEDULE B

The instructions, rules of construction, and definitions set forth in Rules 26, 34, and 45 of the Federal Rules of Civil Procedure and in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York are incorporated herein as if fully set forth.

## DEFINITIONS

1. The terms "**You**," "**Yours**," and "**RCC**" means the Rural Community Coalition.

2. "**Plaintiffs**" refers to the following, collectively:

   a.) "Bloomingburg Jewish Education Center" refers to The Bloomingburg Jewish Education Center, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

   b.) "Sullivan Farms" refers to Sullivan Farms II, Inc., its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

   c.) "Learning Tree Properties" refers to Learning Tree Properties, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

   d.) "Malka Rosenbaum" refers to Malka Rosenbaum, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

   e.) "Sheindel Stein" refers to Sheindel Stein, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under her control.

   f.) "Commercial Corner" refers to Commercial Corner, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

   g.) "Winterton Properties" refers to Winterton Properties, LLC, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

3. "**Defendants**" refers to the following, collectively:

a.) "Village of Bloomingburg" refers to the Village of Bloomingburg, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

b.) "Village Board of Trustees" refers to the Village Board of Trustees of the Village of Bloomingburg, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

c.) "Frank Gerardi" refers to Frank Gerardi, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

d.) "Eileen Rogers" refers to Eileen Rogers, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

e.) "Planning Board of the Village of Bloomingburg" refers to the Planning Board of the Village of Bloomingburg, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

f.) "Andrew Finnema" refers to Andrew Finnema, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

g.) "Ann Heanelt" refers to Ann Heanelt, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

h.) "Joseph B. Roe" refers to Joseph B. Roe, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

i.) "Town of Mamakating" refers to Town of Mamakating, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

j.) "Town Board of the Town of Mamakating" refers to Town Board of the Town of Mamakating, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

k.) "Zoning Board of Appeals of the Town of Mamakating" refers to Zoning Board of Appeals of the Town of Mamakating, its agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on its behalf or under its control.

l.) "Planning Board of the Town of Mamakating" refers to Planning Board of the Town of Mamakating, its agents, partners, employees, representatives,

attorneys, and all persons acting or purporting to act on its behalf or under its control.

m.) "**Katherine Roemer**" refers to Katherine Roemer, her agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on her behalf or under his control.

n.) "**James Johnson**" refers to James Johnson, his agents, partners, employees, representatives, attorneys, and all persons acting or purporting to act on his behalf or under his control.

4. The terms "**Village**" or "**Bloomingburg**" refer to the Village of Bloomingburg, New York.

5. The terms "**Town**" or "**Mamakating**" refer to the Town of Mamakating, New York.

6. The term "**Chestnut Ridge**" means the Villages of Chestnut Ridge townhome development located in Bloomingburg, New York.

7. The term "**Religious School**" means the property located at 132 Main Street in Bloomingburg, New York, owned by Learning Tree Properties and to be operated by Bloomingburg Jewish Education Center.

8. The term "**Mikvah**" refers to the property owned by Winterton Properties at 51 Winterton Road in Mamakating, New York, to be operated as a ritual bathing facility.

9. The term "**Other Plaintiff Properties**" means any properties owned by Plaintiffs other than Chestnut Ridge, the Religious School, or the Mikvah, including, but not limited to 79 Main Street, located in Bloomingburg, New York.

10. The term "**communication**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). Local Civil Rule 26.3(c)(1). This includes, but is not limited to any statement, admission, denial, inquiry, discussion, conversation, negotiation, agreement, contract, understanding, meeting, telephone conversation, letter, correspondence,

memorandum, note, telegram, telex, e-mail, voice mail, text, diskette, advertisement or any other form of oral, written, electronic or other exchange of words, thoughts or ideas to any other person or entity, whether in person, in a group, in a professional or private capacity, by telephone, by letter, by Telex, by e-mail, by posting to a website, social media platform or other dissemination or publication via the Internet, or by other process, electronic or otherwise.

11. The term "**concerning**" means relating to, referring to, describing, evidencing or constituting.  Local Civil Rule 26.3(c)(7).

12. The term "**document**" (or "**documents**") is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes writings, drawings, maps, designs, plans, graphs, charts, photographs, video recordings, sound recordings, voice mail, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.  Fed. R. Civ. P. 34(a); Local Civil Rule 26.3(c)(2).

13. The term "**person**" means any natural person, or any business, legal, or governmental entity, or association.  Local Civil Rule 26.3(c)(6).

## INSTRUCTIONS

1. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, RCC is directed to designate one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf and who have knowledge of and are adequately prepared to testify concerning the topics enumerated below.

2. Unless otherwise indicated, the following topics cover the period from January 1, 2012 through the present.

## DEPOSITION TOPICS

1. The motivation for founding the RCC.

2. A list of the RCC's members.

3. Discussions with William Herrmann, Frank Gerardi, Brenda Giraldi, Al Fusco, Jr., Al Fusco III, Joseph Smith, Eileen Rogers, James Johnson, Katherine Roemer, Catherine Herrmann, Clifford Teich, Mort Starobin, Andrew Finnema, Ann Heanelt, or any representative of the Town or the Village.

4. Discussions with RCC members, potential members, or the Rural Heritage Party, including Anita Hoppe, Leslie Weinstein, David Berg, and Holly Roche concerning development in the Town or the Village, including, but not limited to, Chestnut Ridge, the Religious School, the Mikvah, any Other Plaintiff Properties; any Plaintiff; Shalom Lamm; Ken Nakdimen; any affiliate of Plaintiffs; Hasidic Jews; or any person or organization affiliated with the Hasidic Jewish community.

5. Discussions concerning upcoming or past elections in the Town or the Village, including any scripts, talking points, or electioneering materials.

6. Discussions concerning any actions taken or statements made by any Defendant, or any other employee, official, or representative of the Village or the Town concerning Hasidic Jews, Plaintiffs, or their affiliates, or that otherwise might lead to the discovery of evidence that Defendants treated any Plaintiff differently, unfairly or punitively relative to the treatment by Defendants of non-Jewish persons or organizations.

7. Discussions concerning any complaints made in connection with Chestnut Ridge, the Religious School, the Mikvah, Other Plaintiff Properties, or any other properties thought to

be affiliated with Shalom Lamm, Kenneth Nakdimen, and/or any Hasidic Jewish person in the Village or Town.

8. Discussions concerning any complaints made in connection with properties in the Town or Village not affiliated or thought to be affiliated with Shalom Lamm, Kenneth Nakdimen, or Hasidic Jewish persons.

9. Discussions between the RCC or its members and any government entity, including the Federal Bureau of Investigation, concerning the registration of voters in Bloomingburg, allegations or evidence of voter fraud, Chestnut Ridge, the Religious School, the Mikvah, Other Plaintiff Properties, or any other properties thought to be affiliated with Shalom Lamm and/or Kenneth Nakdimen in the Village or Town.