UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
THE BLOOMINGBURG JEWISH EDUCATION
CENTER, et al.

                            Plaintiffs,                     **MOVANTS' MEMORANDUM ON MOTION TO QUASH SUBPOENAS**

        -against-

THE VILLAGE OF BLOOMINGBURG, et al.        Docket No.

                           Defendants.             14-cv-07250 (CS)
------------------------------------------------------------------------x

      Movants Rural Community Coalition, Inc., Holly Roche, Teek Persaud and Anita Hoppe, by their attorney Alan M. Goldston, submit this Memorandum of Law in Support of their motion to quash certain discovery subpoenas, or for a protective order and relief from the provisions thereof.  For the facts, reference is made to the Declaration of Alan M. Goldston dated March 19, 2015, the Affidavit of Teekaram Persaud sworn March 19, 2015, and the Exhibits filed therewith.

SYNOPSIS

      Movants are not parties to this action, and are a non-profit civic association and three local residents engaged in First Amendment protected activities of assembly, petition and speech. Concerning a controversial real estate development project in their rural neighborhood.  The subpoenas are issued by their political antagonist, a developer and related persons,  who in this action alleged that local governmental bodies and officials have unlawfully discriminated against the developer and its affiliates. Party discovery has not been completed (or, in some instances, even conducted), and there are dismissal motions pending.

The subpoenas at issue, as to documents, are extremely broad, non-specific and intrusive, calling for virtually all documents in the possession of this advocacy organization and its directors and activists, whether or not relating to any of the government action which is the subject of the complaint, and specifically including the advocacy organizations membership, donor and mailing lists, and the witnesses' communications with, *inter alia*, the Federal Bureau of Investigation, which is conducting a criminal investigation of the real estate development and issues of voter fraud.  The subpoenas also purport to require the individual witnesses and the organization to appear for testimony at a location several hours remote from their place or work and residence. The subpoena to the organization also specifies that the topics to be covered in the deposition include the "motivation for founding" the organization, its' membership, and a wide range of communications among the organization's members or communications with or about any of the parties in the action.

Movants contend that the subpoenas are offensively overbroad, constituting nothing less than a fishing expedition, and inappropriately intrusive of and a burden upon, Constitutionally-protected activity; that the overbreadth of the document demands and the "list of deposition topics" are sufficient to demonstrate also plaintiffs' bad faith in issuing such subpoenas; and that the subpoenas should be quashed.

ARGUMENT

The Supreme Court of the United States recognized in 1958 that the records of a public advocacy organization and, by extension, lists of and communications among its members, must enjoy a broad immunity from compulsory disclosure lest  such disclosure adversely impact the right of its members to pursue their lawful private interests privately, and to associate freely with

others in so doing. *NAACP v. Alabama*, 357 US 449 (1958). Although that case dealt specifically with an attempt by the State of Alabama to compel such disclosure, the principal of broad protection for such records and information has come to be generally recognized, giving rise to a presumption that an attempt to subpoena such material is inherently burdensome and facially unreasonable. See, generally, on Constitutional considerations on privacy and associational records, THE CONSTITUTIONAL RIGHT TO CONFIDENTIALITY at 51 George Washington Law Review 133 (1988). As Judge Gagliardi wrote in *FEC v. Hall-Tyner* (524 F. Supp. 955 (SDNY 1981):

> It is well established that the compelled disclosure of members in or contributors to an organization "can seriously infringe on privacy of association and belief guaranteed by the First Amendment." <u>Buckley v. Valeo,</u> <u>424 U.S. 1</u>, 64, <u>96 S.Ct. 612</u>, 656,<u>46 L.Ed.2d 659 (1976)</u>; *see, e. g.,* <u>Baird v. State Bar of Arizona,</u> <u>401 U.S. 1</u>, <u>91 S.Ct. 702</u>, <u>27 L.Ed.2d 639 (1970)</u>; <u>Shelton v. Tucker,</u> <u>364 U.S. 479</u>, <u>81 S.Ct. 247</u>, <u>5 L.Ed.2d 231 (1960)</u>; <u>Bates v. Little Rock,</u> <u>361 U.S. 516</u>, <u>80 S.Ct. 412</u>, <u>4 L.Ed.2d 480 (1960)</u>; <u>NAACP v. Alabama,</u> <u>357 U.S. 449</u>, <u>78 S.Ct. 1163</u>, <u>2 L.Ed.2d 1488 (1958)</u>.

Moreover, "[u]nder Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). *John Wiley & Sons, Inc. v. Doe,* 284 FRD 185 (SDNY 2012). *A fortiori*, a subpoena intruding into this protected area is, at least, presumptively burdensome, satisfying, at first instance, movants' obligation to showing burden. Where a <u>non-party</u> moves against a broad subpoena, and, as here, burdensomeness must be presumed, the party who issued the subpoena has the burden of "establish[ing] a need for the breadth of the information sought in response to [a non-party's]

*prima facie* showing that the discovery [would be] burdensome."[2] *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 423-24 (6th Cir. 1993). And although a plaintiff "should not be denied access to information necessary to establish [its] claim, neither may a plaintiff be permitted to 'go fishing.'" *In re Caresource Management Group*, 289 FRD 251 (S. D. Ohio, 2013), citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). Undue burden can be found where a subpoena is facially overbroad. Williams v. City of Dallas, 178 FRD 103 (DC. Tex. 1998), Linder v. Calero-Portocarrero (180 FRD 168, DCDC 1998).

