

1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**BENJAMIN M. ROSE**

ben.rose@dechert.com
+1 212 641 5683 Direct
+1 212 698 3599 Fax

November 20, 2015

**VIA ECF**

Hon. Katherine B. Forrest
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg*, No. 14-cv-07250 (KBF)

Dear Judge Forrest:

I write in opposition to the Town Defendants' November 17, 2015 motion to compel (the "Motion") Plaintiffs to produce with respect to the Town's First Set of Document Requests ("Requests").

At the last status conference, the Court correctly observed that the Town's "[e]ighty-eight separate requests sound[] awfully broad." Oct. 14, 2015 Tr. 7:10-11. Indeed, fully half of those requests are recycled directly from the Town's dismissed RICO action. They are not relevant to the allegations in the Complaint or to any bona fide defense. Discovery so expanded would prove to be a costly and enormous distraction, because these collective requests call for the production of eight years of e-mails and documents, and would no doubt require the testimony of a dozen extraneous witnesses. The Town is plainly pursuing these requests in an effort to litigate the dismissed RICO case.

Notably, the Town's approach to discovery stands in marked contrast with that of its co-defendant, the Village, which has agreed to reasonable discovery concerning the relevant subject matter and the relevant time period. While Plaintiffs and the Village completed the first round of document discovery without the Court's intervention, the Town has obstructed Plaintiffs' requests at every turn, delayed its own written production, and now has served ridiculous demands requiring a further waste of judicial resources.

**1. The Town's RICO-Related Requests (Requests 27-30, 34, 38, 49, 52-88)**

The Town's 44 requests are lifted directly out of *Town of Mamakating v. Lamm*, No. 1:15-cv-02865 (KBF). *See* Sep. 11, 2015 Order and Op. [Doc. 58]. The Court dismissed the RICO Complaint with prejudice on several grounds and observed that there were "numerous additional grounds [raised] in support of [dismissal], most of which (including argument as to the merits of the action) would warrant serious consideration by this Court," but that it was unnecessary to reach such matters. *See id.* at 17 n.7. The Court thus is familiar with the threadbare and implausible nature of these claims. Having had the RICO case dismissed, the Town now asks to pursue discovery here as though those allegations were part of this case. They are not.





The Town's RICO-related requests are a prototypical example of an effort to pursue discovery that is irrelevant to this matter and, at a minimum, not "proportional to the needs of the case," particularly with respect to "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b) (effective Dec. 1, 2015); *see also Evans v. Calise*, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994) ("The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."); *Okolie v. Laufer*, 2014 WL 1315311, at *5 (E.D.N.Y. March 31, 2014). The Town's 44 requests seek communications, internal documents, and business records from 2006 to 2014 that do not relate to any claims or to any bona fide defenses.

In its five-page Motion, the Town avoids offering an individualized justification for any of the 44 requests. The Town instead contends that, taken as a whole, the "requests concern the bribery of officials, voter fraud, and other deceptive acts perpetrated by the Developers dating back to ***2006***," eight years before this action was filed and six years before any acts challenged in the Complaint. Motion at 1. Yet these collateral matters, libelous and absurd as they are, simply have nothing to do with this lawsuit. The Town has never claimed that any of its municipal actions were a response to "bribery," "voter fraud," or "other deceptive acts," and it could not do so.

Plaintiffs proposed to limit discovery to relevant matters occurring after January 1, 2012, because that deadline closely precedes the emergence of rumors of Hasidic migration and the controversy over Chestnut Ridge. Even though the challenged discriminatory acts did not start until late 2013 (when the Village denied the religious school's site plan application), Plaintiffs have agreed to produce relevant documents as early as 2012. There is no basis, however, for ancillary discovery into communications and business transactions that occurred years before and that do not form the basis for any of the challenged land use decisions. Those matters fall well outside any reasonable scope of discovery under Federal Rule of Civil Procedure 26.

