UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

:

BLOOMINGBURG JEWISH EDUCATION
CENTER <u>et al.</u>,

                                        Plaintiffs,

                -v-

VILLAGE OF BLOOMINGBURG, NEW YORK <u>et</u>
<u>al.</u>,

                                        Defendants.

------------------------------------------------------------------ X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: March 18, 2016

14-cv-7250 (KBF)

<u>OPINION & ORDER</u>

KATHERINE B. FORREST, District Judge:

This action involves allegations that Hasidic Jews who have been moving into the Village of Bloomingburg, Sullivan County, New York, have been met with determined and concerted resistance by the local governments and public officials of the Village of Bloomingburg and the Town of Mamakating.  Plaintiffs assert claims for violation of their rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act, the Fair Housing Act, and New York state law.  This action was initiated in September 2014, and discovery is set to close on May 31, 2016.  Trial is scheduled to commence on September 6, 2016.  This decision assumes familiarity with the parties, the underlying facts, and the procedural history of this case.

On February 23, 2016, plaintiffs filed a letter motion seeking to overrule the Town Defendants' blanket objections to a subpoena that plaintiffs served upon non-party West End Strategy ("West End"), a public relations and communications

strategy firm hired at the behest of the Town Defendants' counsel in a related action, and to compel West End and/or the Town Defendants to produce responsive non-privileged documents and a privilege log.  (Pls.' Ltr., ECF No. 199.)  Plaintiffs argue that, because defendants' motivations are directly at issue in this case, materials reflecting the Town Defendants' actions, public relations strategy and any factual basis for the Town Defendants' now-dismissed RICO suit, see Town of Mamakating v. Lamm ("Lamm"), 15-cv-2865 (KBF) (S.D.N.Y.), are relevant to plaintiffs' claims here.

The Town Defendants responded to plaintiffs' letter on March 3, 2016, standing by their broad objections to production of any communications in response to the subpoena (Defs.' Ltr. Resp., ECF No. 202); that same day, West End submitted its own response objecting to the subpoena on grounds of undue burden (West End's Ltr. Resp., ECF No. 203).  The Town Defendants' letter asserts that the requested documents and communications are protected by the attorney-client and work-product privileges because West End was hired at the behest of the Town Defendants' counsel in the Lamm action to assist in litigation strategy for the purpose of conveying legal advice and planning litigation.  While the Town Defendants agree to produce non-privileged documents that are not "communications," they argue that they should not even be required to collect, review, or create a privilege log for communications among West End, the Town and Village, and their counsel based on their view that the vast majority of

communications are privileged and, as a result, the burden of reviewing and logging such records greatly outweighs any potential benefit.

The Town Defendants' position is sweeping and rather brazen.  They ask plaintiffs and this Court to rely on their broad representations that the attorney-client and work-product privileges apply to communications with an outside public relations consultant without doing any of the necessary basic work to show that the privileges apply to particular documents on the facts and circumstances presented here.  They concede that they have not collected, reviewed or logged the communications at issue, and thus have failed to meet their burden of showing that any of the documents or communications are entitled to protection under the attorney-client or work-product privileges.  Beyond the fact that no principle of law supports the Town Defendants' blanket invocation of privilege as to all communications with an outside public relations firm, and in the absence of any competent evidence sufficient to meet the Town Defendants' burden of showing that either privilege applies, the Court is left without any basis to find that the Town Defendants have made the compelling case necessary to warrant quashing plaintiffs' subpoena.

For the reasons set forth below, plaintiffs' motion is GRANTED.  The Town Defendants' objections are overruled, and the Town Defendants and/or West End are hereby ordered to immediately produce all documents responsive to plaintiffs' subpoena.  As to the issues of burden and expense, the parties shall proceed in the manner set forth in the body of this decision.

I.      LEGAL STANDARDS

     A.      Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011).  The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." Mejia, 655 F.3d at 132 (quotation marks and alterations omitted).  Because the privilege "stands in derogation of the search for truth so essential to the effective operation of any system for justice . . . the privilege must be narrowly construed." Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (citing United States v. Nixon, 418 U.S. 683, 710 (1974)).  "The party asserting the privilege . . . bears the burden of establishing its essential elements." Mejia, 655 F.3d at 132; see also Wultz v. Bank of China Ltd., 304 F.R.D. 384, 391 (S.D.N.Y. 2015) ("The party invoking the privilege also has the burden to show that the privilege has not been waived.").