Where the demands "are too broad and sweeping [they] … should be quashed. Their materiality and relevancy are not apparent. Under the circumstances they are unreasonable. "Fishing expeditions" for the purpose of constructing a case are frowned on by the courts. *403-411 East 65th Street Corp. v. Ford Motor Co.* , 27 F. Supp. 37 (SDNY 1939), citin**g** *Carpenter v. Winn*, 221 U.S. 533, 31 S.Ct. 683, 55 L.Ed. 842.

We ask the Court to bear in mind that it is not just one or two of the document demands (and, presumably, subjects for deposition) which are overbroad, unduly burdensome and intrusive, or prohibitively vague or absurdly overreaching. Each and every one of the so-called "specifications of documents", to which the Court is referred for the full text thereof, is as bad or worse. First, the eight numbered demands which are common to all four subpoenas at issue:

#1 demands, in substance, anything with or relating to any of the defendants, unrestricted by any requirement of time period, subject matter, or anything else.

#2 demands, in substance, anything with or relating to any of the plaintiffs, or any of the developers (Messrs. Lamm and Nakdimen); or anyone "affiliated with the plaintiffs" (whatever that means); or Hasidic Jews in general, or anyone "affiliated with

the Hasidic Jewish community", without regard to form, subject matter, time period, authorship, or anything else.

#3 similarly launches an open-ended and unrestricted investigation of RCC, its officers, other subpoenaed witnesses, broadly, then appends:

"concerning [i] development in the Town or the Village, including, but not limited to, Chestnut Ridge, the Religious School, the Mikvah, any Other Plaintiff Properties; [or ii] any Plaintiff; Shalom Lamm; Ken Nakdimen; [or iii] any affiliate of Plaintiffs; [or iv] Hasidic Jews; or [v] any person or organization affiliated with the Hasidic Jewish community"

#4 we quote in full:

"All Documents and Communications, including all e-mails, concerning upcoming or past elections in the Town or the Village, including any scripts, talking points, or electioneering materials."

# 5 Repeats the earlier demands, to which it appends

"or that otherwise might lead to the discovery of evidence that Defendants treated any Plaintiff differently, unfairly or punitively relative to the treatment by Defendants of non-Jewish persons or organizations".

# 6 and # 7 demand, in substance, anything, ever, by, from or to anyone, concerning complaints about either (this is # 6) real estate that belongs to any of the plaintiffs, or the named developers[who are not parties], or any property of anyone

"affiliated with a Hasidic Jewish person" or (ii) (this is #7) real estate that belongs to *any else not included in the coverage of # 6*.

#8, in each of the four subpoenas, is looking for, among other things, evidence being gathered by the FBI in its criminal investigation of the voter fraud by which the developer and other persons have been attempting their hostile takeover of Bloomingburg. It demands;

"All Documents and Communications, including all e-mails, between the RCC or its members and any government entity, including the Federal Bureau of Investigation, <u>concerning the registration of voters in Bloomingburg, allegations or evidence of voter fraud,</u> Chestnut Ridge, the Religious School, the Mikvah, Other Plaintiff Properties, or any other properties thought to be affiliated with Shalom Lamm and/or Kenneth Nakdimen in the Village or Town". [This is not a subject remotely related to the allegations of the complaint].

Finally, a ninth numbered demand appears in the RCC subpoena, which brings us back to *NAACP v. Alabama*:

"All Documents and Communications reflecting the membership of the RCC, all donors and prospective donors to the RCC, mailing or e-mail lists of those receiving communications and solicitations from the RCC, and any filings with the State or other governmental entity under the election, corporation, or tax laws".

Here, plaintiffs fishing expedition seeks information which RCC and its leaders may have supplied to government agencies, including (explicitly) materials for the FBI's criminal investigation of voter fraud in the plaintiffs "hostile takeover" of the Village of Bloomingburg. Cf. *U.S. v. Santiago-Lugo*, DC Puerto Rico 1995, citing Wright & Miller, Federal Practice §

2457, in which it was held that the use of a civil subpoena to obtain confidential police records is an "improper fishing expedition*".*

## SUMMARY AND CONCLUSION

Upon the foregoing, and the accompanying declaration, affidavit and exhibits, it is manifest that the subpoenas at bar grossly overreach, and grossly intrude into the movants' protected communications and activities. Enforced compliance would tend to chill Constitutional protected liberties.  The demands within the subpoenas are patently and foreseeably unduly burdensome.  Plaintiffs' improper purpose may not only be gleaned from the generally overwrought demands, but is especially clear from the demands which are wholly extraneous to the litigation at bar, such as the one seeking information about the  FBI investigation into voter fraud in the Village of Bloomingburg (demand # 8) and RCC's tax returns (demand #9).  The subpoenas must be quashed, and, based on the evident bad faith of plaintiffs and their  counsel, movants should be awarded their costs and expenses, including the reasonable fees of movants' counsel.

DATED:       Scarsdale, New York
             March 20, 2015

*Alan M. Goldston*

Alan M. Goldston, Esq.
*Attorney for the Movants*
164 White Rd.
Scarsdale, NY 10583
914-907-2234
Fx 914-725-7499
Email nycounsel@msn.com