**a. The Requested Discovery Does Not Relate To Any Claim Against The Town**

The Federal Rules require that discovery be limited to "any party's claim or defense." Fed. R. Civ. 26(b)(1). As the Court recognized, Plaintiffs here allege that "defendants are working together to prevent Hasidic Jews from moving into the vicinity of Bloomingburg, New York" by "obstructing the completion of a housing development project," "impeding the opening of the Bloomingburg Jewish Education Center," and "preventing a property in Bloomingburg from being converted into a mivkah." June 9, 2015 Op. (Dkt. 132). In turn, Defendants have sought to justify their municipal actions by reference to appropriate "health, safety, and welfare" concerns. Village Zoning Code § 11-4. Thus, with respect to the religious school, the Town claims that it assumed Planning Board jurisdiction to "expedite the review of all matters then pending before the Village Planning Board," Town Mot. to Dismiss at 3 (Dkt. 71), and since then has had to manage "very serious concerns" related to "adequate water, traffic safety, and fire, safety" at the religious school. *Id.* at 5. With respect to the mikvah, the Town Zoning Board supposedly denied the building permit because it could not be zoned as a "house of worship" (a conclusion since





vacated by the Third Department). *See Winterton Props., LLC v. Town of Mamakating Zoning Bd. of Appeals*, 132 A.D.3d 1141 (N.Y. App. Div. 2015).

Accordingly, the actual disputed facts turn upon whether the Town's actions, since Bill Herrmann became supervisor on January 1, 2014, were motivated by anti-Hasidic sentiment or by legitimate health and safety concerns. The Town has not, and could not, justify any decisions based upon prior acts of wrongdoing. In addition, since the claims turn upon ***Defendants'*** motivations, there is no plausible reason to engage in discovery concerning matters of which Defendants had no knowledge, since information learned from such discovery could not have formed the basis for any municipal action.

Drawing from the RICO suit, the Town claims that it needs discovery into Plaintiffs' "campaign corruptly to railroad a tiny, quiet rural community with a massive 400-unit high-density development" with "none of the ethics, transparency, review, oversight, environmental review, or public comment such a project requires." Motion at 2-3. Yet the Town does not assert how these allegations are relevant to a single claim or, with one exception, any defense. As noted, ***the Town*** has never sought to justify any of its challenged actions since 2013 concerning Chestnut Ridge, the religious school, or the mikvah by virtue of this history. In addition, the Town seeks discovery in alleged misdeeds against ***the Village***, and the Town offers no explanation as to how those matters would bear upon ***the Town's*** claims or defenses.

Forced to offer specifics, the Town argues that it needs discovery into the "deceptive acts of developers like Shalom Lamm and Kenneth Nakdimen" and their many "violations of state and federal law" over eight years, because those allegations are relevant to assessing whether Mr. Herrmann's Rural Heritage Party ran on a "platform of reform, good government, and responsible development." Motion at 3. Whether Mr. Herrmann's 2013 campaign was rooted in his concerns for "good government" or in his belief that the Hasidim did not fit within Mamakating's "rural heritage" may be a disputed fact, but it will not be proven by a collateral inquiry into "deception" or "bribery" from years before, nor by an inquiry into "voter fraud" alleged to have occurred ***after*** Mr. Herrmann's election. The proof concerning the reasons for Mr. Herrmann's political campaign would lie entirely in his own hands or in the hands of his political supporters. Discovery into years of prior transactions—in which Mr. Herrmann was not involved—would not shed any light upon his motivations.

The Town also suggests that, if Defendants could prove that Plaintiffs had previously engaged in collateral "bad acts," Motion at 3, then a jury might conclude that "Defendants acted based on suspicions of bad acts, and not for discriminatory reasons." *Id.* But the Town does not identify any action that it took, or failed to take, because of "suspicions of bad acts." The Town has always justified its actions based upon "health, safety, and welfare" concerns. It is those motivations that are at issue, not whether or not Mr. Herrmann rightly or wrongly has any suspicions about the developers' past actions.

**b. The Requested Discovery Does Not Relate To Any Bona Fide Defense**

The Town argues that these matters are relevant to its "***Fifteenth*** Affirmative Defense," which contends that "Plaintiffs lack clean hands and lack authority to bring this case" because they had previously





committed the various alleged misdeeds. The Town does not cite any caselaw, however, to suggest that proof of those misdeeds would constitute a bona fide defense. To the contrary, the law is clear that there is no "unclean hands" defense to a statutory anti-discrimination lawsuit. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995) (recognizing that the "unclean hands" defense "has not been applied where Congress authorized broad equitable relief to serve important national policies");[1] *see also Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968) (same under the antitrust laws); *Mancuso v. Douglas Elliman*, 808 F.Supp.2d 606, 631-32 (S.D.N.Y. 2011) (applying *McKennon* to the Fair Housing Act). If Plaintiffs prove that the Town engaged in intentional religious discrimination in violation of the Fair Housing Act, RLUIPA, and Section 1983, then they are entitled to recover, regardless of any prior "bad acts" committed years before. The Town's "unclean hands" defense lacks any legal merit and certainly cannot be used to sweep in eight years of collateral discovery.