As a general matter, "[a] party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling

itself from claiming that the communications were intended to be confidential."
Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015).  "Under certain
circumstances, however, the privilege for communication with attorneys can extend
to shield communications to others when the purpose of the communication is to
assist the attorney in rendering advice to the client."  United States v. Adlman, 68
F.3d 1495, 1499 (2d Cir. 1995); see also Green v. Beer, No. 06 Civ. 4156
(KMW)(JCF), 2010 WL 3422723, at *3 (S.D.N.Y. Aug. 24, 2010) (stating that the
exception to waiver rule requires the party asserting the privilege to establish that
disclosure to a third party "was necessary for the client to obtain informed legal
advice," which "requires that the involvement of the third party be nearly
indispensable or serve some specialized purpose in facilitating the attorney-client
communication").  The privilege may be extended when it is the lawyer himself who
"needs outside help" to convey legal advice.  In re Grand Jury Subpoenas Dated
March 24, 2003, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003).  For instance, in United
States v. Kovel, Judge Friendly's seminal decision on this issue, the Second Circuit
held that the privilege extended to communications between an attorney's client
and an accountant hired by the attorney to enable the attorney to understand the
client's financial information in order to provide legal advice.  Kovel, 296 F.2d 918,
922 (2d Cir. 1961).  Judge Friendly likened the role of the accountant, under those
circumstances, to that of a translator.  Id. at 921.

Although the privilege is not waived for communications with non-lawyers to
the extent described above, Judge Friendly also observed that "[n]othing in the

policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam."  Id.  To the extent that the advice sought is that of the non-lawyer service provider, and not given to facilitate the legal advice provided by the lawyer, the privilege does not protect the communication.  See id. at 922 ("If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." (citations omitted)); Calvin Klein, 198 F.R.D. at 54 ("'[T]he privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" (quoting United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999))).  The touchstone of the inquiry is thus whether the communication was "made in confidence for the purpose of obtaining legal advice from the lawyer." Kovel, 296 F.2d at 922.

Applying the above principles, courts have—based on the particular facts and circumstances presented to them—reached varying conclusions as to whether to extend the privilege to communications with public relations consultants.  Compare In re Grand Jury Subpoenas Dated March 24, 2003, 265 F. Supp. 2d at 330-32 (attorney-client privilege available for communications with public relations consultant); In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 219-20 (S.D.N.Y. 2001) (attorney-client privilege available where public relations firm was functional

6

equivalent of in-house department of client), with Egiazaryan v. Zalmayev, 290 F.R.D. 421, 433 (S.D.N.Y. 2013) (attorney-client privilege unavailable for communications with public relations consultant); Haugh v. Schroder Inv. Mgmt. N. Am. Inc., No. 02 CIV 7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (same); Calvin Klein, 198 F.R.D. at 54 (same).

B.   Work-Product Privilege

"The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." Adlman, 68 F.3d at 1501 (quoting Fed. R. Civ. P. 26(b)(3)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." Id. (citing United States v. Nobles, 422 U.S. 225, 238 (1975)).  The doctrine is "distinct from and broader than the attorney-client privilege." Nobles, 422 U.S. at 238 n.11.  A document falls within the scope of the work-product privilege where it was "created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation." Haugh, 2003 WL 21998674, at *4 (quoting United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)).

"[A]s a general matter[,] public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3)." Calvin Klein, 198 F.R.D. at 55.  An otherwise valid assertion of work-product protection is not, however, necessarily "waived with respect to an attorney's own work-product simply because the attorney

provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence." Id.

Although a finding that a document was prepared because of the prospect of litigation makes such document eligible for protection under the work-product privilege, that does not end the inquiry.  The district court must then "assess whether the party seeking discovery has made an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship;" the court "can order production of the portions of the document for which a litigant has made an adequate showing."  Adlman, 134 F.3d at 1202-03.

## II.    DISCUSSION

In September 2015, plaintiffs served a subpoena on West End pursuant to Federal Rule of Civil Procedure 45 seeking all documents or communications concerning West End's dealings with, inter alia, the Town or Village, counsel for the Town and Village in the Lamm action, the Rural Community Coalition and Rural Heritage Party, and documents or communications relating to actual or potential litigation against plaintiffs and certain other individuals.  (Pls.' Ltr., Ex. A, ECF No. 199-1.)