**2. The Town's Overbroad Requests (Requests 5, 9, 16-17, 20-21, 39, 44-45, 47-48)**

Apart from the RICO-related allegations, the Town objects to Plaintiffs' efforts to narrow patently overbroad requests. With respect to each of these requests, Plaintiffs agreed to produce but objected to overbroad definitions that would capture irrelevant subject matter. In that regard, Plaintiffs' objections tracked the Court's prior guidance on Plaintiffs' motion to compel. There, the Court observed that certain generic requests "need[] to be narrowed to the particular projects and concerns and reasons for concerns raised by plaintiffs directly in their papers. Those should be limited to the particular construction projects and building projects and permitting process and elections that are at issue. . . ." Sep. 11, 2015 Tr. 13:25-14:17. Similarly here, for each one of the disputed requests, Plaintiffs agreed to produce, but objected only to limit the scope to relevant matters.

- Request 44 demanded that Plaintiffs provide "all statements . . . of every person with knowledge of the events and allegations" in the Complaint, evidently without regard to when those statements were made or whether they concerned the Complaint. Plaintiffs agreed to provide all statements "limited to the relevant individuals, claims, and properties in this action."

- Similarly, the Town demanded that Plaintiffs provide "all documents" concerning or relating to any Defendant, ***any*** mikvah, the religious school, and Chestnut Ridge, regardless of the subject matter, timing, or relevance of those documents to any disputed issue. (Requests 5, 9, 16-17, 20-21).

---

[1] In *McKennon*, 513 U.S. 352, the Court held that "after-acquired evidence of wrongdoing" would not be a defense under the Age Discrimination in Employment Act ("ADEA") and rejected the "unclean hands" defense asserted by the employer. *See id.* at 356, 361. The Court did observe that evidence that the employee would also have been terminated for misconduct could be relevant to the remedies of front pay, reinstatement, and back-pay. Those matters do not help the Town here, because this is not a case where the Town seeks evidence of an environmental or health risk that would otherwise have justified denying a building permit; rather, the Town seeks to pursue "bad acts" that are separate from the "health, safety, and welfare" concerns at issue in the challenged land-use decisions.





- The Town demanded every communication between Plaintiffs, ***regardless of topic***, with Newsweek, Shawangunk Journal, Der Yid, and "any other Jewish publications." (Request 39). It is unclear why the Town would be focused only upon Plaintiffs' communications with "Jewish publications," but it is equally clear that such communications must be limited to the subjects of this case.

- The Town demanded all communications between Plaintiffs and Defendants, between Plaintiffs and non-parties, and any documents that relate "***in any way to the subject matter of this action***." (Requests 45, 47-48). Plaintiffs agreed to produce documents within these categories that concern the relevant individuals, claims, and properties at issue in the case.

In each instance, Plaintiffs agreed to produce documents within these categories identified, but noted that they should be limited to the relevant claims, individuals, and projects at issue. During the meet and confer conference, Plaintiffs suggested that, if the Town was concerned about the lines Plaintiffs were drawing, it offer alternative limitations to its sweeping demands. The Town refused and erroneously moved to compel.

**3. Injuries to Malka Rosenbaum and Sheindel Stein (Requests 3-4)**

In an apparent effort to intimidate Mrs. Rosenbaum and Mrs. Stein, the Town asked that they produce their complete medical and psychological records, or that they forswear damages for "physical" and/or "psychological" harm. Plaintiffs made clear that they do not claim that they have suffered any physical or psychological injuries that required medical assistance. At the same time, Plaintiffs are entitled to argue to a jury that the dignitary or emotional injury they suffered from discrimination warrants compensation. It is unclear why the Town fails to comprehend these responses or seeks to compel on these requests.

**For these reasons, Plaintiffs respectfully request that the Court deny the Town's Motion to Compel.**

Respectfully,

Ben M. Rose /JH

Benjamin M. Rose

cc: Counsel of Record (via ECF)