As discussed above, the Town Defendants broadly assert that the requested materials are protected by the attorney-client and work-product privileges, and ask the Court to quash plaintiffs' subpoena pursuant to Rule 45(d)(3)(A)(iii).  Because, as explained below, the Town Defendants have failed to engage the basic work necessary to satisfy their burden of showing that any particular documents or communications are protected from disclosure under either privilege, and the

circumstances presented here—at least based on the facts put before the Court—are materially different than other cases in which the privileges were applied to communications with public relations consultants, the Town Defendants' objections are overruled and they are ordered to immediately produce all documents responsive to plaintiffs' subpoena.

The Town Defendants support their broad assertions of privilege solely with the following representations. In their opposition letter, the Town Defendants represent that West End was hired at the behest of counsel in the <u>Lamm</u> action to assist in litigation strategy after counsel "determined a public relations firm would be useful in preparing for the litigation." (Defs.' Ltr. Resp. at 2, ECF No. 202.) As an exhibit to their letter, the Town Defendants also provided the Court with an attorney declaration dated October 6, 2015 from David C. Holland, Esq., who served as their counsel in the <u>Lamm</u> action. (Defs.' Ltr. Resp., Ex. B ("Holland Decl."), ECF No. 202-2.) This declaration, which is just over two pages, is the Town Defendants' only factual support for their invocation of privilege.

Mr. Holland's declaration provides the following facts explaining West End's role in the <u>Lamm</u> action. Mr. Holland and his co-counsel, Philip T. Simpson, Esq., met with representatives of West End approximately two months after he and Mr. Simpson were retained by the Town in relation to the <u>Lamm</u> action (approximately March 2015) to "discuss having a communications firm assist us in distilling the complex set of facts that would comprise the allegations of the complaint into succinct and digestible pieces of information about the nature of the RICO

enterprise and its activities." (Holland Decl. ¶ 7.) After West End was retained,[1] "West End worked closely with Mr. Simpson and [Mr. Holland], assessing the inter-relationships of the factual allegations and causes of action in the RICO case as well [as] those made by Sullivan Farms II and others in the instant litigation [and] even did records research on various matters that we hoped would be useful in the claims in the RICO case." (Holland Decl. ¶ 13.) Mr. Holland claims that "West End's assistance to counsel was helpful in facilitating the communications about the facts and nature of the case, and formulating the message by which municipal officials could accurately explain it to the public." (Holland Decl. ¶ 15.) Essentially based solely on these assertions, the Town Defendants claim that all or substantially all communications between the Town Defendants, their counsel in the <u>Lamm</u> action, and West End, are protected from disclosure under the attorney-client and/or work-product privileges. As explained below, the Town Defendants' letter and Mr. Holland's affidavit do not meet the Town Defendants' burden of showing that these privileges protect the documents and communications at issue from disclosure. The Court rests its decision on several grounds.

First, the Town Defendants, relying solely on Mr. Holland's vague and highly generalized declaration, have failed to present the Court with adequate competent evidence to meet their affirmative burden to prove the applicability of either the

---

[1] The Town Defendants concde that it was the Town, rather than Mr. Holland or his firm, that actually signed the Memorandum of Understanding ("MOU") with West End in March 2015 in order "to facilitate smooth payment of invoices from the Town directly to West End," but state that it was counsel that actually hired West End to assist counsel. (Defs.' Ltr. Resp. at 2.)

attorney-client or work-product privileges.  They have not submitted a privilege log, provided or offered to provide copies of any of the documents or communications in dispute for <u>in camera</u> review (based on the Town Defendants' representations, it appears that no subset of documents has even been gathered together in a manner that would allow this to occur easily), or even described with any particularity exemplars of any of the documents or communications that may be in West End's possession.  A showing that the privilege is applicable and has not been waived "must be based on competent evidence, usually through affidavits, deposition testimony, or other admissible evidence." <u>Egiazaryan</u>, 290 F.R.D. at 428 (citing <u>von Bulow by Auersperg v. von Bulow</u>, 811 F.2d 136, 147 (2d Cir. 1987)).  Mr. Holland's barebones affidavit does not—standing alone—meet that burden.

In contrast to the Town Defendants' efforts here, parties seeking to assert either the attorney-client or work-product privileges in similar contexts have presented courts with competent evidence and targeted arguments that allowed those courts to make a particularized determination that the documents and/or communications fell within the scope of the privileges.  <u>See</u>, <u>e.g.</u>, <u>In re Grand Jury Subpoenas Dated March 24, 2003</u>, 265 F. Supp. 2d at 323-24 (relying on witness affidavit, grand jury testimony, and <u>in camera</u> review of documents); <u>Calvin Klein</u>, 198 F.R.D. at 53-54 (relying on privilege log and documents for <u>in camera</u> review); <u>Haugh</u>, 2003 WL 21998674, at *1-2 (relying on attorney affidavit, privilege log and documents for <u>in camera</u> review); <u>Egiazaryan</u>, 290 F.R.D. at 427 (relying on privilege log, affidavits, and documents for <u>in camera</u> review); <u>In re Copper Mkt.</u>,

200 F.R.D. at 221 (relying on privilege log and affidavits).  In short, the Town Defendants have failed to conduct the basic work that is a prerequisite to allowing this Court to understand the documents and communications at issue such that it can find in their favor.  It was the Town Defendants' burden to make a compelling case that the privilege is applicable here.  They have failed to meet it.

Second, in light of the absence of facts supporting the Town Defendants' claims of privilege, the sweeping breadth of their assertion weighs against their objections to disclosure.  The Town Defendants broadly assert that they and/or West End should not even be required to collect, review or log responsive communications—which they estimate number in the hundreds—because such efforts would impose an undue burden.  (Defs.' Ltr. Resp. at 3.)  West End itself similarly objects to the subpoena because of undue burden, stating that it does not have an "IT" department or other employees who can easily retrieve communications relating to the Lamm action and other documents responsive to plaintiffs' request.  (West End's Ltr. Resp. at 2, ECF No. 203.)

Put otherwise, the Town Defendants and West End have effectively met plaintiffs' subpoena with a blanket argument that, because communications between a client, the client's counsel, and a public relations firm may in some instances be protected by the attorney-client and/or work-product privileges, they should not be required to disclose any communications between these entities.  This argument is meritless and unsupported by precedent.  The fact that some courts have, in narrow circumstances, found that certain communications shared with

public relations firms were entitled to protection from disclosure where the public
relations firms' participation was necessary to facilitate counsel's provision of legal
advice to the client, does not excuse the Town Defendants from making the
necessary showing that each and every document or communication they seek to
withhold is individually entitled to protection.  The Town Defendants do not
identify a single case in which a court allowed a party to avoid having to collect,
review, and log privileged communications and produce those that do not fall under
the privilege.  Having staked out this position, the Town Defendants have not asked
for an opportunity to garner more support for their assertion of privilege, and there
is no ground to grant the Town Defendants another shot.  Because of the Town
Defendants' delay in taking the necessary steps of collection and creation of a
privilege log, they have forfeited their opportunity to delay production of this
material to plaintiffs further by just now commencing what would surely be a
protracted document-by-document dispute over this material.

Third, to the extent that the Court has been provided with information as to
the nature of West End's role, it is persuaded that the facts and circumstances
presented here more closely align with those at issue in Calvin Klein and Haugh, in
which courts rejected invocations of the attorney-client privilege and accepted
limited claims of work-product privilege, and differ significantly from the
circumstances at issue in In re Grand Jury Subpoenas Dated March 24, 2003,

where the privileges were held to apply more broadly.[2]  Because these cases are instructive, the Court examines each below.

In Calvin Klein, the plaintiffs' counsel, in anticipation of filing the suit that was before the court, retained a public relations firm to help counsel understand the possible reaction of the plaintiffs' constituencies to the matters that would arise in the litigation and to assure that the media crisis resulting from the litigation would be handled responsibly.  198 F.R.D. at 54.  When the defendants sought production of otherwise responsive documents and testimony from the public relations firm and one of its employees, plaintiffs invoked the attorney-client and work-product privileges.  The court rejected the plaintiffs' assertion of attorney-client privilege on three grounds.  First, after reviewing the documents at issue in camera, the court found that few, if any, "appear[ed] to contain or reveal confidential communications from the underlying client . . . made for the purpose of obtaining legal advice."  Id. at 54.  The court observed that the possibility that communications between the public relations firm and plaintiffs' counsel may have helped "the latter to formulate legal advice is not itself sufficient to implicate the privilege."  Id.  Second, the court found that the documents in question established that, rather than serving in a role akin to that of a translator (like the accountant in Kovel), the public relations firm was simply providing ordinary public relations advice.  Id. at 54-55.  Nothing in the

---

[2] The Court observes, of course, that without having received adequate information from the Town Defendants as to the documents and communications over which they assert privilege, it is impossible to determine exactly how analogous the facts and circumstances presented here are to Calvin Klein and Haugh.  The Court is persuaded, however, that nothing in the Court's understanding of this litigation, the Lamm action, or the related cases before this Court, lead it to believe that this case is more akin to the unusual considerations present in In re Grand Jury Subpoenas Dated March 24, 2003.

documents reviewed by the court showed that the public relations firm's work and advice served to "enabl[e] counsel to understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice." Id. at 55.  Third, the court found that there was no justification for broadening the privilege to cover functions not materially different from those that an ordinary public relations firm would have performed if they had been hired directly by the client.  Id. at 55.  As to the work-product privilege, the court did find—again, based on an in camera review of the specific documents presented to it—that certain counsel-drafted or counsel-selected materials and documents that implicitly reflected counsel's work product, were protected by the privilege.  Id. at 56.

In Haugh, a case in which the plaintiff brought an age discrimination suit against her former employer (of which she had served as chairman), the plaintiff's counsel hired a public relations consultant to help defend the plaintiff from further attacks in the media, which counsel anticipated would occur once she filed her lawsuit.  2003 WL 21998674, at *1.  Plaintiff's counsel affirmed that the consultant—who was also a licensed attorney—assisted in preparing a press release at the time the action was filed, participated in strategy sessions with counsel and the plaintiff, reviewed materials sent by the plaintiff for impact on the litigation strategy, advised counsel as to possible public reactions, and handled media communications.  Id.  The defendants brought a motion to compel production of sixteen documents—fifteen sent from counsel to the consultant and one from the

15

consultant to counsel—over which the plaintiff claimed the attorney-client and work-product privileges on her privilege log.  2003 WL 21998674, at *1.  As in Calvin Klein, the court rejected the assertion of attorney-client privilege and upheld the assertion of work-product privilege.  The court concluded that the plaintiff had waived the attorney-client privilege because she had not shown that the consultant "performed anything other than standard public relations services" or that the communications between the client and the consultant, or counsel and the consultant, "were necessary so that [counsel] could provide [the plaintiff] with legal advice."  Id. at *3.  Contrasting the facts presented to it with those at issue in In re Grand Jury Subpoenas Dated March 24, 2003, the court stated that the plaintiff had not "identified any nexus between the consultant's work and the attorney's role in preparing [her] complaint or [her] cause for court," and observed that "[a] media campaign is not a litigation strategy."  Id. at *3.  As for the work-product privilege, however, the court found that the sixteen documents submitted to the court for in camera review were protected by the work-product privilege because "they were all prepared by a party, her agent, attorney or consultant in anticipation of litigation." Id. at *5.

        In contrast to Calvin Klein and Haugh, in In re Grand Jury Subpoenas Dated March 24, 2003, the court held, with the benefit of a privilege log, affidavits and an opportunity to review the documents and communications at issue in camera, that both the attorney-client and work-product privileges shielded from disclosure certain communications between lawyers, their clients, and public relations

16

consultants hired by the lawyers to assist in dealing with the media in relation to a
"high profile" criminal investigation that had been a "matter of intense press
interest and extensive coverage for months."  265 F. Supp. 2d at 323, 332-33.
Central to the court's ruling on the issue of attorney-client privilege, however, were
the special purposes to which the consultants were being used in light of the
particular circumstances of that case.  Because of a concern that prosecutors and
regulators conducting the investigations would feel public pressure to bring some
kind of charges against the client target, attorneys for the client hired public
relations consultants "to communicate with the media in a way that would help
restore balance and accuracy to the press coverage" to reduce prosecutors' pressure
to bring charges.  Id. at 323.  Thus, unlike the standard media campaign designed
to target the public at large, the targets of the consultants' efforts in this case were
the prosecutors and regulators tasked with making the relevant charging decisions.
Id. at 323-24.  The court found, under these circumstances, that the facts presented
a situation in which it was the lawyers who needed outside help in relation to their
provision of "legal advice" as that term was understood in Kovel.  Id. at 326.  The
court further held, based on its in camera review, that the nineteen documents at
issue were prepared in anticipation of litigation and therefore entitled to the work-
product privilege.  Id. at 333.

Based on the Town Defendants' limited proffer of the nature of West End's
role in the Lamm action (i.e. Mr. Holland's brief declaration), there is no basis to
find that West End performed functions essential to enable counsel in the Lamm

action to provide the Town Defendants with legal advice.  Although West End's services may have been useful to counsel, Calvin Klein and Haugh demonstrate that such a showing alone is insufficient to find that the attorney-client privilege has not been waived by disclosure to a public relations consultant.  Calvin Klein, 198 F.R.D. at 54; Haugh, 2003 WL 21998674, at *3.  Mr. Holland's declaration asserts that he used West End to distill complex facts into digestible pieces and conduct records research that facilitated municipal officials' ability to accurately explain the Lamm case to the public.  (Holland Decl. ¶¶ 7, 13, 15.)  This explanation, standing alone, does not meet the Town Defendants' burden to show that West End performed a function beyond that which a public relations firm might ordinarily be called upon to do if hired by the Town Defendants directly. While this action has garnered some media attention and the issues involved raise sensitivities on both sides, unlike In re Grand Jury Subpoenas Dated March 24, 2003, here the Town Defendants have not shown that counsel needed West End for any purpose other than communicating with the general public at large.  West End's role was clearly not akin to that of a translator as described in Kovel, and thus the attorney-client privilege does not protect the documents over which they assert the privilege.  See Kovel, 296 F.2d at 921.

As to the Town Defendants' assertion of work-product privilege, the Court recognizes that West End may be in possession of materials that were prepared in anticipation of litigation by the Town Defendants or their counsel, and that the privilege was not necessarily waived because this material was shared with West

End.  <u>Calvin Klein</u>, 198 F.R.D. at 55.  That being said, as explained in detail above, the Town Defendants have not undertaken the work necessary to show which, if any, particular documents may be entitled to the work-product privilege.  Instead of providing the Court with any explanation of the types of work product that may be in West End's possession, the Town Defendants state only that they "object[ ] to the entire subpoena as an improper fishing expedition into the Town's privileged and confidential litigation strategies."  (Defs.' Ltr. Resp. at 3.)  Resolution of the privilege must be made on a document-by-document basis in light of the particular contents of each document.  It is certainly the case that large swaths of responsive documents and communications in West End's possession do not constitute protected work product.  <u>Calvin Klein</u>, 198 F.R.D. at 55 (Generally, "public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3).").  In the absence of any support for the assertion that any particular documents are privileged, the Court cannot rule that there are any documents in West End's possession as to which the work-product privilege applies.

Thus, while the Town Defendants did not automatically waive the work-product privilege by sharing materials with West End, their failure to conduct the basic work (even at this late stage of discovery) necessary to allow the Court to consider the documents on a case-by-case basis justifies the determination that all documents and communications in West End's possession that are responsive to the subpoena must be disclosed immediately.

West End asks that, in the event that the Court orders the documents and communications to be reviewed and disclosed, plaintiffs should be required to shoulder the expense of review and production.  (West End's Ltr. Resp. at 2-3.) While the Court is cognizant of the burden and expense imposed on West End, a non-party, by the order of disclosure, the Court does not believe that plaintiffs should be solely responsible for the burden of paying to retrieve this material.  The Court therefore presents West End and the Town Defendants with two options to facilitate the collection of documents responsive to the subpoena.[3]  First, West End and the Town Defendants may elect to have plaintiffs hire or utilize their own team (acting under proper confidentiality restrictions) to do a "capture" of documents and communications from West End's servers and conduct a responsiveness review.  In such a situation, plaintiffs would bear the entire expense of collection and review by their own people.  Second, the Town Defendants and/or West End may engage a team to do a "capture," with costs to be split between plaintiffs and the Town Defendants.  In either case, the Town Defendants and West End must come to a decision quickly with regard to their choice of collection method (within the next week), as the Court expects full production to take place as soon as possible.

III.   CONCLUSION

For the foregoing reasons, plaintiffs' motion is GRANTED.  The Town Defendants objections are overruled, and the Town Defendants and/or West End are

---

[3] The parties may, of course, proceed with any other method so long as plaintiffs, the Town Defendants, and West End all agree to such method.

hereby ordered to immediately produce all documents responsive to plaintiffs'

subpoena, as further set forth in this decision.

      The Clerk of Court is directed to close the motions at ECF No. 199.

      SO ORDERED.

Dated:      New York, New York
            March 18, 2016

                                        KATHERINE B. FORREST
                                  United States District Judge